Slip Copy  
(Cite as: 2003 WL 23109763 (W.Va.Cir.Ct.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Circuit Court of West Virginia.

Eric P. MANTZ, M.D., W. Willis Trammell, M.D., Todd A. Witsberger, M.D., Warren Kearney, M.D., David R. Peterson, M.D., Duane J. Glatz, M.D., Individually and on Behalf of those Similarly Situated, Plaintiffs,  
v.  
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Commercial Insurance Service, Inc., a West Virginia Corporation, Defendants.

No. Civ.A. 02C-770.

Dec. 17, 2003.

*ORDER CONDITIONALLY CERTIFYING NATIONAL CLASS ACTION ON ISSUES OF UNJUST ENRICHMENT AND CONVERSION AND HOLDING IN ABEYANCE CERTAIN OTHER RULINGS*

ZAKAIB, J.

**\*1** Before the Court is Plaintiffs' Motion for Class Certification. The parties have engaged in significant discovery, been afforded multiple opportunities to file briefs and to submit legal authorities in support of their respective positions and, *inter alia,* on November 10, 2003, the Court conducted a day-long hearing on class certification in order to fully afford all parties a full and complete opportunity to be heard. After carefully considering all of the foregoing submissions, arguments and authorities, the Court makes the following findings and rulings of law on a variety of issues existing in this litigation. In addition, the Court herein sets forth certain legal issues upon which it is of the opinion that additional submissions are necessary to enhance this Court's ability to rule on a variety of issues which will necessitate resolution as this matter progresses forward.

FINDINGS BY THE COURT

1. Plaintiffs commenced this case in March, 2002. On May 21, 2003, plaintiffs filed their Second Amended Complaint, which is styled as a "Class Action Complaint," asserting a nationwide class action on behalf of:

doctors who have practiced medicine in the United States, purchased from The St. Paul Companies or its predecessors medical malpractice insurance which was in effect when St. Paul exited the market, paid premiums towards free tail coverage, had their policies non-renewed in or after 2001, and received neither a refund of premiums paid for this tail coverage nor the paid-for tail coverage when St. Paul non-renewed their policies.

Sec. Amd. Cmplt. at ¶ 42.

2. On July 28, 2003, plaintiffs filed their motion for class certification accompanied by supporting evidence:

(a) Plaintiffs Mantz, Trammell and Wittsberger were insured by St. Paul for a period of one year when it voluntarily elected to withdraw, on a nationwide basis, from the business of providing professional medical malpractice insurance.

(b) St. Paul is a Minnesota-based insurance company that formerly provided medical-malpractice insurance for doctors nationwide. On December 12, 2001, St. Paul announced that it was exiting the medical malpractice-insurance market altogether. No dispute exists as to the relative written portions of the St. Paul policies of insurance. Further, no dispute exists that St. Paul marketed its policies of insurance, in part, upon its representation that it was a solid insurer which had been in the marketplace in excess of one hundred years. Plaintiffs' policy contained a provision for an extended reporting endorsement- which is commonly referred to as "tail" coverage-for *no additional premium* in the event that an insured who has had continuous coverage for five years died, became disabled, or retired. St. Paul asserts that its promise of a free "tail", as to insureds who had not been insured by St. Paul for five years at the time of its decision to exit the marketplace, constitutes an unenforceable promise because the condition precedent-being insured at the expiration of the requisite five year period-has not been satisfied.

**\*2** c) Plaintiffs admit the express terms of St. Paul's policy, but assert, *inter alia,* that St. Paul promised the plaintiff-doctors free "tail" insurance for claims made against plaintiffs after their retirement, death or disability. According to Plaintiffs, St. Paul marketed its policies with representations of stability and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                                                              Page 2
**(Cite as: 2003 WL 23109763 (W.Va.Cir.Ct.))**

longevity in the marketplace. Plaintiffs further assert that St. Paul represented that this tail coverage was "free," when in fact at least two percent of the premiums St. Paul was charging plaintiffs and all other insureds were being utilized and were actuarily specifically designated to fund the tail coverage.

3. St. Paul's corporate representative confirmed at deposition that St. Paul's decision to exit the market was not based on the individual doctors' malpractice claims history, which St. Paul did not consider in making its decision to exit the market. *See* Rehnberg Dep. At 25-26.

4. Plaintiffs allege that St. Paul's decision to exit the medical-malpractice market was the result of its and its corporate executives' malfeasance. *See* Sec. Amd. Cmplt. at ¶¶ 23-24, 48, 54, 118.

