Slip Copy
2003-2 Trade Cases P 74,230
**(Cite as: 2003 WL 23005275 (Cal.Superior))**

EXHIBIT C

Page 1

California Superior Court, County.

CIPRO CASES I and II

**Nos. 4154, 4220.**

Nov. 25, 2003.

**\*1** Coordination Proceeding Special Title (Rule 1550(b))CC*CLASS ACTION*

PETERSON, J.

*[PROPOSED] ORDER CERTIFYING PLAINTIFF CLASS*
This document relates to: ALL ACTIONS

Plaintiffs Karyn McGaughey, Donna Moore, Deborah Patane, Peggy Lee and Senior Action Network ("Representative Plaintiffs") filed a motion for certification of a Plaintiff Class defined as:

All natural persons, sole proprietorships, partnerships, limited partnerships, corporations, and other entities, in the State of California who indirectly purchased, paid and/or reimbursed for Cipro intended for consumption by themselves, their families, or their members, participants, employees or insureds (the "Class") during the period from January 8, 1997 through such time in the future as the effects of Defendants' illegal conduct, as alleged herein, have ceased (the "Class Period"). Excluded from the class are all persons who obtained Cipro through the MediCal Prescription Drug Program, governmental entities, the Defendants, their co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, all persons or entities that purchased Cipro for purposes of resale, and any and all judges and justices assigned to hear any aspect of this litigation.

The matter was originally set for hearing on August 15, 2003. The hearing was continued and reset for September 4, 2003.

Subsequent to filing the motion, Plaintiff Lee was withdrawn as a proposed Representative Plaintiff. In addition, Plaintiffs Barbara Cohen, Local 39 of the International Union of Operating Engineers ("Local 39") and Sheet Metal Workers of Southern California, Arizona and Nevada ("Sheet Metal Workers") were added as Representative Plaintiffs.

On September 4, 2003, the Court issued a tentative ruling granting Plaintiffs' Motion. On September 4, 2003, the Court heard argument on Plaintiffs' Motion. Joseph R. Saveri, of the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP, and Dan Drachler of the law firm of Zwerling, Schachter & Zwerling, LLP appeared as Co-Lead Counsel on behalf of the Plaintiffs. Fred H. Bartlit, Jr., of the law firm of Bartlit Beck Herman Palenchar & Scott appeared on behalf of Defendant Bayer Corporation. Edwin John U of the law firm of Kirkland & Ellis appeared on behalf of Defendant Barr Laboratories, Inc. The matter was taken under submission on September 4, 2003. The Court has reviewed the evidence in light of the arguments of counsel and the applicable law. The Court's tentative ruling on September 4, 2003 is affirmed. The Court rules as follows:

The Motion of Plaintiffs for Class Certification is Granted. (*Code of Civ. Proc. § 382*; *Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429.*)

Representative Plaintiffs allege that Defendants entered into a classic horizontal agreement and trust to allocate the market for Cipro throughout the entire United States, including California, to Bayer for at least six years, to restrain competition among horizontal competitors in the market for Cipro and ciprofloxacin, and to grant and maintain Bayer an unlawful monopoly - all in exchange for sizeable payments from Bayer to Barr and HMR. Plaintiffs seek compensatory and punitive damages, and injunctive relief in the form of disgorgement or restitution.

**\*2** Plaintiffs assert three causes of action in their consolidated Amended Complaint: (1) violation of the Cartwright Act, *Bus. & Prof.Code, § § 16720 et seq.* ("Cartwright Act"); (2) violation of the Unfair Business Practices Act, *Bus. & Prof.Code, § § 17200 et seq.* ("17200"); and (3) common law monopoly. Plaintiffs McGaughey, Moore, Patane, Cohen, Local 39 and Sheet Metal Workers assert each of these three causes of actions on behalf of the proposed class. Plaintiffs Senior Action Network only asserts 17200 claims on behalf of the proposed class.

