UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARJORIE FERRELL, et al, : Case No. C-1-01-447

Plaintiffs, : Judge Sandra S. Beckwith
Magistrate Judge Timothy S. Hogan

v. :

WYETH-AYERST LABORATORIES, INC., et al, :

Defendants :

**ORDER**

Before the Court are the following motions:

Defendants motion to dismiss and to strike (Doc. 8); and

Defendants motion for partial dismissal (Doc. 39); Plaintiffs opposition thereto (Doc. 43 and 44); and Defendants reply (Doc. 47).

**BACKGROUND**

Wyeth[1] manufactures Premarin, an estrogen replacement product that has been sold since 1943. (Compl.¶ 25)[2] The FDA approved Premarin for several uses, including relief from menopausal

[1] Unless otherwise indicated and for ease of reference, "Wyeth" refers to the defendants Wyeth-Ayerst Laboratories Inc. and American Home Products Corporation (the latter apparently now known simply as "Wyeth").

[2] All references to the Complaint (or "Compl.") are to the Corrected Consolidated Amended Class Action Complaint (Doc. 31), unless otherwise indicated.

vasomotor symptoms, vulvar and vaginal atrophy, and prevention of osteoporosis.  Premarin is used for both estrogen replacement therapy ("ERT") and hormone replacement therapy ("HRT").  Duramed Pharmaceuticals manufactures Cenestin.  After Duramed unsuccessfully sought FDA approval to market Cenestin as a generic substitute for Premarin, it sought approval for Cenestin as a new, branded product.  On March 24, 1999, the FDA approved Cenestin for a single indication: the treatment of vasomotor symptoms of menopause.

Duramed later filed suit against Wyeth in this district, contending that Wyeth engaged in monopolistic and anti-competitive practices designed to keep Cenestin from the market and/or from gaining market share.  (Case No. C-1-00-735)  Other lawsuits against Wyeth followed Duramed's, including the "direct purchaser" action (Case No. C-1-01-704), and these consolidated actions brought by  "indirect purchasers" (or "end payors") of Premarin.

The Complaint generally alleges that, both before and after the FDA approved Cenestin, Wyeth engaged in a public campaign to tout the benefits of Premarin, while unfairly and untruthfully denigrating Cenestin.  (Compl.¶ 46-50)  Plaintiffs allege that, after Cenestin gained FDA approval, Wyeth engaged in a systematic attempt to keep Cenestin from growing market share, by entering into "exclusive" contracts with health insurers and pharmacy benefit managers (PBMs) in the United States.  These exclusive

contracts require that Premarin be the only conjugated estrogen product on the plans' drug formulary.  Wyeth is able to procure these exclusive contracts by offering rebates, discounts, fees and other financial incentives to the plans and PBMs.  (Compl. ¶61)  Thus, Plaintiffs allege, the plans or PBMs would incur substantial financial losses by adding Cenestin to their formularies, as they would lose their bargained for rebates, discounts or fees if the plans failed to meet their sales targets for Premarin.

The "indirect purchaser" Plaintiffs in this case generally allege that Wyeth's monopolistic and anti-competitive conduct relative to Duramed's marketing of Cenestin has injured them in two ways: (1) Wyeth's conduct caused plaintiffs to pay more for conjugated estrogens than they otherwise would have paid, and (2) Wyeth's conduct excluded Duramed (and other unnamed potential competitors) from the market, "thereby restricting consumers' access to alternative conjugated estrogen products."  (Compl. ¶35(b) and (c))

## ANALYSIS

I.   Wyeth's Motion to Dismiss Or Strike.

Wyeth's first motion to dismiss and to strike (Doc 8) was addressed to Plaintiff's original Complaint (Doc 1).  The motion to strike was directed to allegations in Paragraphs 41-46 of the original Complaint relating to Wyeth's activities in petitioning the FDA, on the grounds that those allegations are barred by the

*Noerr-Pennington* doctrine. The Corrected Consolidated Amended Complaint (Doc. 31) omits the objectionable allegations concerning Wyeth's activities with the FDA. The Court has reviewed the Complaint, and is satisfied that its allegations do not run afoul of *Noerr-Pennington*, nor of this Court's order in *Duramed v. Wyeth*. Therefore, the motion to strike is denied as moot.

