EXHIBIT A

Westlaw

Not Reported in P.3d
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438
**(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))**

Page 1

District Court of Kansas.

Bryce BELLINDER, Individually and as
Representative of all Persons Similarly
Situated, Plaintiffs,
v.
MICROSOFT CORP., Defendant.
Consolidated with Barbara MACK, Individually and
on Behalf of Others Similarly
Situated
v.
MICROSOFT CORP. (Sedgwick County District
Court, Case No. 00-C-0855),
and
Jay Clifford FOSTER, Individually and on Behalf of
All Others Similarly
Situated
v.
MICROSOFT CORP. (Wyandotte County District
Court, Case No. 00-C-00092).

No. 00-C-0855, 00-C-00092, 99CV17089.

Sept. 7, 2001.

Deborah McIlhenny, Hutton & Hutton, Wichita, KS, for Plaintiff.

For defendant: Charles Casper, Redmond, Wash.

JOURNAL ENTRY
(*Memorandum Ruling*)

SHEPPARD, D.J.

*1 In this consolidated action, Plaintiffs, Bryce Bellinder, Barbara Mack and Jay Clifford Foster ("Plaintiffs") move the court pursuant to K.S.A. 60-223 for an order establishing a class of indirect purchasers [FN1] to recover damages from defendant, Microsoft Corporation ("Microsoft") for alleged violations of K.S.A. 50-101, 50-112, 50-132 (K.S.A., Ch. 50, Restraint of Trade), treble damages under K.S.A. 50-801, *et seq.* and violations of the Kansas Consumer Protection Act, K.S.A. 56-626, *et seq.* The motion has been fully briefed and argued and is ripe for ruling. [FN2]

FN1. Under federal antitrust law, indirect purchaser suits for overcharge damages are essentially prohibited. See *Hanover Shoe, Inc. v. United Shoe Machinery Corp.* [1968 TRADE CASES ¶ 72,490], 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois* [1977-1 TRADE CASES ¶ 61,460], 431 U.S. 720 (1977). In *Hanover Shoe*, the Supreme Court held that a direct purchaser from a monopolist could claim the entire monopoly overcharge as damages, even though the purchaser passed most of the overcharge on to its customers. A decade later in *Illinois Brick*, the Supreme Court followed *Hanover Shoe* in deciding that, since the direct purchaser has an action for the entire monopoly overcharge, the indirect purchaser should have none. It did not matter that the indirect purchaser could show that part of the overcharge had been passed on and that it had been injured as a result.

Many states in response to *Illinois Brick* enacted repealer statutes that allow indirect purchaser lawsuits to be maintained locally. The Kansas repealer statute can be found at K.S.A. 50-801(b). Such local repeals were validated by the Supreme Court in *California v. ARC America Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Kansas' repealer statute therefore grants an individual indirect purchaser standing to sue in state court under the state's antitrust laws for claims accruing prior to July 1, 2000. See HB 2855 (Ch. 136, 2000 Session Laws, Vol. 1).

FN2. The substantive allegations of the pleadings are accepted as true for purposes of determining class certification. *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir 1975); *In re Catfish Antitrust Litigation*, 826 F.Supp 1019, 1033 (N.D.Miss 1993). Parties may also supplement the pleadings with material so that the court can make an informed decision. *Blackie*.

*Nature of the Case*

Plaintiffs have filed a petition alleging that Microsoft abused its monopoly power and contracted, combined or conspired to fix the price of the Windows Operating System ("WINDOWS") in Kansas above competitive levels, resulting in an overcharge that was passed on by intermediate purchasers to plaintiffs. Microsoft denies that it abused its

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d  
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438  
(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))

Page 2

monopoly power or that it fixed the price of WINDOWS in violation of Kansas law.

