UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARJORIE FERRELL, et al., ) | |
| ) | Civil Action No. C-1-01-447 |
| Plaintiffs, ) | |
| ) | Judge Sandra S. Beckwith |
| v. ) | Magistrate Judge Timothy S. Hogan |
| ) | |
| WYETH-AYERST LABORATORIES, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**WYETH'S RESPONSE TO END-PAYOR PLAINTIFFS'
SUPPLEMENTAL MEMORANDUM IN CONNECTION WITH
THE JUNE 30, 2004 ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

When this Court tentatively certified several subclasses in its June 30, 2004 class certification order (the "Order"), it recognized that additional briefing would be required on a number of issues relating to the scope of the class. Plaintiffs have submitted a "supplemental memorandum" that sets forth their contentions regarding two of the open issues. Wyeth hereby responds to plaintiffs' supplemental memorandum and identifies additional issues that should be addressed by plaintiffs under the Order before this case proceeds as a class action.

Specifically, for the reasons set forth below: (1) the claims of Kansas consumers and third-party payors should not be certified; (2) nine additional states should be excluded from the "State Antitrust" subclasses; (3) no subclass should be certified with

respect to "Consumer Protection" states; and (4) no subclass should be certified that does not have a named representative.

## PROCEDURAL BACKGROUND

On June 30, this Court issued the Order granting in part and denying in part plaintiffs' motion for class certification.  The Court declined to certify the broad classes requested by plaintiffs – two 50-state subclasses (for consumers and third-party payors, respectively) asserting "unjust enrichment" claims and two 20-state subclasses (again for consumers and third-party payors) asserting claims under state statutes purportedly allowing indirect purchaser lawsuits.  Instead, the Court indicated that it would certify separate consumer and third-party payor subclasses for (a) thirteen states that allow indirect purchaser lawsuits under state antitrust laws, (b) three states that allow indirect purchaser lawsuits under consumer protection statutes, and (c) the state of Nevada.  The Court expressly excluded from all of the subclasses consumers who paid flat co-payments for Premarin.

The Court specifically observed in the Order that additional briefing would be necessary on a number of issues before the class action could proceed.  *E.g.*, Order at 27. Defendants filed a petition under Fed. R. Civ. P. 23(f) for review of the Order with the United States Court of Appeals for the Sixth Circuit.  On November 4, 2004, the Sixth Circuit declined to hear an interlocutory appeal of the Order, relying chiefly on the fact that this Court had made clear that many of its conclusions on class certification were preliminary and subject to reconsideration upon further review.  *In re Wyeth-Ayerst Labs., Inc.*, No. 04-0304 (6th Cir. Nov. 4, 2004), at 2-3 ("The possibility that the district court may further refine the class supports the conclusion that an immediate appeal is not

warranted."). On November 15, 2004, plaintiffs filed their Supplemental Memorandum in Connection with the Order, to which this memorandum responds.

## ARGUMENT

**A.     Determination of the States to be Included in the "State Antitrust Statute" Subclasses**

In the June 30 Order, the Court observed that thirteen states allowing indirect purchasers to sue under their antitrust laws "preliminarily appear to be" states "that do not vary in critical aspects of substantive law" and thus would likely be included in a single subclass. Order at 27. The Court excluded the District of Columbia and New York from this subclass because of differences in state laws. The Court also suggested that Kansas law might differ substantially from the law of other states. Specifically, while the allegations of the complaint concern "monopolization," the Kansas antitrust statute extends only to "concerted action." *Id*. at 26. The Court suggested that additional briefing would be necessary to determine whether Kansas should be included in the subclass definition. *Id*. at 27.

In their supplemental filing, plaintiffs simply assume that all of the thirteen states "preliminarily" identified by the Court will remain in the subclass and then argue specifically that the subclass should be defined to include Kansas. Pls.' Supplemental Mem. at 2-4. In fact, Kansas should be excluded from the subclass and several other states should also be removed due to differences in applicable law.

**1.     Kansas Law Differs in Critical Respects From the Law in Other States.**

As the Court observed in its Order (Order at 26), the Kansas antitrust statute proscribes only "concerted" action; thus, the only "monopolization" claim recognized by

the statute is a "conspiracy" with another person to monopolize a line of business. Kan. Stat. Ann. § 50-132 (2003). At a minimum, it is thus clear that any claim under the Kansas statute will require proof that is *not* necessary under the monopolization claims under other state laws – *i.e.*, proof of a *conspiracy* to monopolize.[1] No such proof is required for monopolization claims under the law of other states: monopolization violates those statutes even if it is entirely unilateral. *E.g.*, Ariz. Rev. Stat. § 44-1403 (2004) (prohibiting "[e]stablishment, maintenance or use of monopoly"); Iowa Code § 553.5 (2004) ("monopoly prohibited").