5. Plaintiffs allege that, upon its market exit, St. Paul did not provide the promised tail coverage to any physicians who did not satisfy the policy's condition precedent before their policies were unilaterally terminated by St.. Paul in 2002, leaving approximately 40,000 physicians nationwide without: (1) the opportunity to obtain the "free" tail coverage; (2) the opportunity to satisfy the alleged condition precedent; and (3) without any reimbursement of the premiums collected by St. Paul and specifically designated as being utilized to fund "tail" coverage.

6. CIS was an insurance broker and agent of St. Paul that, *inter alia,* disseminated information to plaintiffs about St. Paul, St. Paul's medical- malpractice insurance coverage, and St. Paul's long-term commitment to those who desired to purchase its medical malpractice insurance policies.

7. In their Second Amended Complaint, Plaintiffs allege six separate counts:
   (1) Breach of Contract;
   (2) Breach of the Implied Covenant of Good Faith and Fair Dealing;
   (3) Unjust Enrichment;
   (4) Conversion;
   (5) Negligence or Gross Negligence; and
   (6) Breach of Fiduciary Duty.

## CONCLUSIONS OF LAW

In July, 2003, the West Virginia Supreme Court of Appeals confirmed that "class actions are a flexible vehicle for correcting wrongs committed by [a] large-scale enterprise upon individual consumers" and that "forcing numerous plaintiffs to litigate the alleged misconduct of the defendants in hundreds of thousands of repeated individual trials ... runs counter to the very purpose of a class action." *In re West Virginia Rezulin Litig.,* 585 S.E.2d 52, 62, 75 (W.Va.2003). *Rezulin* is now the seminal case on the issue of class- certification in West Virginia, and the principles set forth therein apply with equal force in this case.

A. The Requirements of Rule 23.

**\*3** Under West Virginia procedure, "any question as to whether a case should proceed as a class action in a doubtful case should be resolved in favor of class certification. The interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action." *Rezulin,* 585 S.E.2d at 65 (internal citations omitted).

West Virginia's Rule 23 requires a party seeking to certify a class to demonstrate, *inter alia,* that the following four requirements are satisfied:
   (1) the class is so numerous that joinder of all members is impracticable;
   (2) there are questions of law or fact common to the class;
   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
   (4) the representative parties will fairly and adequately protect the interests of the class.
   W.V.R.C.P. 23(a)(1)-(4)
The party seeking certification must also demonstrate that the case meets the requirements of West Virginia Rule 23(b)(1), (b)(2), or (b)(3). Plaintiffs here have requested certification pursuant to Rule 23(b)(3) only, and therefore must demonstrate that "the questions of law or fact common to the ... class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." W.V.R.C.P. 23(b)(3).

In addition, "the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." *State ex rel. Metro. Life Ins. Co. v. Starcher,* 196 W.Va. 519, 526, 474 S.E2d 186, 193 (1996) (citation omitted).

In ruling on the Plaintiffs' Motion for Class Certification, this Court is neither addressing the merits of any claim asserted by Plaintiffs nor the merits of any defense asserted by Defendants. *Rezulin,* 585 S.E.2d at 63.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy    Page 3
**(Cite as: 2003 WL 23109763 (W.Va.Cir.Ct.))**

B. The Class Definition is Sufficiently Precise.

In order "[t]o demonstrate the existence of a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is not required that each class member be identified, but only that the class can be objectively defined." *Metro. Life,* 196 W.Va. At 526, 474 S.E.2d at 193.. Plaintiffs are "not required to prove the identity of each class member or the specific number of members." *Rezulin,* 585 S.E.2d at 66.. St. Paul's class-certification expert agreed that this is an accurate statement of the law. *See* Jernigan Dep. At 43. Instead, "[t]he description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." *Metro. Life,* 196 W.Va. at 526, 474 S.E.2d at 193 (citation omitted). Notably, St. Paul's own expert testified that he had no issue with "the class definition as set forth in the complaint ... in terms of clarity ... or scope" (Jernigan Dep. at 84) and that "you could figure out through St. Paul's records the identities of the class members" (*Id.* at 84) as well as "the number of class members" (*Id.*). The Court agrees. In the opinion of this Court, the "class definition" proposed by Plaintiffs is sufficiently precise and in accord with all applicable legal requirements.

C. The Requirements of Rule 23(a) Have Been Met.

**\*4** Numerosity: Both St. Paul and its expert concede that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1)--*i.e.,* that joinder of all class members (estimated at 40,000) in one action is impracticable. *See,* St. Paul Opp. Br. at 24-25; Jernigan Dep. at 149-50.