Courts have recognized the propriety of class certification of such claims. (*See B.W.I. Custom Kitchen v. Owens-Illinois, Inc. (1987) 191 Cal.App.3d 1341* (reversing denial of class certification of Cartwright Act claims based on allegations that defendant engaged in horizontal restraints); *Advocate Health Care v. Mylan Labs., Inc. (In re Lorazepam & Clorazepate Antitrust Litig.)*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                                                Page 2
2003-2 Trade Cases P 74,230
**(Cite as: 2003 WL 23005275 (Cal.Superior))**

(D.D.C.2001) 202 F.R.D. 12 ("*Lorazepam*" ) (certifying a class for claims under 15 U.S.C. § 2 arising out of exclusion of generic competition); *In re Ampicillin Antitrust Litig.* (D.D.C.1972) 55 F.R.D. 269 (certifying a class for claims under 15 U.S.C. § 2 arising out of sale of ampicillin and synthetic penicillin); *Mass. Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282 (affirming class certification of consumer fraud claims brought pursuant to § 17200 based on defendant's concealment of material information).)

There is a readily ascertainable class of consumers who purchased Cipro during the Class period, and a well-defined community of interest among all members of the Class. Accordingly, the Class satisfies the prerequisites for certification under the Code of Civil Procedure § 382, and Plaintiffs' motion shall be granted.

*LEGAL STANDARD*

Section 382 of the Code of Civil Procedure provides: "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Code Civ. Proc., § 382. Class certification is appropriate under Section 382 where there is an ascertainable class and a well-defined community of interest. (Linder, 23 Cal.4th at 435.) "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' (*Id.* (quoting *Richmond v. Dart Indus. Inc.* (1981) 29 Cal.3d 462, 470); *see also Mass. Mutual,* 97 Cal.App.4th at 1287.)

California law and policy favor the fullest and most flexible use of the class action device. (*Richmond,* 29 Cal.3d at 469-473.) This is particularly true in the field of consumer protection litigation. (*La Sala v. American Sav. & L. Assn.* (1971) 5 Cal.3d 864, 877; *Vasquez v. Super. Ct.* (1971) 4 Cal.3d 800, 807-809.) The California Supreme Court has directed the courts of this state to use the class action device to fashion " 'an effective and inclusive group remedy," ' *Vasquez,* 4 Cal.3d at 807 (quoting Kalven and Rosenfeld, *Function of Class Suit,* 8 U. Chi. L.Rev. 684, 686 (1941)), where "numerous consumers are exposed to the same dubious practice by the same sellers so that proof of the prevalence of the practice as to one consumer would provide proof for all." (*Vasquez,* 4

Cal.3d at 808.) Any doubt as to the appropriateness of class treatment should be resolved in favor of class certification, subject to later modification if necessary. (*Richmond,* 29 Cal.3d at 473-75.) Finally, the court may not consider the merits of Plaintiffs' claims at the certification stage. (*Linder,* 23 Cal.4th at 443.)

*FINDINGS OF FACT & CONCLUSIONS OF LAW ON CERTIFICATION*

**\*3** The Court finds the requirements of Section 382 are satisfied by the circumstances of the instant action. Specifically, the allegations of Plaintiffs' operative complaint present common questions of law and fact, the parties are numerous, and it is impracticable to bring them all before the Court. In addition, the Court finds the nature of the action infers class wide evidence of impact or actual injury. (*B.W.I. Custom Kitchen v. Owens Illinois, Inc.* (1987) 191 Cal.App.3d 1341; *Rosack v. Volvo of America Corp.* (1982) 131 Cal.App.3d 741, *cert. den.* (1983) 460 U.S. 1012.) And, despite Defendants' arguments to the contrary, the presence of individual damage issues cannot bar class certification. (*B.W.I. Custom Kitchen,* 191 Cal.App.3d at 1354.)

The Court is satisfied that Plaintiffs have established all of the prerequisites for class certification under California law. It is inappropriate to address the legal and factual merits of Plaintiffs' claims. "[T]he question of certification [i]s essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder,* 23 Cal.4th at 439-40.)