Wyeth's first motion to dismiss also asked this Court to decline jurisdiction over Counts III (various state antitrust claims) and Count IV (unjust enrichment claims) of the Complaint. Wyeth does not dispute that this Court has jurisdiction under 28 U.S.C. §1331 over Plaintiffs' federal antitrust claims in Counts I and II. 28 U.S.C. §1367 permits the exercise of supplemental jurisdiction over the state law claims that arise from a "common nucleus of operative facts." The allegations of Wyeth's monopolistic and/or anticompetitive conduct lie at the heart of all claims raised in the Complaint.

The Court notes that the federal claims are properly limited to a prayer for injunctive relief, while Counts III and IV seek money damages. This fact alone does not justify a refusal to exercise supplemental jurisdiction over the state law claims. But it is important to assure that the state law claims, and the issues they raise, do not "swallow" the federal claims. See, e.g., *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, at 309 (3rd Cir. 2003), noting that a "federal tail" wagging a "state dog"

raises sufficient grounds to deny supplemental jurisdiction over state law claims that are the "real" purpose of the lawsuit.

The Court cannot conclude that the state law antitrust and unjust enrichment claims are the "real" or dominant purpose of Plaintiffs' lawsuit at this stage. The allegations concerning Wyeth's alleged anti-competitive conduct, if accepted by the trier of fact, could form the basis for substantial injunctive relief under federal law. (See Compl. ¶70 and 75)  Therefore, the Court denies the motion to dismiss Counts III and IV in their entirety based on 28 U.S.C. §1367.

II.   Wyeth's Motion for Partial Dismissal

After Plaintiffs filed their Consolidated Amended Complaint, Wyeth filed a second motion to dismiss (Doc. 39). In this motion, Wyeth seeks dismissal with prejudice of the state law claims arising under the laws of states other than those in which the named Plaintiffs reside. Wyeth contends that the named Plaintiffs lack standing to pursue those claims.

Wyeth also seeks the dismissal of Count IV, Plaintiffs' state law "unjust enrichment" claim, in its entirety. Wyeth argues that such a remedy is inappropriate in states that do not permit antitrust indirect purchaser suits. And, in those states that **do** recognize such suits, Wyeth argues that the adequate remedy at law provided by the state antitrust statute makes equitable relief unavailable.

A. Count III (State Law Antitrust Claims).

Subsequent to the filing of the Consolidated Complaint (Doc. 31), seven of the eight named individual Plaintiffs were withdrawn as class representatives. (See Doc. 49) The remaining named Plaintiffs are: (1) Marjorie Ferrell, a resident of the state of Florida; (2) the United Food & Commercial Workers Midwest Health Benefits Fund ("UFCW Fund"), headquartered in Illinois, which pays for or reimburses its beneficiaries in the states of Arizona, California, Florida, Illinois, Kansas, Kentucky, Louisiana, Minnesota, Missouri, Michigan, Nevada, North Carolina, New York, Tennessee and Wisconsin (Compl. ¶20); and (3) the Twin Cities Bakery Workers Health & Welfare Fund ("TCBW Fund"), headquartered in Minnesota, which pays for or reimburses its beneficiaries in the states of Indiana, Minnesota, North Dakota, South Dakota, and Wisconsin. (Compl. ¶23) (Plaintiff McDermott in Case No. 01-878, consolidated with this action, is also a resident of Florida.)

1. Standing of the Individual Named Plaintiff

Wyeth argues that Ms. Ferrell lacks Article III standing to prosecute state law claims on behalf of residents in states other than Florida. (Wyeth does not contest Ms. Ferrell's standing to prosecute her own claims, both federal and state.)

It is important to distinguish the issue of a plaintiff's standing to sue the defendant, from the issue of whether that plaintiff can properly prosecute absent class members' claims.

See *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998). Standing is established when a potential plaintiff (1) has suffered an injury in fact, an invasion of a legally protected interest that is concrete and actual; (2) can demonstrate that a causal connection exists between the injury and the conduct of which the plaintiff complains; and (3) can demonstrate the likelihood, and not merely the speculative possibility, that the injury will be redressed by the requested relief. *Fallick, supra* (quoting from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Wyeth relies on *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F.Supp.2d 1365 (S.D. Fla. 2001), where the district court dismissed antitrust claims arising under the laws of states in which no named plaintiffs resided or purchased the drug at issue, relying on *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987) and *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000). (*Griffin* and *Prado-Steiman* generally held that a claim cannot be asserted on behalf of a class unless the named plaintiff has "suffered the injury" that gives rise to that claim.) But in *Terazosin*, the district court had dismissed with prejudice the named plaintiffs' federal law claims, leaving **only** a collection of state law claims brought by individual plaintiffs under various state statutes. It was therefore proper to assure that each named plaintiff had actual standing to bring a claim

against the defendant. Moreover, to the extent that *Griffin* and *Prado-Steiman* differ from *Fallick* (which the Court does not conclude), this Court is bound to follow *Fallick*.