Microsoft argues that Plaintiffs cannot meet their burden of proof for certifying a class. K.S.A. 60-223. Microsoft contends there are so many distribution channels for its operating system and so many intermediate sellers that Plaintiffs cannot prove the existence of an antitrust injury common to all class members (*i.e.* that any overcharge was passed on to them). The proposed class consists only of indirect purchasers of WINDOWS (*i.e.* persons that bought from intermediaries or retailers and not directly from Microsoft itself). Microsoft claims that the number of intermediaries in this case is so large that any damages are virtually impossible to calculate for retail customers like Plaintiffs.

*Discussion*

Before certifying a class of indirect purchasers, the court must find that Plaintiffs satisfy the four threshold requirements of 60-223(a) and the additional requirements of predominance and superiority under K.S.A. 60-223(b)(3). [FN3]

> FN3. K.S.A. 60-223 is patterned after Fed.R.Civ.P. 23 and decisions of the federal courts interpreting that rule are traditionally followed in Kansas. *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 636, 602 P.2d 1305 (1979); *Brueck v. Krings*, 6 Kan.App.2d 622, 624, 631 P.2d 1233 (1981).

*Numerosity*

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable." K.S.A. 60-223(a)(1). Plaintiffs are not required to prove the exact size of the proposed class, but only that the number is exceedingly large. *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir.1978)("no set formula" to determine whether numerosity requirement was met; instead, this is a fact-specific inquiry best left to discretion of district court); *Senter v. General Motors Corp.*, 532 F.2d 511, 523, n. 24 (6th Cir.1976)("impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case"); *Schreiber v. NCAA*, 167 F.R.D. 169, 173 (D.Kan.1996)("The party seeking class certification need not show the exact size of the class"). A reasonable estimate of the number of class members who may be involved is sufficient. *Rex*, 585 F.2d at 436. A court can use its common sense to reach its determination. *Zine v. Chrysler Corp.*, 236 Mich.App. 261, 600 N.W.2d 384, 400 (Mich.App.1999)("The exact number of members need not be known as long as general knowledge and common sense indicate that the class is large").

*2 Plaintiffs estimate the number of indirect purchasers of Microsoft WINDOWS in the State of Kansas is in the hundreds of thousands. Microsoft has not challenged Plaintiff's figures and conceded at oral argument on the motion for class certification that Plaintiffs satisfy the numerosity requirement.

*Commonality*

The next issue is to determine whether "there are questions of law or fact common to the class." K.S.A. 60-223(a)(2). There need only be a single issue common to all members of the class. *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 212, 679 P.2d 1159 (1984). Either a common question of law or a common question of fact will be deemed sufficient. *Id.* Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law or fact exist. *Schreiber*, 167 F.R.D. at 174. Every member of the class need not be in a situation identical to that of the named plaintiff. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir.1975). The commonality requirement permits varying factual situations among individual members of the class so long as the claims of the named plaintiffs and other class members are based on the same legal or remedial theory. *Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir.1999)(finding commonality where "legal questions uniting the class members is substantially related to the resolution of the litigation"); *Schreiber*, 167 F.R.D. at 174 (finding commonality in antitrust class action where "all members of the proposed class similarly base their claims on the same legal theories and authority").

Plaintiffs seek to prosecute this action on behalf of all indirect purchasers in the State of Kansas who bought WINDOWS at prices that have been maintained above competitive levels by unlawful conduct. The alleged monopolistic and anti-competitive acts of Microsoft are common to the Plaintiffs' claims. Microsoft's counsel acknowledged this fact at oral argument. The court finds there is commonality of Plaintiffs' claims.

*Typicality*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438
(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))

Page 3

The third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." K.S.A. 60-223(a)(3).

Microsoft concedes that the claim of Barbara Mack is typical to those of the class. However, Microsoft argues that the claims of Bryce Bellinder and Jay Clifford Foster are atypical. In the case of Bryce Bellinder, it appears that he did not "buy" his computer in the traditional sense of the word. Instead, he worked 100 hours for his employer and earned his computer which contained the Windows Operating System on it. Plaintiffs contend the fact and extent of Bellinder's alleged antitrust injury can be calculated by taking the amount of money he would have received for 100 hours of work and consider that amount as the price paid for the computer when calculating any overcharge. The Court agrees. Bellinder may not be the perfect person to act as a named plaintiff in this case, but his claim is still typical of others similarly situated. See Shutts, 235 Kan. at 207, 679 P.2d 1159 ("the law does not require that a named plaintiff be the perfect class member or even the best available").