Moreover, Wyeth's rebate contracts with managed care organizations ("MCOs") cannot support a "conspiracy-to-monopolize" claim under Kansas law. MCOs – which are essentially customers of Wyeth – would not benefit from Wyeth's attainment of monopoly power; on the contrary, because Wyeth's accumulation of monopoly power would theoretically enable it to reduce its payments to MCOs and increase the price that they pay for Premarin, any allegation that MCOs "conspired" to confer monopoly power on Wyeth would be economically irrational and hence would be rejected as a matter of law. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1437 n.8 (9th Cir. 1995) (to establish conspiracy to monopolize "it is not enough to show that the [co-conspirators] merely agreed to go along with [the defendant]") (citation omitted); *Belfiore v. N.Y. Times Co.*, 826 F.2d 177, 183 (2d Cir. 1987) (conspiracy to monopolize claim failed because defendant's wholesalers did not "harbor[ ] the proscribed intent to

---

[1]    *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 283 (D. Mass. 2004) (excluding indirect purchaser class claims arising under Kansas law because that law "prohibits combinations and conspiracies only").

monopolize"); *Syufy Enter. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1000 (9th Cir. 1986) (affirming summary judgment where there was no evidence the alleged co-conspirators, the defendant's suppliers, "shared with [the defendant] a common purpose in monopolizing the [relevant market]"). In any event, plaintiffs make no such allegation. As this Court noted in its opinion, plaintiffs have asserted "that no member of the putative Third-Party Payor class" – which includes MCOs – "is alleged to have conspired with Wyeth in entering these rebate contracts." Order at 10. Thus, in their quest to satisfy the "adequacy" requirement, plaintiffs have made allegations that directly conflict with the allegations that they would have to make to establish a violation of the Kansas statute.

There is yet another, independent reason why Kansas should be excluded from the subclasses. The Court excluded Nevada from the Antitrust Statute subclass on the ground that Nevada class members would have no claim prior to October 1, 1999 – the effective date of the Nevada amendment permitting indirect purchaser lawsuits.[2] Order at 26. Kansas should be excluded from the subclass for the same reason: its statute permitting indirect purchaser lawsuits was effective only as of July 1, 2000. *See* Kan. Stat. Ann. § 50-161 (2004); *Kleibrink v. Mo.-Kan.-Tex. R.R. Co.*, 581 P.2d 372, 379 (Kan. 1978) (statutory increases in damage limitations cannot be applied retroactively).

---

[2] Although the Court suggested the possibility of creating a separate subclass for Nevada plaintiffs, Wyeth respectfully suggests that it is more appropriate simply to eliminate Nevada claimants from the case. First, there is no Nevada subclass representative. Second, plaintiffs apparently failed to satisfy the legal requirement (noted in this Court's opinion at footnote 10) that they mail a copy of the Complaint to the Nevada attorney general "simultaneously" with the filing of the Complaint.

### 2. Tennessee Should be Excluded From the Subclasses on the Same Ground as Kansas.

In the Order, the Court observed that "[i]t is not clear that the challenged rebate contracts, which are not per se illegal, are the type of 'conspiracy' or 'combination' that the Kansas statute (and any others like it) are intended to reach."  Order at 27.  In fact, Tennessee's statute (like the Kansas statute) also extends only to conspiracies and combinations and not to unilateral monopolization.  Indeed, the Court in *In re Relafen* excluded *both* Kansas and Tennessee from an indirect purchaser class on the ground that their antitrust statutes are both limited to conspiracies.  *See In re Relafen*, 221 F.R.D. at 283 (quoting Tenn. Code Ann. § 47-25-101 (2004)).  This Court should do likewise.

### 3. Maine Should be Excluded From the Subclasses.

Unlike the federal antitrust statute – and state antitrust statutes that follow the federal interpretation – a monopolization claim under Maine law requires a "specific intent" to monopolize.  *Compare Onat v. Penobscot Bay Med. Ctr.*, 574 A.2d 872, 875 (Me. 1990) (requiring "specific intent" in a monopolization claim) *with Defiance Hosp., Inc. v. Fauster-Cameron, Inc.*, __ F.Supp.2d __, 2004 WL 2601794, at *11 (N.D. Ohio Nov. 17, 2004) (holding that "[p]roof of specific intent is not required" for an actual monopolization claim) (citation omitted) (attached hereto as Exhibit 1).  Accordingly, Maine should be excluded from the subclasses because the proof required for Maine consumers will be different from the proof required for consumers in other states.