Commonality: West Virginia Rule of Civil Procedure 23(a)(2) mandates that there exist questions of law or fact that are common to the class. To satisfy this requirement, there need be only a single issue common to all class members. *Rezulin,* 585 S.E.2d at 67.. As set forth in this Order, it is the opinion of this Court that the Second Amended Complaint raises numerous common issues discussed below under Rule 23(b)(3).

Typicality: Class representatives' claims must be typical of the claims of the rest of the class. W.V.R.C.P. 23(a)(3). All of the plaintiffs here, including the named class representatives, claim that they were harmed by St. Paul's uniform practice of collecting premiums for tail coverage and then exiting the medical-malpractice market without offering any refund of those premiums. St. Paul admits that its denial of tail coverage was not, in any instance, based on a doctor's poor claims history, or based on anything unique to an individual class member.

While the Court is of the opinion that the factual predicate for the claims conditionally certified herein are substantially similar, if not identical, the Court is aware that the "typicality" criterion does not require that class representatives' claims be identical to those of other class members. Thus, "[w]hen the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Rezulin,* 585 S.E.2d at 68 (Emphasis added). Moreover, a class action is not "precluded by the presence of individual defenses against class plaintiffs." *Rezulin,* 585 S.E .2d at 67.. "The fact that a defense may be asserted against the named representatives, as well as some other class members, but not the class as a whole, does not destroy the representatives' status." *Id.* at 68 (internal quotation marks omitted). *Accord* Jernigan Dep. at 50-51. The class representatives' claims are typical.

Adequacy: The final requirement of West Virginia Rule of Civil Procedure 23(a) is that the representative parties fairly and adequately represent the interests of the class. A party seeking class certification must satisfy two criteria in order to meet this requirement: (i) plaintiffs' attorneys must be qualified, experienced and generally competent to conduct the proposed litigation; and (ii) the plaintiffs must not have interests antagonistic to the class. *See, e.g., United Brotherhood of Carpenters v. Phoenix Assoc., Inc.,* 152 F.R.D. 518, 523 (S.D.W.Va.1994).. In the opinion of this Court, each of these criteria has been satisfied in this case.

Plaintiffs' counsel have extensive, nationally-recognized experience handling class-action litigation. They have zealously prosecuted this case, actively pursued discovery against St. Paul and CIS, obtained prompt remand of St. Paul's two attempted removals, and defeated two motions to dismiss by St. Paul and a motion for summary judgment by CIS. At the class certification hearing, plaintiffs' counsel represented to the Court that they have invested as much as $4 million in incurred time and expenses prosecuting this case, leaving no doubt that counsel have been and remain fully committed to pursuing the best interests of the class.

**\*5** St. Paul's suggestions that counsel are inadequate because they have opposed class certification for the defense in other cases and because they deleted

certain claims from the complaint in this case are, in the opinion of this Court, without merit. St. Paul's expert, Mr. Jernigan, conceded both points, admitting that the fact that a lawyer has represented a defendant opposing class certification does not "per se" disqualify him to act as counsel for plaintiffs in a class action (Jernigan Dep. at 80-81) and that "[t]he fact that the decision was made to add some claims and not bring other claims doesn't raise any issues of adequacy of counsel ... lawyers do that all the time" (*Id.* at 150).

Likewise, all three representatives offered by plaintiffs qualify as adequate representatives. St. Paul's expert agreed, admitting at deposition that he "[did not] have any quarrel with respect to the adequacy of the named representatives as representatives...." Jernigan Dep. at 91.

D. The Requirements of Rule 23(b)(3) are Satisfied in this Case.

Plaintiffs' claims are also appropriately certified under Rule 23(b)(3). Under Rule 23(b)(3), a class can be certified if:
> The Court finds that the questions of law or fact common to the members of the class predominate over any other questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. W. Va. R. Civ. P. 23(b)(3).

Class certification is appropriate here because common issues predominate over individual issues, and class treatment of the action is superior to other alternative methods for adjudicating the controversy.

1. Common Questions Predominate Over Individual Ones.

The central question raised by the predominance criterion is "whether adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves." *Rezulin,* 585 S.E.2d at 72 (internal quotations and citations omitted). "The predominance requirement does not demand that common issues be dispositive, or even determinative.... Rather, a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* (citations omitted).

a. There Are Numerous Common Questions Here.