*Ascertainability & Numerosity*

Ascertainability is "achieved by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 915; *see also Aiken v. Obledo* (E.D.Cal.1977) 442 F.Supp. 628, 658.) As the California Supreme Court has explained: "If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706.)

Here, the Class is composed of an easily

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ascertainable, self-identifying set of individuals and entities who have purchased Cipro. Class members can be ascertained (and can identify themselves) based upon the purchase of Cipro during the Class period. The Class satisfies the ascertainability requirement.

Both Section 382 and Federal Rule 23(a)(1) require that the individual joinder of all plaintiffs be impracticable. "[A]s few as 40 class members should raise a presumption that joinder is impracticable." (1 *Newberg on Class Actions* § 3.05 (3d. ed.1992).) Cipro is the best-selling antibiotic in the world. An estimated 100 million prescriptions for Cipro have been filled since the introduction of the drug in 1987. The proposed Class here easily consists of hundreds of thousands of people who have purchased Cipro in California. The numerosity requirement is satisfied.

*Community Of Interest*

*Predominance of Common Issues*

"As a general rule, if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. In order to determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged." (*Hicks,* 89 Cal.App.4th at 916.)

**\*4** With respect to Plaintiffs Cartwright Act claim, Plaintiffs allege that all Class members paid supra-competitive prices for Cipro as a direct and proximate result of Bayer's alleged combinations and contracts to restrain trade and monopolize the market for ciprofloxacin hydrochloride. When a horizontal market allocation agreement or illegal monopoly has been alleged, common questions predominate over any questions affecting only individual class members. (*See B.W.I. Custom Kitchen,* 191 Cal.App.3d at 1349 ("It seems more likely that the evidence proving the existence of a conspiracy will concentrate upon the relationship among the alleged conspirators and the scope of the conspiracy without regard to the business relationship between the conspirators and any individual class member."); *Rosack,* 131 Cal.App.3d at 752 (1982) ( "The existence of the ... conspiracy is the predominant common issue determinative of liability to all class members."*)

In *B.W.I. Custom Kitchen,* the Court of Appeal on a

writ petition reversed the trial courts' denial of class certification and ordered it to certify the class. In so ordering, the *B.W.I. Custom Kitchen* Court acknowledged the legion of cases certifying cases alleging horizontal agreements as class actions. (191 Cal.App.3d at 1348-49; *see also Rosack,* 131 Cal.App.3d at 752; *Classen v. Weller* (1983) 145 Cal.App.3d 27, 47; *Pharmaceutical Cases I, II and III* (1999) J.C.C.P. Nos. 2969, 2971 and 2972 (San Fran. Sup.Ct.); *In re Terazosin Hydrochloride Antitrust Litig.* (S.D.Fla.2001) 203 F.R.D. 551 (certifying direct purchaser class in case involving horizontal agreement virtually identical to this one); *Zuccarini v. Hoechts* (*In re Cardizem CD Antitrust Litig.*) (E.D.Mich.2001) 200 F.R.D. 297 (certifying indirect purchaser class in case virtually identical to this one); *Lorazepam,* 202 F .R.D. at 28; *In re NASDAQ Market-Makers Antitrust Litig.* (S.D.N.Y.1996) 169 F.R.D. 493, 518 ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."); *In re Brand Name Prescription Drugs Antitrust Litig.* (N.D.Ill. Nov. 18, 1994) 1994 WL 663590, at *3 ("As we see it, the factual variations in plaintiffs' methods of business operation does not dilute the typicality of their common claim of a conspiracy to fix, and/or stabilize the price of brand-name prescription drugs in violation of antitrust laws.").) The Court in *B.W.I. Custom Kitchen* found that "[m]ost courts hold that when a conspiracy to fix prices has been alleged, common questions predominate over any questions affecting only individual class members." (191 Cal.App.3d at 1348-49.)