Ms. Ferrell unquestionably has standing to prosecute her own claims against Wyeth. The propriety of her representation of other individual consumers residing in states other than Florida should be analyzed under Rule 23.

2. Standing of the Funds

Wyeth argues that the Funds have standing to raise state law claims only in the states where the funds are "located," thus limiting them to claims brought under Illinois law (UFCW Fund) and Minnesota law (TCBW Fund). Wyeth cites *Maiden v. Biehl*, 582 F.Supp. 1209, 1218 (S.D.N.Y. 1984). That case is inapposite, as it discusses application of a New York borrowing statute to determine the appropriate state's statute of limitation in a securities fraud case.

Here, the Complaint alleges that the Funds have paid (or co-paid) for Premarin on behalf of their members residing in various states. The Court rejects Wyeth's argument that they lack standing to prosecute claims anywhere but in their "home" states, because the **purchase** of Premarin - the critical event causing the alleged antitrust injury - did not take place only in Illinois or Minnesota. The actual purchase allegedly took place in the various states where the Funds' members reside.

The Court finds that the Funds have alleged sufficient facts to establish their Article III standing to pursue state law claims in the "Indirect Purchaser States" where their members purchased Premarin. Thus, UFCW Fund has standing to prosecute state law claims in Arizona, Florida, Kansas, Louisiana, Minnesota, Michigan, Nevada, North Carolina, New York, Tennessee, and Wisconsin. TCBW has standing to prosecute state law claims in Minnesota, North Dakota, South Dakota, and Wisconsin.[3]

3. New Jersey, Louisiana, Arizona, Tennessee and Maine State Antitrust Claims.

Wyeth next argues that, if the Count III claims survive its standing challenge, claims under these five states' laws must be dismissed for failure to state a claim under those states' laws.

New Jersey does not permit an "indirect purchaser" action under the state's antitrust statute, N.J.S.A. §56:9-1 et seq. While Plaintiffs mention that statute in their opposition memo (Doc. 43, p. 12), the cases they cite deal with the New Jersey "consumer fraud" statute, N.J.S.A. §56:8-1, et seq., which is not pled in the Complaint. The Court will not widen the scope of the claims at issue here in this fashion. Moreover, the Court has reviewed the two unpublished opinions from New Jersey trial courts

---

[3] UFCW has members in the states of Illinois, Kentucky, and Missouri, and TCBW in Indiana, but these four states are not included in the "Indirect Purchaser States" identified in the Complaint. Plaintiffs expressly exclude California from this action.

which take diametrically opposed positions on the question of whether the "consumer fraud" statute can support an antitrust indirect purchaser action: *Kieffer v. Mylan Laboratories*, Case No. BER-L-365-99-EM (N.J. Super. Ct. Law Div., Sept. 9, 1999), and *Cement Masons Local Union No. 699 v. Mylan Laboratories*, No. MER-L-000431-99 (N.J. Super. Ct. Law Div., April 18, 2000). Given these facts, the Court will decline to exercise pendent jurisdiction over the Count III New Jersey claim, and that claim is dismissed without prejudice.

This Court follows the Fifth Circuit in finding that Louisiana law does not recognize an indirect purchaser's claim for damages under the state's antitrust statute. *Free v. Abbott Labs*, 176 F.3d 298 (5th Cir. 1999), *aff'd on other grounds*, 529 U.S. 333 (2000). The Count III claim under Louisiana law is dismissed with prejudice.

The Arizona Supreme Court has held that the Arizona antitrust statute permits indirect purchaser suits. *Bunkers Glass Co. v. Pilkington*, 75 P.3d 99 (Ariz. 2003). The motion to dismiss the Count III claim under Arizona law is therefore denied, and the UCBW Fund has standing to prosecute that claim.

The Tennessee antitrust statute has been described as applying to conduct occurring within the state, or "predominantly intrastate transactions." See, e.g., *Lynch Display Corp. v. National Souvenir Center, Inc.*, 640 S.W.2d 837, 840 (Tenn. Ct.