*3 As for Jay Clifford Foster, Microsoft claims he is atypical because he allegedly copied an upgraded version of WINDOWS to two different computers in violation of his license agreement with Microsoft. As such, Microsoft would have a potential, "unique defense" argument against Mr. Foster that Microsoft may not have against other members of the class. The existence of a potential counterclaim or defense has been found not to defeat typicality so long as the named plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. Heartland Communications, Inc. v. Sprint, 161 F.R.D. 111, 116 (D.Kan.1995); Shutts, 235 Kan. at 208, 679 P.2d 1159. The typicality requirement focuses on the class representative's claims or defenses, not on the defendant's defenses against the class representative. Seidman v. American Mobile Systems, Inc., 157 F.R.D. 354, 361 (E.D.Pa.1994).

The court recognizes that neither of the claims of Bellinder or Foster are perfectly typical to those of the purported class members. However, the standard for meeting the typicality requirement, as stated above, is not "identical" or "perfectly typical". As with the commonality requirement, classes have been certified where some atypicalities and non-commonalities exist.

The typicality criterion focuses on whether there exists a relationship between the Plaintiffs' claims and the claims alleged on behalf of the class. As with the commonality requirement, the claims or defenses need not be identical. In re Aluminum Phosphide Antitrust Litigation, 160 F.R.D. 609, 613 (D.Kan.1995). Differences in the methods of purchase, kinds of products purchased among class members, and difference in price, as Microsoft asserts here, have been held not to bar a finding of typicality. Id.; In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1036-1037 (N.D.Miss.1993). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. Milonas v. Williams, 691 F.2d 931, 938 (10th Cir.1982); Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir.1975); Serna v. Portales Munic. Schools, 499 F.2d 1147, 1152 (10th Cir.1974); Edgington v. R.G. Dickinson and Co., 139 F.R.D. 183, 189 (D.Kan.1991). The purpose of the typicality requirement is to ensure that the named Plaintiffs' interests are aligned with those of the proposed class, and in pursuing their own claims, the named plaintiffs will also advance the interests of the class. Emig v. American Tobacco Co., Inc., 184 F.R.D. 379, 385 (D.Kan.1998). What is important as far as typicality is concerned is that the named Plaintiffs and the rest of the class members "share common objectives and legal or factual positions." Shutts, 235 Kan. at 208, 679 P.2d 1159.

*4 The overriding considerations typifying many antitrust claims are the need to prove that there is a conspiracy to fix prices in violation of the antitrust laws, that the prices are fixed pursuant thereto, and that the Plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been. In re Aluminum Phosphide, 160 F.R.D. at 613.

Bellinder and Foster do not have claims antagonistic to other proposed class members. All indirect purchasers rely on the same theories of liability against Microsoft. The evidence and testimony offered by Plaintiffs to attempt to prove Microsoft engaged in anticompetitive and illegal conduct will be the same for every claim. Both Bellinder and Foster along with Mack will have to prove the same elements as those of the class, namely the existence of a monopoly, the abuse thereof, antitrust injury, and damages. The claims of all three named Plaintiffs arise from the same alleged pattern and practice of monopolistic conduct by Microsoft and are based on

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438
(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))

Page 4

the same legal and remedial theories. Their claims are the same as other indirect purchasers who purchased or obtained Microsoft's WINDOWS at inflated or excessive prices. They are typical.

*Adequacy of Representation*

The fourth requirement is that "the representative parties will fairly and adequately protect the interests of the class." K.S.A. 60-223(a)(4).