### 4. The Laws of Seven of the "Antitrust Statute" States Differ With Respect to Treble Damages.

In the Order, the Court noted that plaintiffs had attempted to "illustrate uniformity" among the various states for which certification was sought but that "[a]

closer inspection reveals this is not necessarily the case." Order at 23. The Court elaborated:

> It is not enough that a state statute is "generally" in harmony with federal antitrust law. Rather, the state laws at issue must be substantially similar with respect to important issues such as required proof of individual injury, statutes of limitation, or remedies available (especially with regard to treble or exemplary damages), in order to establish "predominance" for purposes of Rule 23(b)(3).

*Id*. at 23-24.

In fact, seven of the thirteen statutes covered by the State-Law Antitrust Statute Subclass differ in material ways on one of the very grounds identified in the Court's Order. The Court found that if state statutes differ with respect to "remedies available (especially *with regard to treble* or *exemplary damages*)," then common issues will *not* predominate. *Id*. at 24 (emphasis added). But three of the thirteen listed states do *not* permit treble damages in antitrust cases: Mississippi[3] and Tennessee[4] permit only actual (*i.e.*, single) damages, and Iowa generally permits only actual damages (except in cases of "willful or flagrant" conduct, where the court has discretion to award up to double damages).[5] Likewise, three additional states – Arizona,[6] Michigan,[7] and North Dakota[8] –

---

[3] Miss. Code Ann. § 75-21-9 (2004). Another way in which Mississippi law differs from its counterparts is that, in addition to actual damages, a plaintiff may seek a statutory penalty of $500 for each "instance of injury."

[4] Tenn. Code Ann. § 47-25-106 (2004).

[5] Iowa Code § 553.12 (2004); *see also Pfiffner v. Roth*, 379 N.W.2d 357, 361 (Iowa 1925) (under state antitrust law, exemplary damages are "discretionary with the district court").

[6] Ariz. Rev. Stat. § 44-1408 (2004).

[7] Mich. Comp. Laws § 445.778(1)-(2) (2004).

[8] N.D. Cent. Code § 5108.1-08(2) (2004).

allow treble damages only upon a showing of "flagrant" conduct, a standard which is subject to differing interpretations.[9] Finally, treble damages under the New Mexico statute are not automatic; on the contrary, "[i]f the trier of fact finds that the facts so justify, damages may be awarded in an amount less than that requested, but not less than the damages actually sustained." N.M. Stat. Ann. 1978 § 57-1-3A (Michie 2004).

Accordingly seven states – Arizona, Iowa, Michigan, Mississippi, New Mexico, North Dakota, and Tennessee – should be excluded from the subclasses under the Court's Order because they do not permit treble damages as of right in antitrust cases, and in many cases do not permit them at all. When combined with the exclusions noted above, this means that the state Antitrust Statute subclass should be limited to three states – South Dakota, West Virginia, and Wisconsin.[10]

### B. The "Consumer Protection Statutes" of Florida, Massachusetts and Vermont Differ in Key Respects and No Consumer Protection Subclass Should Be Certified.

This Court also tentatively suggested that it would certify subclasses of consumers and third-party payors for three states that authorize indirect purchaser claims under "consumer protection" statutes – Florida, Massachusetts, and Vermont. Order at 27. The Court noted, however, that "[p]laintiffs do not discuss any potential differences in the qualitative conduct covered by the statutes, nor any differences in the proofs

---

[9] *E.g., Western Waste Serv. Sys., Inc. v. Superior Court*, 584 P.2d 554, 555 (Ariz. 1978) ("flagrant" means "glaring, rank, shocking or outrageous"); *In Re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 7-8 (D.D.C. 2003) (applying "flagrant" requirement).

[10] As noted below, even such a limited subclass should not be certified because plaintiffs have failed to put forward a suitable consumer representative of such a class.

required or remedies available." *Id*. at 26. The Court specifically determined that "[f]urther briefing will be necessary concerning [these] critical issues." *Id.* at 27.

In their supplemental memorandum, plaintiffs devote just three pages to these states' statutes. They focus on the threshold issue of whether each of these statutes allows indirect purchasers to sue. Pls.' Supplemental Mem. at 5. Beyond that, plaintiffs merely contend that two of the states – Florida and Massachusetts – look to interpretations of section 5(a)(1) of the Federal Trade Commission ("FTC") Act in interpreting their consumer protection statutes. *Id*. As to Vermont, plaintiffs do not argue that the interpretations of the FTC Act govern, but instead suggest that the statute is similar to the federal Sherman Act. *Id*. at 6.