The Court is persuaded that there are myriad common questions of law or fact that predominate over any individual issues that may arise in this case. The heart of this case is St. Paul's alleged liability for exiting the medical malpractice insurance business without providing its policyholders with either the paid-for coverage or any refund of their premiums. The facts pertinent to that issue relate almost exclusively to defendants' conduct, not any particular facts or background information about plaintiffs. As St. Paul's class-certification expert conceded, "St. Paul's conduct ... with respect to corporate decisions that it made and corporate actions that it took would not vary by doctor or your class." (Jernigan Dep. at 166.)

**\*6** For example, St. Paul's expert testified that: the alleged "duty created by the contract ... would be a common question" (Jernigan Dep. at 165-66); the allegation that St. Paul set aside a certain percentage of every doctor's insurance premium to fund tail coverage for the doctors "is true for every member of the class" (*Id.* at 94-95); the allegation that St. Paul made questionable business decisions based on a desire to generate bonuses for its senior executives "would not vary from one class member to another" because it "goes to the conduct of St. Paul (*Id.* at 95); the question of whether St. Paul had a duty to conduct itself in a manner that would give plaintiffs the opportunity to claim the benefit of the promised tail coverage "is not an issue that varies from class member to class member" (*Id.* at 165-66); the question of whether St. Paul breached its duties to its insureds by purchasing MMI without conducting proper due diligence "would not vary by doctor or [the] class" (*Id.* at 166); the question of whether St. Paul breached its duties to its insureds by using reserves to prop up earnings is "clearly focusing on St. Paul's conduct and not the conduct of the individual people, not the individual class members" (*Id.* at 167); and the question of whether an insurance broker has a duty to act in the best interests of its insureds "do[es] not vary from policyholder to policyholder, generally." *Id.*

These allegations--the heart of plaintiffs' case--are common to the class, predominate over any

individualized issues, and can be most efficiently resolved on a class-wide basis. As a result, the Court finds that the predominance requirement of Rule 23(b)(3) is satisfied here.

b. Individualized Issues Do Not Predominate.

St. Paul contends that, because it intends to challenge plaintiffs' ability to prove causation and/or reliance in this case based on certain class members' ages, malpractice histories, familiarity with the insurance market, or specific dealings with St. Paul, common issues will not predominate. Given the nature of the class being certified herein, St. Paul's objections are not well taken. Counsel for St. Paul raised *this same causation argument* while acting as counsel for the defendant in *Rezulin.* The Supreme Court of Appeals rejected it there, and this Court rejects it here.

St. Paul's arguments about supposed individualized reliance on St. Paul's statements are similarly misplaced. Plaintiffs do not allege fraud, and reliance is not an element of *any* of plaintiffs' claims. St. Paul's expert recognized this fact. *See* Jernigan Dep. at 124, 129, 130.

St. Paul argues that, nonetheless, plaintiffs allege misrepresentations by St. Paul in their Second Amended Complaint which could potentially raise the issue of reliance and thus defeat a finding of predominance. Plaintiffs allege "a uniform type of misrepresentation" that does not vary from plaintiff to plaintiff. Courts may properly certify class actions against insurance companies involving allegations of uniform misrepresentations. *See In re Lutheran Broth. Variable Ins. Products Co. Sales Practices Litig.* No. 99-MD- 1309, 2003 WL 21737528, at *2 (D.Minn. July 22, 2003) (certifying claim based on uniform misrepresentations); *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1253 (2d Cir.2002)(cited by St. Paul) (even "fraud claims based on uniform misrepresentations made to all members of the class .... are appropraite subjects for class certification because the standardized misrepresentations may be established by generalized proof"). St. Paul's expert, Mr. Jernigan, conceded this point, testifying that "[i]f there are uniform misrepresentations or representations ... and that is the sole--that is the theory of the case, class certification may be appropriate, yes." (Jernigan Dep. at 79.)

*7 "The courts of this State have successfully managed to overcome and try, *en masse,* cases where the plaintiffs were seeking punitive damages." *Rezulin,* 585 S.E.2d at 69.. St. Paul's class-certification expert, Mr. Jernigan, testified that class-certification may be appropriate "even though punitive damages are sought." (Jernigan Dep. at 13.)

c. Minnesota Law Can Not Be Uniformly Applied To Plaintiffs' Claims.

Individual issues of state law pose no impediment to a finding of predominance in that this Court can apply substantially uniform law to claims with the same legal predicate. Alternatively, this Court may create sub-classes of Plaintiffs to ensure proper application of law. The key issue before this Court is the fact that Plaintiffs' claims are uniformly premised on the same factual predicate.