Similarly, fact of injury or impact may be demonstrated on a class-wide basis if the common proof of conspiracy demonstrates at least some damage to the class. (*B.W.I. Custom Kitchen,* 191 Cal.App.3d at 1350 n. 7.) Where, as here, Plaintiffs allege a market-wide restraint of trade, fact-of-injury is assumed for class certification purposes . (*See id.* at 1350 ("Courts have shown no hesitancy in ruling that when a conspiracy to fix prices has been proven and plaintiffs have established they purchased the price-fixed goods or services, the jury can *infer* plaintiffs were damaged.") (emphasis in original); *Lorezapam,* 202 F.R.D. at 29; *In re Master Key Antitrust Litig.* (2d Cir.1975) 528 F.2d 5, 12 n. 11.)

**\*5** That proof of impact can be shown by common proof is further demonstrated by the expert Declaration of Raymond S. Hartman in Support of Certification of the Class of Indirect Purchasers of

Slip Copy                                                                                    Page 4
2003-2 Trade Cases P 74,230
**(Cite as: 2003 WL 23005275 (Cal.Superior))**

the State of California ("Hartman Decl.") and the Rebuttal Declaration of Raymond S. Hartman in Support of the Certification of the Class of End-Payer Purchasers ("Hartman Rebuttal Decl."). If generic ciprofloxacin would, but for the Agreements, have sold for less than Cipro during the Class Period, all class members who would have bought the generic were injured. (*See* Hartman Decl., ¶ 10(e).)

Defendants rely on *American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, and *Collins v. Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, for the proposition that lack of proof of individual impact of injury is fatal to class certification. *American Suzuki* and *Collins* were factually distinguishable from the instant case. *American Suzuki* was a class action against the manufacturer for breach of the implied warranties and *Collins* was a class action against egg farmers for the sale and distribution of contaminated eggs. Neither *American Suzuki* nor *Collins* was an anti-trust action under the Cartwright Act and therefore, there was no presumption of antitrust violation which in turn results in an inference of classwide impact of injury. In *American Suzuki,* the court found not all class members' vehicles were defective so there could have been no breach of the warranties. (*American Suzuki,* 37 Cal.App.4th at 1298.) And in *Collins* it was determined that not all the eggs had been contaminated, and even the contaminated eggs didn't necessarily cause illness when ingested. (*Collins,* 187 Cal.App.3d at 69, 74.) As a result, both *American Suzuki* and *Collins* involved critical issues of impact of injury as to the class as a whole, which are inapplicable to the instant matter.

Additionally, the court in *Linder* rejected *American Suzuki* and *Collins* in as much as the merits of the individual class members' claims could not be established on a classwide basis. (*Linder,* 23 Cal.4th at 442.)

Likewise, common issues predominate Plaintiffs' common law monopolization claim. Plaintiffs allege that Defendant engaged in the willful acquisition of the power to control prices or exclude competition from commerce in a particular geographic area. Determination of the relevant market and the defendant's monopoly power within that market are common to all Class members. (*See Jennings Oil Co. v. Mobil Oil Corp.* (S.D.N.Y.1978) 80 F.R.D. 124, 130; *New York v. General Motors Corp.* (S.D.N.Y.1973) 60 F.R.D. 393, 395, rev'd (2d Cir.N.Y.1974) 501 F.2d 639.) Because this inquiry focuses on the position of the seller, not that of

individual buyers, it "is readily susceptible to proof in a class action." (*Hill v. A-T-O, Inc.* (E.D.N.Y.1978) 80 F.R.D. 68, 69; *see also In re Visa Check/MasterMoney Antitrust Litig.* (E.D.N.Y.2000) 192 F.R.D. 68, 87, *aff'd* (2d Cir.N.Y.2001) 280 F.3d 124, *cert. den.* (2002) 122 S.Ct. 2382.)