App. 1982). A more recent decision clarifies the scope of the statute for indirect purchaser actions. See, *Sherwood v. Microsoft Corp.*, 2003 Tenn. App. LEXIS 539, at *73 (Tenn. Ct. App. July 31, 2003) [Tennessee statute applies to conduct that "substantially affects commerce within this state."] While Wyeth contends this decision is "wrong," this Court is not inclined to second-guess the thoughtful determination by a state intermediate appellate court applying state law to the issue of indirect purchaser suits.[4]

The Complaint alleges UFCW Fund's relationship to its subscribers in Tennessee included paying, or copaying, for Premarin on behalf of those subscribers. Therefore, the Tennessee claim should proceed. A more developed factual record is needed concerning whether the conduct occurring within the state falls within the standards articulated by the Tennessee court. The same analysis apparently applies to the Maine antitrust statute. See *In re Microsoft Antitrust Litig.*, 2001 Me. Super. Lexis 47 (Super.Ct. March 26, 2001). The motion to dismiss the Tennessee and Maine claims is denied.

B. Count IV (Unjust Enrichment)

Wyeth argues that the "unjust enrichment" claims in states

[4] See *Meridian Mutual Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999): "A federal court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise . . ."

that follow *Illinois Brick* and preclude antitrust damages claims by indirect purchasers must be dismissed, because the claim attempts to evade state law. Wyeth also seeks dismissal of the unjust enrichment claims in those states that permit indirect purchaser actions, arguing that the antitrust statutes in those states provide a "complete and adequate" remedy at law.

Plaintiffs cite *In re Cardizem CD Antitrust Lit.*, 105 F.Supp.2d 618, 669-670 (E.D. Mich. 2001), to argue that their claims for unjust enrichment, purportedly brought under the laws of all fifty states, should survive. But the facts in *Cardizem* were far different. There, the individual plaintiffs were residents of just ten states who brought unjust enrichment claims in those ten states (along with state antitrust claims in eight of the ten). The case also involved an alleged per se illegal agreement between Cardizem's manufacturer and its generic competitors, involving many millions of dollars paid by the manufacturer to forestall the introduction of generic substitutes for Cardizem. The plaintiffs sought disgorgement of those payments under unjust enrichment principles.

In contrast, the district court in *In re Terazosin Hydrochloride Antitrust Lit.*, 160 F.Supp.2d 1365 (S.D. Fla. 2001) addressed a similar omnibus claim for unjust enrichment, brought under the common law of "every state." The district court dismissed the claim (without prejudice), describing it as an "end

run" around state laws that do not permit indirect purchaser damage suits. The court permitted the claim to proceed only in states that also permit indirect purchasers to sue for antitrust damages.

As with the Count III claims, the named Plaintiffs must have standing to prosecute an unjust enrichment claim. Ms. Ferrell's claim under Florida law appears to be a valid alternative remedy to her statutory claim. While there is some Florida authority suggesting that unjust enrichment is not available if plaintiff has an "adequate legal remedy" (see, e.g., *Martinez v. Weyerhaeuser Mortgage Co.*, 959 F.Supp. 1511 (S.D. Fla 1996) and cases cited therein), those cases are based on written contracts, which provide the "adequate legal remedy" to the aggrieved party. Moreover, in a more recent opinion, the *Terazosin* court certified both antitrust and unjust enrichment claims under Florida law. See, *In Re Terazosin Antitrust Lit.*, 2004 U.S. Dist. LEXIS 6176 (S.D. Fla., April 8, 2004).

Similarly, in the states in which the two Funds have standing to pursue the state law antitrust claims, Wyeth has not shown that an unjust enrichment claim is barred as a matter of law as an alternate remedy.

This Court is not persuaded that the unjust enrichment claims, which plaintiffs admit are pled as an alternate remedy to their state antitrust law claims, should be dismissed under Rule

12. As with the Count III claims, the question of whether the named Plaintiffs may prosecute their unjust enrichment claims on behalf of a class of "all" consumers in "all" fifty states is analyzed under Rule 23.

**CONCLUSION**

The Court denies Wyeth's motion to dismiss and to strike (Doc. 8). The Court grants in part and denies in part Wyeth's motion for partial dismissal (Doc. 39).

DATED: June 30, 2004

s/Sandra S. Beckwith
Sandra S. Beckwith
United States District Judge