Whether this requirement has been met depends on the answer to the following two questions: (1) Does the class representative have any kind of a material conflict of interest with the class with respect to the common questions involved? (2) Will counsel vigorously prosecute the action on behalf of the class? *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D.Kan.1991); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D.Kan.1996); *Emig*, 184 F.R.D. at 387; *Schreiber*, 167 F.R.D. at 175.

Courts have held that the number of class representatives is not significant for purposes of meeting this requirement, and that a single plaintiff can be an adequate representative of a class of several thousand members. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir.1968). However, a plaintiff cannot be an adequate representative if he or she has a conflict of interest with class members. *General Tel. Co. v. EEOC*, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In order for a conflict to prevent a plaintiff from meeting this requirement, it must be fundamental. *See In re Foundation for New Era Philanthropy Litig.*, 175 F.R.D. 202, 206 (E.D.Pa.1997). It must go to the heart of the litigation, relating to the subject matter of the suit. *In re South Cent. States Bakery Products Antitrust Litigation*, 86 F.R.D. 407, 418 (M.D.La.1980). Conflicts which have resulted in a finding of inadequacy include competition between class members and the existence of business negotiations between class members and the defendant. There has been no evidence at this point to suggest that any kind of material conflict exists with regard to the named Plaintiffs or that any of them have entered into business negotiations with Microsoft. There are no interests antagonistic to those of the class. There is complete unity of legal and remedial theory between Plaintiffs' claims and those of the class. The only possible difference is with the amount of damages. The court concludes that Bellinder, Foster and Mack are adequate representatives of the class.

*5 The adequate representation requirement also consists of a vigorous prosecution component. When a plaintiff is represented by competent counsel, the court may presume that the prosecution of the action will be vigorous. *Zapata*, 167 F.R.D. at 161. Moreover, the Court's analysis of this requirement is ongoing. The court has a continuing supervisory duty over class counsel to ensure plaintiffs are adequately represented *See Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir.1989)(district court judge has obligation to insure plaintiff class is adequately represented throughout litigation). Thus, the district court must constantly scrutinize class counsel to determine if counsel is adequately protecting the interests of the class. *North Am. Acceptance Corp. Sec. Cases v. Arnall, Golden & Gregory*, 593 F.2d 642, 645 (5th Cir.1979).

Counsel for Plaintiffs are experienced in complex, class action litigation. They are aggressively prosecuting this action and appear competent to adequately represent Plaintiffs.

*Predominance/Superiority*

In addition to satisfying the requirements of numerosity, commonality, typicality and adequacy of representation under K.S.A. 60-223(a), Plaintiffs must also demonstrate that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for fair and efficient adjudication of their claims. K.S.A. 60-223(b)(3).

The suggested rationale for this requirement is that it is only where common questions predominate that economies can be achieved by means of the class action device. *Rules Advisory Committee Notes*, 39 F.R.D. 69, 103 (1966). One of the fundamental objectives of class action litigation is to allow numerous small claimants to join together and sue as one when prosecution of their individual claims would otherwise be impractical. The antitrust laws rely heavily for their enforcement on citizen suits. Without the class action device, such laws could be violated with impunity, as long as individual damages were comparatively small, even though the aggregate damage was great.

Where there is a central or overriding issue or a common nucleus of operative facts, the predominance test is satisfied. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968); *Heartland Communications*, 161 F.R.D. at 117. Again, the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d                                                                                          Page 5
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438
(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))

issues of conspiracy, monopolization and conspiracy to monopolize have been viewed as central issues which satisfy the predominance requirement. *See Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791 (10th Cir.1970). Individual damage questions do not ordinarily preclude a (b)(3) class action when the issue of liability is common to the class. *Id.* at 796; *Blackie,* 524 F.2d at 905; *Commander Properties Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 538 (D.Kan.1995). Courts have repeatedly focused on the liability issues, in contrast to damage questions, and, if they found issues were common to the class, have held that the requirements of (b)(3) are satisfied.