Plaintiffs in essence ask this Court to ignore its conclusion that it is not sufficient to interpret state laws by general reference to the federal antitrust laws. As this Court has ruled:

> It is not enough that a state is "generally" in harmony with federal antitrust law. Rather, the state laws at issue must be substantially similar with respect to important issues such as required proof of individual injury, statutes of limitations, or remedies available (especially with regard to treble or exemplary damages.).

*Id*. at 23-24. Plaintiffs have not made – and cannot make – that showing with respect to the laws of the three states at issue.

First, notwithstanding plaintiffs' assertions to the contrary, there is substantial variation among the three states on the threshold issue of whether indirect purchasers may sue for damages. While case law in each state holds that indirect purchasing *consumers* can sue, the laws in these states differ with respect to corporate third-party

payors. The Vermont statute, for example, extends its protection *only* to consumers and does not permit *any* damage claims – whether direct or indirect – by corporations. "Based on the definition of 'consumer,' it is clear that there is no private right of action under [the Vermont statute] for business victims of deceptive or unfair acts or practices." *State v. Int'l Collection Serv., Inc.*, 594 A.2d 426, 428 (Vt. 1991) (citation and footnote omitted). By contrast, both consumers and businesses can assert direct claims under the Massachusetts Consumer Protection Act. However, the decision by the Massachusetts Supreme Court permitting actions by *indirect* purchasers was expressly limited to the statutory provision authorizing lawsuits by *consumers*. *See Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303, 312 (Mass. 2002). Indeed, the Massachusetts court relied heavily upon the fact that the section of the Massachusetts statute authorizing lawsuits by consumers does *not* contain a statement that interpretations of the state antitrust law govern. *Id*. By contrast, Section 11 of the statute – which authorizes actions by "persons engaged in business" – contains an express proviso that "the court shall be guided in its interpretation of unfair methods of competition by the provisions of . . . the Massachusetts Antitrust Act." Mass. Gen. Laws ch. 93A, § 11 (2004). It is undisputed that indirect purchasers may not sue under the Massachusetts Antitrust Act. *Ciardi*, 762 N.E. 2d at 308.[11]

---

[11] Although Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") has been interpreted to permit indirect purchaser claims by both consumers and businesses, one court certified indirect purchaser claims from other states but expressly declined to certify claims under the FDUTPA, due to Florida's "skeptical view" of indirect purchaser suits. *In re Relafen Antitrust Litig.*, 221 F.R.D. at 280-82 (citing *Execu-Tech Bus. Syst., Inc. v. Appleton Papers, Inc.*, 743 So.2d 19, 21-22 (Fla. Ct. App. 1999)).

Second, the Massachusetts statute differs fundamentally from Florida and Vermont law in several respects. Plaintiffs may sue in Massachusetts for statutory minimum damages even without proving injury.[12] This distinguishing feature is similar in effect to the one that led the Court to exclude District of Columbia plaintiffs from the subclass in its Order. Order at 24-25. In addition, a "person engaged in business" (*i.e.*, a third-party payor) suing under the Massachusetts statute must demonstrate the existence of a "business relationship" with the defendant. *John Boyd Co. v. Boston Gas Co.*, 775 F. Supp. 435, 440 (D. Mass. 1991). Moreover, such a "person engaged in business" must show that the practice complained of occurred "primarily and substantially within the commonwealth." Mass. Gen. Laws. Ch. 93A, § 11 (2004).

Finally, there are substantial differences in the remedies available under the Massachusetts, Vermont, and Florida statutes – a fact that this Court suggested is incompatible with Rule 23's "predominance" requirement. Order at 24. Under Florida law, a plaintiff is entitled only to *actual* (*i.e.*, non-trebled) damages. Fla. Stat. § 501.211(2) (2004). Under Massachusetts law, by contrast, a plaintiff may receive "up to three but not less than two times" the damage amount, but only upon a showing of a "willful" and "knowing" violation of the act. Mass. Gen. Laws ch. 93A, § 9(3) (2004). Moreover, consumers (but not business entities) are entitled to a minimum statutory recovery of $25. *Id*. In Vermont, exemplary damages "not exceeding three times the

---

[12] *Compare Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 492 (Mass. 2004) (plaintiff need not show injury to collect statutory minimum damages) *with In re Microsoft Corp. Antitrust Litig.*, No. 99-27340, 2002 WL 31423620, at *7 (Fla. Cir. Ct. Aug. 26, 2002) (requiring injury) (attached hereto as Exhibit 2) and *In re Microsoft Corp. Antitrust Litig.*, 261 F. Supp. 2d 366, 368 (D. Md. 2003) (interpreting Vermont statute).

value of the consideration given or damages sustained" are available (Vt. Stat. Ann. tit. 9, § 2465(a) (2003)) – but only at the discretion of the judge "where malice, ill will, or wanton conduct is demonstrated." *L'Esperance v. Benware*, 830 A.2d 675, 682 (Vt. 2003) (quoting *Bruntreger v. Zeller*, 515 A.2d 123, 127 (Vt. 1986)).