Both Plaintiffs and St. Paul agree that under West Virginia choice of law principles, the substantive law of the state having "the most significant relationship" to the transaction at issue is applied to breach of contract claims, as well as tort claims arising from contractual relationships. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 182 W.Va. 580, 585, 390 S.E.2d 562, 567 (1990) (applying "more significant relationship" test to insurance policy executed in one state and performed in another); *Lee v. Saliga,* 179 W.Va. 762, 770, 373 S.E.2d 345, 353 (1988) (applying "more significant relationship" test to motor vehicle insurance policy); *Oakes v. Oxygen Therapy Servs.,* 178 W.Va. 543, 545, 363 S.E.2d 130, 131 (1987) ("most significant relationship" test applies when there is a complex relationship between plaintiff's tort claim and a contract).

In this Court's opinion, the most significant relationship test does not allow Minnesota law to be uniformly applied in this case. As to West Virginia Plaintiffs, West Virginia has the most significant relationship to policies of insurance issued and delivered in this State. Thus, this Court rejects Plaintiffs request that Minnesota law be applied to all claims. St. Paul's suggestion that varying state regulations prohibit certification is likewise rejected. *See, e.g., Elkins,* 1998 WL 133741, at *12*. Because Plaintiffs' claims as certified herein are not predicated on a particular state regulation which prohibits or allows certain conduct, the conduct upon which Plaintiffs' claims are predicated does not serve to insulate St. Paul in this case.

d. Defendants Were On Notice That Plaintiffs Are Seeking A Nationwide Class.

At the hearing, St. Paul argued that it was not on notice that Plaintiffs were seeking a nationwide class. Plaintiffs have aptly pointed out that St. Paul's

opposition brief, filed on September 12, 2003, specifically argues that "The Issue of Whether This Class May Be Certified As A Nationwide Class Is *Ripe Now"* (St. Paul Opp. Br. at 63 (Emphasis added)). St. Paul called for "prompt determination of the nationwide class issues" (*Id.*) asserting that "[t]he Court *should not wait* to determine the nationwide class issue" (*Id.* (Emphasis added)). In addition, St. Paul submitted along with its opposition brief a telephone-book-sized survey of the laws of the fifty states on each of the claims asserted, as well as a chart comparing choice of law provisions within the fifty states, in an attempt to assess the propriety of Plaintiffs' proposed nationwide class. In short, the Court rejects St. Paul's contention of surprise, which contradicts St. Paul's own pleadings.

2. A Class Action Is Superior To Other Potential Methods of Adjudication.

**\*8** A class action is not just the superior, but is likely the only, means Plaintiffs have to resolve their claims against Defendants. Class certification is appropriate where, as here, "[w]hile the claims of many class members are not insubstantial--perhaps tens or even hundreds of thousands of dollars--the litigation costs ... of pursuing individual claims against [defendants] would be likely ... to be prohibitive." *Payne v. Goodyear Tire & Rubber Co.,* 216 F.R.D. 21, 29 (D.Mass.2003).. *See also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* 244 F.3d 1152, 1163 (9th Cir.2001) (superiority requirement satisfied because "some [class members] ... will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover").

As noted, Plaintiffs' counsel here have invested more than $4 million thus far in prosecuting this case. It is not comprehensible that each individual doctor could spend millions of dollars in pursuing these claims which, while not insubstantial, could not possibly justify those kinds of costs. If the doctors were forced to sue individually, "litigation costs would dwarf potential recovery" (*Hanlon v. Chrysler Corp.,* 150 F.3d 1001, 1023 (9th Cir.1998) and few, if any, attorneys, would find it cost effective to litigate these cases in the manner necessary to secure relief. Simply put, if these doctors are not afforded the opportunity to litigate their claims in this class action, those claims are not likely to be litigated at all. This Court will not countenance such a result.

RULINGS

For the reasons set forth in the foregoing opinion, this Court ORDERS as follows:

1. Plaintiffs' Motion to Certify a National Class on their claim for Breach of Contract and Breach of Fiduciary Duty are held in abeyance pending further consideration. In the opinion of this Court, claims for breach of contract and breach of fiduciary duty necessarily involve issues of "reliance" such that the liability aspect of each such claim would not necessarily be substantially similar. Thus, absent a showing by Plaintiffs, after additional discovery and legal research, that such claims do not involve individualized issues of "reliance" and, instead, are in fact predicated upon common issues of fact, this Court may not properly certify a National Class for these two claims.