**\*6** Common issues also predominate with respect to Plaintiffs' 17200 claim. Plaintiffs' fundamental allegation with respect to the 17200 claims is that Bayer violated federal and state antitrust laws, and by so doing, committed unlawful acts in violation of 17200. Proof of Defendant's alleged antitrust violations will be common to all Class members, and satisfies the predominance requirement. *Mass. Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, is instructive. In *Mass. Mutual,* the Court of Appeal affirmed certification of a class of insurance policyholders asserting claims under 17200 based upon the insurer's failure to disclosure material information regarding policy rates. The Court found that plaintiffs' allegation of nondisclosure of material information presented "common legal and factual issues which were plainly suitable for treatment as a class action." (*Id.* at 1292.)

As Plaintiffs note, at some point it will be necessary to determine the amount of damages to which Class members are entitled. However, "[i]t has been repeatedly held ... that the presence of individual damage issues can bar certification.... [I]n almost every class action, factual determinations of damages to individual class members must be made. Still, we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device." (*B.W.I. Custom Kitchen,* 191 Cal.App.3d at 1354 (citations and quotations omitted); *see also Rosack,* 131 Cal.App.3d at 753 ("[A] jury can infer the fact of injury when a conspiracy to fix prices has been established and plaintiffs have established that they purchased the affected goods or services. This inference eliminates the need for each class member to prove individually the consequences of the defendants' actions to him or her. Accordingly, impact can be treated as a common question for certification purposes.") (citation omitted); *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 238 ("Differences in individual class members' proof of damages is not fatal to class certification.").)

California law does not require individualized proof of damages as a prerequisite to class certification.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Here, if they prevail on their causes of action, Class members' damages for their purchase of Cipro can be calculated on an aggregate basis. Plaintiffs have submitted declarations from expert economist Ray Hartman, who testified that it is possible to calculate aggregate measured damages accruing to the Class through the use of class-wide common data and analysis. (*See* Hartman Decl., ¶ 11(h); Hartman Rebuttal Decl., ¶ 33.) Hartman's testimony satisfies Plaintiffs' obligations at this stage. [FN1]

> FN1. With respect to Plaintiffs' requests for disgorgement of Bayer's revenues or profits from wrongful conduct, including restitution to Plaintiffs and members of the Class, such relief plainly does not turn upon individualized issues.

*Typicality*

 The typicality requirement is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based upon a similarity of legal theories. (*See Lorezapam, 202 F.R.D. at 28* (typicality present where "the same theories of liability will be advanced by both the class representatives and the putative class members"); *Classen, 145 Cal.App.3d at 46* ("[t]he only requirements are that common questions of law and fact *predominate* and that the class representative be *similarly* situated." (emphasis in original).) As a practical matter, the commonality and typicality requirements "tend to merge," such that the factors tending to support or undermine a finding of commonality apply with equal force to the Court's typicality analysis. (*General Tel. Co. of Southwest v. Falcon (1982) 457 U.S. 147, 158 n. 13*.) It has long been established that class certification under section 382 does not require simultaneous or identical injuries. (*Fanucchi v. Coberly-West Co. (1957) 151 Cal.App.2d 72, 80-82.*)

 **\*7** The claims of the Representative Plaintiffs are typical of the Class as a whole. Plaintiffs, like all Class members, allege that they paid inflated prices for Cipro as a result of Bayer's anti-competitive activity. Like all Class members, Plaintiffs allege that they have suffered relatively modest, purely economic, damages as a result of Bayer's alleged misconduct. The Representative Plaintiffs are similarly situated vis a vis the Class, and the typicality requirement is satisfied.

*Adequacy*

 The adequacy of representation requirement is met by fulfilling two conditions: (1) plaintiffs must be represented by counsel qualified to conduct the litigation; and (2) plaintiffs' interests cannot be antagonistic to those of the class. (*McGhee v. Bank of America (1976) 60 Cal.App.3d 442, 451.*) Plaintiffs here meet both of these requirements.