*6 Plaintiffs' expert, Dr. Keith B. Leffler, Ph.D., opines the fact and amount of antitrust injury can be proved as to each individual class member utilizing common proof, and that any overcharge paid by class members can be accurately estimated using basic economic principles. Leffler Affidavit at ¶ 5. For instance, Dr. Leffler cites to economic literature for the proposition that in a market with no close substitutes (as Plaintiffs contend here with the operating system market), some increase in price or overcharge is almost always passed on to the end-user. Leffler Affidavit at ¶ 8. Therefore, Plaintiffs claim that at least the *fact* of injury can be shown with some certainty.

Dr. Leffler concludes that the *amount* of antitrust injury can be calculated using standard, yardstick methodologies. He proposes doing this by measuring the difference between the price a Kansas end-user paid for Microsoft's WINDOWS software and the price they would have paid absent Microsoft's alleged unlawful conduct. Leffler Affidavit at ¶ 12. This "but-for" price can be ascertained by using any one of three yardsticks: the comparable market yardstick, the competitive margin yardstick, and the violation-free-period yardstick. Leffler Affidavit at ¶ 12.

Under the comparable market yardstick, one would compare the prices charged for WINDOWS to the price of products from a comparable market not affected by anticompetitive activity. Leffler Affidavit at ¶ 12. The three examples proposed by Leffler are the anti-virus software, fax software, and internet portal markets. Leffler Affidavit at ¶ ¶ 15 & 17. These three markets, according to Leffler, are competitive and contain close substitutes. Leffler Affidavit at ¶ 15. Therefore, by tracking the prices in these markets, Leffler can estimate the but-for WINDOWS price. Leffler Affidavit at ¶ 17. By subtracting the price the Kansas consumer paid for WINDOWS from the but-for price, Leffler is able to calculate the amount of any overcharge; and consequently, the amount of antitrust injury.

Next, Leffler proposes using the competitive margin yardstick. Using this method, one compares the margins earned by sellers in a comparable market free from antitrust violations to the margins earned by sellers in the alleged anticompetitive market. Leffler Affidavit at ¶ 12. By comparing the mark-ups by software products facing competition to those of Microsoft, the amount of any overcharge can be ascertained. Leffler Affidavit at ¶ 13.

Finally, Leffler proposes using the violation-free-period yardstick. Under this theory, one compares the price of WINDOWS being charged during the alleged anti-competitive time period with the price of WINDOWS being charged during a period free of anti-competitive conduct. Leffler Affidavit at ¶ 12. For instance, by comparing the price of WINDOWS now to the price of Microsoft's operating system back in the late 1980's or early 1990's when Microsoft faced stiffer competition from DR DOS, Leffler claims he can calculate the fact and extent of antitrust injury. Leffler Affidavit at ¶ 20.

*7 Dr. Leffler's conclusions are vigorously challenged by Microsoft's expert, Dr. Jerry Hausman, Ph.D., who complains that Leffler's conclusions are based on *assumptions, conjecture* and mere speculation and that Leffler does not account for the economic realities of this case. For example, Dr. Hausman argues that often price increases are not passed down the distribution chain to the end-user because of price lag and focal-point pricing.

Now is not the time to resolve this "battle of the experts." *See In re Potash Antitrust Litigation,* 159 F.R.D. 682, 697 (D.Minn.1995). Whether Dr. Leffler is correct in his opinions or not is an issue for the trier of fact. *See In re Catfish Antitrust Litigation,* 826 F.Supp. at 1042. Plaintiffs, at the class certification stage, are not required to prove their case. *Eisen,* 391 F.2d at 566; *In re Catfish Antitrust Litigation,* 826 F.Supp. at 1042. Plaintiffs need only make a "threshold showing" that antitrust violations, if proven at trial, have had a common impact on the class. *In re Catfish Antitrust Litigation,* 826 F.Supp. at 1042. The Court is persuaded that for purposes of establishing a class, Plaintiffs have made the required threshold showing.