### C. No Subclass Should Be Certified Without a Designated Representative.

It is one of the basic requirements of Rule 23 that a class may not be certified unless a specific claimant is prepared to represent the class and has been deemed adequate for those purposes by the Court. Fed. R. Civ. P. 23(a). The requirement of an adequate representative extends to each subclass; indeed, it is not appropriate for claims to be litigated on behalf of a subclass when there is no representative advancing those claims on behalf of the subclass. *See, e.g.*, *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532-33 (5th Cir. 1978) (class action may not encompass theories of liability where "there are no representative plaintiffs present who have been aggrieved by them and thus who can represent the appropriate subclasses").

Plaintiffs have sought certification of separate consumer and third-party payor subclasses, Order at 3-4, and have identified only one consumer class representative (Marjorie Ferrell) and two third-party payor class representatives. *Id*. at 8-9. These are the only class representatives whose adequacy was addressed by the Court in the Order.[13]

---

[13] Order at 7-8 (finding that Ferrell's claim is "typical . . . of other consumers" and that "Ferrell is an adequate representative for consumers."); *Id*. at 9-12 (discussing whether the Funds can adequately represent members of the third-party payor subclasses).

If the consumer and third-party payor classes are divided into three subclasses,[14] there must be a consumer representative for each of the proposed subclasses. Ms. Ferrell's claims arise solely under the law of Florida, which allows indirect purchaser claims only under its Deceptive and Unfair Practices Act. At most, Ferrell can represent only the proposed "Consumer Protection Act" consumer subclass. Because Florida does not permit her to make a claim under its antitrust statute, she cannot serve as a representative of consumers in the "Antitrust Statute Indirect Purchaser" state subclass or of consumers in a Nevada consumer subclass. Accordingly, those subclasses should not be certified.

## CONCLUSION

For the reasons set forth herein, this Court should deny plaintiffs' request to expand the class, and should instead instead rule that: (1) the claims of Kansas consumers and third-party payors will not be certified; (2) nine additional states will be excluded from the "State Antitrust" subclasses; (3) no subclass will be certified with respect to "Consumer Protection" states; and (4) no subclass will be certified that does not have a named representative.

---

[14] The first subclass is limited to certain states with antitrust laws allowing indirect purchaser lawsuits; the second subclass is limited to certain states allowing indirect purchaser lawsuits under consumer protection statutes; the third subclass is limited to Nevada. Order at 27.

        Respectfully submitted,

        s/*Grant S. Cowan*
        Grant S. Cowan   (0029667)
        **FROST BROWN TODD LLC**
        2200 PNC Center
        201 E. Fifth Street
        Cincinnati, Ohio  45202-4182
        (513) 651-6745
        *Trial Attorneys for Defendants*

*Of Counsel:*

**WINSTON & STRAWN**
35 West Wacker Drive
Chicago, Illinois  60601-9703
(312) 558-5600

**ARNOLD & PORTER**
555 Twelfth Street, N.W.
Washington, D.C.  20004-1202
(202) 942-5000

Dated:  December 9, 2004

Case 1:01-cv-00447-SSB-TSH   Document 108   Filed 12/09/2004   Page 14 of 15

- 14 -

- 15 -

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing has been served electronically this 9th day of December, 2004 on all Counsel of Record with the CM/ECF Registration and by facsimile and overnight delivery on the following:

| | |
|---|---|
| Marc H. Edelson<br>**Hoffman & Edelson**<br>45 West Court Street<br>Doylestown, PA 18901<br>Tel: (215) 230-8043<br>Fax: (215) 230-8735 | Alan I. Gilbert<br>**Heins Mills & Olson, P.C.**<br>3550 IDS Center, 80 South Eighth Street<br>Minneapolis, MN 55402<br>Tel: (612) 338-4605<br>Fax: (612) 338-4692 |

s/Grant S. Cowan
Grant S. Cowan, Esq.
Frost Brown Todd LLC