2. Plaintiffs Motion to Certify a National Class on their claim of Breach of the Implied Covenant of Good Faith and Fair Dealing is also held in abeyance pending further consideration. The Court remains unconvinced that uniformity exists among all states as to the existence of such an implied covenant. However, should the Plaintiffs desire to submit a matrix of each State's law in order to prove the uniform existence of an implied covenant of good faith and fair dealing, the Court will afford this issue further consideration.

3. Plaintiffs Motion to Certify a National Class on their claims of Negligence and Gross Negligence are denied. In the opinion of this Court, Plaintiffs seek to impose a fiduciary duty upon St. Paul in favor of Plaintiffs as to its management of its business--such as might exist in a shareholder's derivative action. This Court holds that no such duty exists. This is not to say that evidence of St. Paul's alleged mismanagement and malfeasance are not potentially relevant to the outcome of this litigation. Much to the contrary, Plaintiffs may ultimately seek to prove their individual non-class claims, or certified national class claims--or perhaps a sub-class of West Virginia Plaintiffs - through the presentation of such evidence. For example, on the claims of conversion Plaintiffs may ultimately seek to prove that St. Paul exited the medical malpractice market in order to convert its "tail" reserve to cover up alleged acts of mismanagement. Similarly, on the claim of unjust enrichment, the ultimate finder of fact will necessarily have to examine why St. Paul should, or should not, be entitled to keep the monies it collected and separately designated as "tail" premiums.

**\*9** 4. Plaintiffs' Motion to Certify a National Class on their claim of Conversion is hereby GRANTED. In this Court's opinion, Plaintiffs, and their class

Slip Copy                                                                                                            Page 7
**(Cite as: 2003 WL 23109763 (W.Va.Cir.Ct.))**

members, seek recovery of tangible funds - premiums paid and designated by St. Paul for "tail" coverage - based upon acts of St. Paul which were inconsistent with Plaintiffs rights. The facts relevant to each member of the class to recover are identical and, because conversion is founded in common law, the Court is of the opinion that all members of the Class can be adequately protected herein. In so ruling, the Court does not decide the issue of what law will control. Therefore, the Court hereby Orders that Plaintiffs and St. Paul submit separate and specific Memorandums of Law and, if deemed appropriate or necessary, a matrix of the law of each state. This Court will then determine whether the laws of all states are substantially similar on this issue, or whether this aspect of this case should be divided into sub-classes of Plaintiffs.

5. Plaintiffs Motion to Certify a National Class on their claim of Unjust Enrichment is hereby GRANTED. In this Court's opinion, Plaintiffs, and their class members, seek recovery of tangible funds - premiums paid and designated by St. Paul for "tail" coverage - based upon acts of St. Paul which were inconsistent with the tail coverage for which Plaintiffs contend they paid. The facts relevant to each member of the class to recover are identical and, because unjust enrichment is predicated in equity, the Court is of the opinion that all members of the Class can be adequately protected herein. In so ruling, the Court does not decide the issue of what law will control. Therefore, the Court Orders that Plaintiffs and St. Paul submit separate and specific Memorandums of Law and, if deemed appropriate or necessary, a matrix of the law of each state. This Court will then determine whether the laws of all states are substantially similar on this issue, or whether this aspect of this case should be divided into sub-classes of Plaintiffs.

6. No National Class is certifiable against defendant CIS, and therefore, Plaintiffs' Motion to Certify a National Class as to Defendant CIS is denied. This Court is, by its rulings, not foreclosing the possibility of a State-wide class or even a variety of subclasses.

7. The Parties are hereby directed and ORDERED to submit proposed case management proposals for this Court's consideration;

8. The trial date of January 5, 2004 is hereby ORDERED continued;

9. Within ten days of the date of entry of this Order, Plaintiffs shall provide the Court and all counsel a proposed notice and opt-out form to be sent to all doctors who were insured by St. Paul during the applicable period, and a proposal regarding costs in connection with said notice. Within thirty days thereafter, Defendants must provide a list of names and last known addresses for all doctors known to Defendants who fall within the class definition, as well as any objections to Plaintiffs' proposed notice, opt-out form and cost proposal.

**\*10** The Court notes the objections and exceptions of all parties aggrieved by this Order.

It is FURTHER ORDERED that a certified copy of this Order be sent to all counsel of record.

2003 WL 23109763 (W.Va.Cir.Ct.)

END OF DOCUMENT