 As to the first requirement, the Court is satisfied that Plaintiffs' counsel have extensive experience in prosecuting complex antitrust class actions such as this one. Class counsel are clearly "qualified, experienced and generally able to conduct the proposed litigation." (*Miller v. Woods (1983) 148 Cal.App.3d 862, 874.*)

 Second, Plaintiffs' interests are coextensive with those of the Class, since each Representative Plaintiff and each Class member alleges injury caused by Bayer in the same manner, and the Representative Plaintiffs seek relief that is identical to that which would be sought by members of the Class. In declarations before the Court, the Representative Plaintiffs have demonstrated their commitment to representing the Class, including responding to written discovery requests, being deposed, and retaining experienced and competent counsel. Nothing more is required. (*McGhee, 60 Cal .App.3d at 451.*)

*Superiority*

 It is well-established that the class action device is superior to other available methods for the fair and efficient adjudication of a controversy affecting large numbers of purchasers of products or services, who have been overcharged as the result of an antitrust violation. (*Rosack, 131 Cal.App.3d at 760-63.*) Both the California Supreme Court and United States Supreme Court have recognized that, absent class treatment, similarly situated consumers with relatively small but nevertheless meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort and expense required to prosecute individual actions. "Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce 'several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of

Slip Copy                                                                                    Page 6
2003-2 Trade Cases P 74,230
**(Cite as: 2003 WL 23005275 (Cal.Superior))**

the burden of multiple litigation involving identical claims." ' (*Linder, 23 Cal.4th at 445* (*quoting Vasquez, 4 Cal.3d at 808*).) The United States Supreme Court, noting that class actions aim primarily at vindicating "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," declared cases like this one to be paradigms for class treatment: "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (*Amchem Products, Inc. v. Windsor (1997) 521 U.S. 591, 617* (citations omitted).)

**\*8** This action is just such a "core" class action. Few of the present Class members could afford to undertake individual litigation against Bayer to recover the relatively modest damages at issue here. But the failure to recover such damages is a real hardship to people of average means. If the class device were unavailable here, an economic injustice would result: the Class members would, as a practical matter, have no meaningful redress against Bayer and the other Defendants, and Bayer would be unjustly enriched by the revenues it obtained from its alleged misconduct. Because use of the class device will allow the parties and the courts to conserve valuable resources, and because this class action is perhaps the only vehicle for this Class of consumers to vindicate their legal rights, a class action is the most efficient and fair means for the adjudication of this matter.

*ORDER*

 Pursuant to Code of Civil Procedure § 382, the Court concludes that Plaintiffs have satisfied the requirements for class certification. Accordingly, the Court ORDERS:

 1. The following Class is certified for purposes of litigation and trial:
   All natural persons, sole proprietorships, partnerships, limited partnerships, corporations, and other entities, in the State of California who indirectly purchased, paid and/or reimbursed for Cipro intended for consumption by themselves, their families, or their members, participants, employees or insureds (the "Class") during the period from January 8, 1997 through such time in the future as the effects of Defendants' illegal conduct, as alleged herein, have ceased (the "Class Period"). Excluded from the class are all persons who obtained Cipro through the MediCal Prescription Drug Program, governmental entities, the Defendants, their co-conspirators, along with all of their respective parents, subsidiaries, and/or affiliates, all persons or entities that purchased Cipro for purposes of resale, and any and all judges and justices assigned to hear any aspect of this litigation.

 2. Representative Plaintiffs Karyn McGaughey, Donna Moore, Deborah Patane, Barbara Cohen, Local 39 of the International Union of Operating Engineers, and the Sheet Metal Workers of Southern California, Arizona and Nevada, are designated and appointed as representatives for the Class on all claims asserted on behalf of the Class. Senior Action Network is designated and appointed only as Representative for the Class on the claims asserted under California Business and Professions Code Section 17200, *et seq.*

 3. The following law firms are designated and appointed as Class Counsel: Lieff, Cabraser, Heimann & Bernstein, LLP and Zwerling, Schachter & Zwerling, LLP.

 4. As soon as practicable after the entry of this Order, all parties shall meet and confer to develop a plan for dissemination of notice to the Class. Class Counsel shall submit a proposed notice plan to this court within thirty (30) days after entry of this Order.

 **\*9** IT IS SO ORDERED.

2003 WL 23005275 (Cal.Superior), 2003-2 Trade Cases P 74,230

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works