Plaintiffs are also required to advance a method for proving generalized damages on a classwide basis "not so insubstantial that it amounts to no method at

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438
(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))

Page 6

all." *Id.* In making the class certification determination, the court should avoid focusing on the merits underlying the class claim. *In re Commercial Tissue Products,* 183 F.R.D. 589, 592 (N.D.Fla.1998); *In re Catfish Antitrust Litigation,* 826 F.Supp. at 1033. Although the court may ultimately need to reach this question, it is not germane to the question of class certification. *Eisen,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("Nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982)(inquiry into likelihood of prevailing on claim inappropriate to analysis of class certification); *In re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. at 612. The question for the Court is whether plaintiffs' claims can be evaluated without being overwhelmed by so many individualized issues that class status would be completely impracticable. The Court is persuaded that this can be done.

This is a complicated case. If in the administration of this case the Court determines, as Microsoft asserts, that the damage issues are too complex and/or conflicting for a single class, the Court may create subclasses to handle divergent damage issues or implement any of the other alternatives available under K.S.A. 60-223(c)(4). *See also In re School Asbestos Litigation,* 789 F.2d 996, 1011 (3d Cir.1986). Plaintiffs have made the requisite showing that issues common to all plaintiffs predominate over individual issues.

*8 Lastly, the superiority requirement invites the Court to consider other alternatives to certifying the class such as bringing an individual action as a test case, joinder of all Plaintiffs, liberal intervention by absent class members, consolidation of several actions, or simply allowing each class member to bring an individual action. Because the number of potential class members is so numerous, none of these alternatives are feasible. Moreover, an individual claimant's damages may be so small and the cost of litigating a claim so large that as a practical matter no rational person would bring the action except as a member of a class. The superiority of class action litigation under these circumstances is obvious. No other alternatives are feasible. Failure to certify the class would likely result in no remedy for Plaintiffs and the persons whom they represent.

The Kansas Supreme Court issued its order on June 13, 2000 consolidating all Kansas Microsoft Antitrust Litigation in this court. By certifying a class of indirect purchasers, the rights of Kansas consumers will be efficiently resolved in one proceeding. This efficiency will benefit both parties. Hypothetically, if the Court denied class certification to Plaintiffs and every possible plaintiff filed suit on their individual claims, Microsoft would be forced to defend hundreds of thousands of lawsuits at great expense. Such result would also put an immeasurable strain on the court system.

Courts are to construe the class action requirements liberally and resolve all doubts in favor of class certification. *Arch v. American Tobacco Co.,* 175 F.R.D. 469, 476 (E.D.Pa.1997) ("Since the court may amend an order granting class certification, in a close case, the court should rule in favor of class certification"); *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970)("any error, if there is to be one, should be committed in favor of allowing the class action").

*Conclusion*

The court concludes, as a matter of law, that Plaintiffs satisfy the requirements of numerosity, commonality, typicality, adequate representation, predominance and superiority under K.S.A. 60-223 and that their motion for class certification should be and is sustained.

*Ruling*

IT IS, THEREFORE, CONSIDERED, ORDERED AND DECREED that Plaintiffs' Motion for Class Certification pursuant to K.S.A. 60-223 is SUSTAINED for the reasons above stated. The class is defined as follows:

All persons or entities who purchased, leased or licensed either (1) an upgrade from Windows 95 to Windows 98; (2) a computer system which had Windows 95 or Windows 98 installed as the operating system; or (3) a stand alone Windows 95 or Windows 98 operating system, in Kansas, for their own use and not for resale and not directly from Microsoft.

IT IS FURTHER ORDERED that Plaintiffs give notice of this class certification to interested persons in the manner and as provided by law.

IT IS FURTHER ORDERED that pursuant to K.S.A. 60-216(b), counsel of record convene a case management conference and prepare a case

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in P.3d  
2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438  
**(Cite as: 2001 WL 1397995 (Kan.Dist.Ct.))**

Page 7

management order for the court's approval. The court will reserve setting a date for trial until a discovery schedule has been established.

*9 IT IS SO ORDERED.

2001 WL 1397995 (Kan.Dist.Ct.), 2001-2 Trade Cases P 73,438

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.