UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| MARJORIE FERRELL, et al., | ) ) ) | Civil Action No. C-1-01-447 |
| Plaintiffs, | ) ) | Judge Sandra S. Beckwith |
| v. | ) ) ) | Magistrate Judge Timothy S. Hogan |
| WYETH-AYERST LABORATORIES, INC., et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**END-PAYOR PLAINTIFFS' REPLY MEMORANDUM IN CONNECTION WITH SUPPLEMENTAL BRIEFING CONCERNING THE JUNE 30, 2004 ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

On November 15, 2004, End-Payor Plaintiffs submitted their Supplemental Memorandum ("Pl. Mem.") addressing issues on which the Court had requested supplemental briefing in connection with the June 30, 2004 Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification ("Class Order"). On December 9, 2004, Wyeth submitted its Response to End-Payors Plaintiffs' Supplemental Memorandum ("Def. Mem."). End-Payor Plaintiffs submit this Reply in response thereto. For the reasons set forth in End-Payor Plaintiffs' Supplemental Memorandum together with the additional points addressed below, the Court should not disturb the three subclasses certified by the Class Order.

**ARGUMENT**

I.   **IT IS APPROPRIATE FOR THE STATE ANTITRUST SUBCLASS TO REMAIN CERTIFIED, INCLUDING CLAIMANTS FROM KANSAS.**

    A.   **Plaintiffs Have Alleged An Unlawful "Combination" Within the Scope of the Kansas Monopolies and Unfair Trade Act.**

Plaintiffs allege that the exclusive and the "disguised" exclusive contracts between Wyeth and various health care and managed care entities were anticompetitive agreements that restrained trade and unlawfully extended Wyeth's monopoly. *See* Consolidated Amended Class Action Complaint ("CAC") ¶¶ 72, 76 (asserting claims under 15 U.S.C. §§ 1,2). As this Court has recognized, Plaintiffs *do not* allege a conspiracy. Class Order at 10. In addressing the Kansas Monopolies and Unfair Trade Act, Kan. Stat. Ann. § 50-132, Wyeth maintains that the Kansas statute requires proof of a conspiracy. Def. Mem. at 3-5.

In fact, the Kansas statute provides as follows:

> No person, servant, agent or employee of any person doing business within the state of Kansas shall *conspire or combine* with any other persons, within or without the state for the purpose of monopolizing any line of business, or shall *conspire or combine* for the purpose of preventing the producer of grain, seeds or livestock or hay, or the local buyer thereof, from shipping or marketing the same without the agency of any third person.

Kan. Stat. Ann. § 50-132 (emphasis added). Wyeth ignores the fact that a *combination* constitutes an independent basis for a claim under the statute. *Cf. Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 92 & n.13 (S.D.N.Y. 1995) (Denying motion to dismiss Sherman Act claim: "There is no allegation of conspiracy; rather, plaintiff alleges that defendants entered into combinations and contracts in restraint of trade. ... [T]here is no need to demonstrate a unity of purpose to establish conspiracy because conspiracy is not alleged. ... If plaintiff always

needed to demonstrate that there existed a unity of purpose between defendants and others, then all combination and contract claims would necessarily encompass a conspiracy claim."); *see also Albrecht v. Herald Co.,* 390 U.S. 145, 149 (1968) (Sherman Act Section 1 "covers combinations in addition to contracts and conspiracies, express or implied."), *overruled on other grounds by State Oil Co. v. Khan*, 522 U.S. 3 (1997).

As with the Microsoft cases (Pl. Mem. at 2-3), which Wyeth does not address, the agreements that Plaintiffs allege are in restraint of trade and in furtherance of Wyeth's unlawful monopolization are sufficient to bring the case within the scope of the Kansas statute. *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 283 (D. Mass. 2004), relied upon by Wyeth, is distinguishable relative to treatment of Kansas claims because, among other reasons, the plaintiffs there alleged unilateral conduct only.

Furthermore, Wyeth's suggestion that the indirect purchaser standing in Kansas is a matter of recent vintage is incorrect. Def. Mem. at 5. Kansas has long provided for indirect purchaser standing, although it was previously codified in Kan. Stat. Ann. § 50-801(b) prior to the enactment of the current statute. *See California v. ARC America Corp.*, 490 U.S. 93, 98 n.3 (1989) (noting that Kansas expressly allows indirect purchasers standing and citing § 50-801(b)); *see also Bellinder v. Microsoft Corp.*, 2001-2 Trade Cas. (CCH) ¶73,438, 2001 WL 1397995 (Kan. Dist. Ct. Sept. 7. 2001) (Exhibit A to opening supplement) (noting Kansas's *Illinois Brick* repealer statute at § 50-801(b) and certifying a class of indirect purchasers of Windows 95 and Windows 98 operating systems).

### B. There is No Need To Reconsider the Inclusion of Tennessee and Maine in the Antitrust Subclass.

Wyeth's contentions concerning the inclusion of claimants from Tennessee and Maine in the Antitrust Subclass should be characterized as a request for reconsideration of the Class Order. However, Wyeth has not set forth any basis for this Court to reconsider that order. *See Owner-Operator Independent Drivers Ass'n, Inc. v. Arctic Exp., Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003) (motion for reconsideration requires moving party to demonstrate: "(1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law."); *Meekison v. Ohio Dept. of Rehabilitation and Correction,* 181 F.R.D. 571, 572 (S.D. Ohio 1998) ("mere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support a motion for reconsideration").

**Tennessee.** The Court need not reconsider the inclusion of class members from Tennessee in the Antitrust Subclass. The Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, declares the following anticompetitive conduct to be "against public policy": "all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article." *Id. See, e.g., Sherwood v. Microsoft Corp*., 2003-2 Trade Cas. (CCH) ¶74,109, 2003 WL 21780975 (Tenn. App. Aug. 2, 2003) (Exhibit A hereto). Contrary to Wyeth's suggestion that the statute's application is limited to conspiracies, Def. Mem. at 6, the Tennessee statute does not even use the word "conspiracy." While unilateral conduct is not covered by the statute, Plaintiffs have alleged arrangements, contracts and agreements that give rise to their claims, which distinguishes this case from *Relafen*, 221 F.R.D. at 284.

**Maine.** Nor should the Court reconsider the inclusion of claimants from Maine in the Antitrust Subclass. The proofs required under the Maine Monopolies and Profiteering Statute, Me. Rev. Stat. Ann. tit. 10, §§ 1101, *et seq.*, remain substantially similar to the Sherman Act and the laws of other antitrust states. *See Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) ("We have noted that the 'Maine antitrust statutes parallel the Sherman Act,' and thus have analyzed claims thereunder according to the doctrines developed in relation to federal law.") (citations omitted).[1] Plaintiffs' factual proofs will not vary and Wyeth will remain free to maintain that those proofs are insufficient under the Maine statute, or any other statute. Common issues remain the predominant focus of this litigation. *Cf. In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 683 (S.D. Fla. 2004) (including Maine multistate class of pharmaceutical end-payors).[2]

C.  **State Law Variances on the Determination of Punitive or Multiple Damages Do Not Preclude Class Certification.**

Wyeth further maintains that Arizona, Iowa, Michigan, Mississippi, New Mexico, North

---

[1] *Onat v. Penobscot Bay Med. Ctr.*, 574 A.2d 872, 875 (Me. 1990), relied upon by Wyeth, noted that the same standards applied to monopolization under the Maine antitrust statute and the Sherman Act, use of the term "specific intent" notwithstanding. As the other case relied upon by Wyeth emphasized, "[i]mproper exclusion [by a monopolist] (exclusion not the result of superior efficiency) is always deliberately intended." *Defiance Hosp., Inc. v. Fauster-Cameron, Inc.*, __ F. Supp. 2d __, 2004 WL 2601794, *11 (N.D. Ohio Nov. 17, 2004) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985)). In any event, Plaintiffs also allege an attempt to monopolize, which would require a showing of specific intent. *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782(6th 2002), *cert. denied*, 537 U.S. 1148 (2003).

[2] Even if Wyeth's interpretations of the Kansas, Tennessee and Maine antitrust statutes are correct (which they are not) those states have, at a minimum, rejected *Illinois Brick*'s application. It would therefore be appropriate in any event to leave claimants from those states in the Antitrust Subclass for purposes of their unjust enrichment claim. *See Relafen*, 221 F.R.D. at 284 (including Tennessee claimants in exemplar class for unjust enrichment claims)

Dakota and Tennessee should be excluded from the Antitrust Subclass because they do not automatically permit treble damages in antitrust cases. Def. Mem. at 6-8. Like Wyeth's contentions concerning the inclusion of Tennessee and Maine in the Antitrust Subclass, this argument too should be rejected as an improper motion for reconsideration. Moreover, Wyeth's claim is without merit. Where common questions predominate regarding liability, courts generally find the predominance requirement to be satisfied even if individual damages issues remain. *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003); *In re Visa Check/ Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002); *see also Relafen,* 221 F.R.D. at 279 ("As SmithKline notes, the remedies available under the state statutes differ, but '[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3).' Nor do the individual damages issues appear 'especially complex or burdensome,' at least not with respect to the five exemplar states listed in the Court's certification order.") (citations to record omitted; quoting *Smilow*, 323 F.3d at 40). Again, the common proofs on liability will remain the same and varying state standards on damages can be readily addressed by carefully crafted jury instructions and verdict forms. *Cf. Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 28 (D. Mass. 2003) ("On the existing record, I lack any basis to conclude that conflicts of law will present an insurmountable problem, particularly since only six jurisdictions are implicated by this case. To the extent they exist, I expect that they can be handled by, for example, carefully crafted jury instructions and verdict forms, etc.").

      The Court should not, therefore, reconsider the inclusion of claimants from these states in the Antitrust Subclass.

## II. THE CONSUMER PROTECTION SUBCLASS SHOULD REMAIN CERTIFIED.

Wyeth's contention that the antitrust remedy available under the Vermont Consumer Fraud Act applies only to consumers is incorrect. Def. Mem. at 10. The plain language of the antitrust remedy provision extends beyond consumers:

> (a) *Any person* who sustains damages or injury as a result of any violation of state antitrust laws, including section 2453 of this title, may sue and recover from the violator the amount of his or her damages, or the consideration or the value of the consideration given by the aggrieved person, reasonable attorney's fees and exemplary damages, not exceeding three times the value of the consideration given or damages sustained by the aggrieved person.
>
> (b) In any action for damages or injury sustained as a result of any violation of state antitrust laws, pursuant to section 2453 of this title, *the fact that the state, any public agency, political subdivision or any other person* has not dealt directly with a defendant shall not bar or otherwise limit recovery. The court shall take all necessary steps to avoid duplicate liability, including but not limited to the transfer or consolidation of all related actions.

Vt. Stat. Ann. tit. 9, § 2465 (emphasis added).[3] Although enacted in 2000, the indirect purchaser standing provision has been construed to clarify, not change, preexisting law. *Elkins v. Microsoft Corp.*, 174 Vt. 328, 817 A.2d 9 (2002). No court has interpreted the plain language of the provision as applying only to consumers, and business purchasers have been included in certified classes. *See, e.g., Relafen,* 221 F.R.D. at 288 (certifying class defined as: "All persons or entities in the United States who purchased Relafen in the states of Arizona, California, Massachusetts, Tennessee, or Vermont during the period September 1, 1998 through June 30, 2003 for

---

[3] The *dicta* cited by Wyeth from *State v. Int'l Collection Serv., Inc.*, 594 A.2d 426 (Vt. 1991) states that "it is clear there is no private right of litigation *under § 2461(b)* for business victims of deceptive or unfair acts or practices." *Id.* at 428 (emphasis added). Section 2461(b) provides as follows: "*Any consumer* who contracts for goods or services in reliance upon false or fraudulent representations or practices ... [may bring suit]." Vt. Stat. Ann. tit. 9, § 2461(b) (emphasis added). In contrast, the term "consumer," broadly defined in Vt. Stat. Ann. tit. 9, § 2451a(a), is conspicuously absent from the antitrust remedy provision.

consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries.").

The contention that only consumers have a claim under the Massachusetts Consumer Protection Act, Def. Mem. at 10, is similarly incorrect. In *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 762 N.E.2d 303 (2002), the Massachusetts Supreme Court concluded that "*indirect purchasers* can assert claims for price-fixing or other anticompetitive conduct under [Mass. Gen. Laws ch.] 93A § 9, where they have no standing [otherwise] to bring such claims under the Massachusetts Antitrust Act, [Mass. Gen. Laws ch.] 93A §§ 1-14A." *Id*. at 306 (emphasis added). Section 9 of the Consumer Protection Act does not apply to consumers only, but to "[a]ny person, other than a person entitled to bring action under section eleven of this chapter..." Mass. Gen. Laws ch. 93A § 9. Section 11 applies to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss" by reason of unfair or deceptive practices . Mass. Gen. Laws ch. 93A § 11. The provision is guided by the interpretation of the Massachusetts Antitrust Act. *Id.*

In *Ciardi*, the Massachusetts high court held that *Illinois Brick* would apply with equal force to claims brought by indirect purchasers under the Massachusetts Antitrust Act. 762 N.E.2d at 308. Thus, if, as Wyeth contends, business entities are not entitled to bring suit under Section 11 because they are indirect purchasers, they are not excluded from bringing action under Section 9. The class certified in *Relafen*, for example, included Massachusetts "persons or entities" who purchased Relafen "for consumption by themselves, their families, members, employees, insureds, participants, or beneficiaries." *Relafen,* 221 F.R.D. at 288. Also, in *In re Lorazepam & Clorazepate Antitrust Litig*, 295 F. Supp. 2d 30 (D.D.C. 2003), Blue Cross & Blue

Shield of Massachusetts — certainly not a consumer — was permitted to bring suit under Section 9 for overcharges paid and reimbursed on behalf of its members for prescriptions drugs, because the court held it was ineligible to bring suit under Section 11 as a non-profit entity. 295 F. Supp. 2d at 43-47. *Lorazepam & Clorazepate* did not address other issues surrounding Section 11 because "a ch. 93 Plaintiff must proceed under either section 9 or section 11, but not both." 295 F. Supp. 2d at 47 (citation omitted).

In any event, the focus of this action is *consumer transactions* in which third-party payors are involved because of contractual relationship with patients. In the healthcare field, third-party payors are treated as purchasers.[4] Moreover, given the exclusion of persons with flat co-payments from the subclasses, Class Order at 21, Wyeth's interpretation of the Massachusetts statute would effectively render *no one* available to recover for the overcharges paid on these transactions.

Finally, as with the antitrust statutes, the differences in remedies available under the Massachusetts, Vermont and Florida[5] statutes, which can be addressed with careful jury

---

[4] *See In re Warfarin Sodium Antitrust Litig.*, __ F.3d __, 2004 WL 2809797, *8 (3d Cir. Dec. 8, 2004) (Exhibit B hereto) ("[I]t is well recognized that a purchaser in a market where competition has been wrongfully restrained has suffered an antitrust injury, and in this case, TPPs are such purchasers."); *see also Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 349 (2d Cir. 2003); *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1414 (7th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543 (D.N.J. 2004).

[5] Wyeth concedes that third-party payors can assert claims under the Florida Deceptive and Unfair Trade Practices Act. Def. Mem. at 10 n.11; *see also In re Microsoft Antitrust Litig.*, No. 99-27340, 2002 WL 31423620 (Fla. Cir. Ct. Aug. 26, 2002) (Exhibit B to opening supplement) (certifying indirect purchaser class of "persons and entities"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 683 (S.D. Fla. 2004) (same and noting that insurer Cobalt had standing to make a Florida claim).

instructions and verdict forms,[6] do not detract from the predominant common issues that bind the subclass together. *See* p. 6, *supra*.

### III. END-PAYOR PLAINTIFFS ARE ADEQUATE REPRESENTATIVES OF SUBCLASSES.

The Court has held that Plaintiffs — Marjorie Ferrell, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund and Twin Cities Bakery Workers Health and Welfare Fund — are adequate representatives. *See* Class Order at 8-13. *See also Blevins v. Wyeth-Ayerst Laboratories, Inc.,* Case No. 324380, Order (Super. Ct. San Francisco County, July 19, 2004) (Exhibit C hereto) (certifying similar class for California "persons and entities" represented by a single consumer). In apparently seeking reconsideration, Wyeth maintains that there must be a separate representative for each subclass certified by the Class Order. Def. Mem. at 12-13.

Having purchased and paid for Premarin, Plaintiffs are adequate representatives of similarly situated members of the subclasses notwithstanding the fact that they did not have transactions in every subclass state. In *Relafen*, for example, the Court certified *three* consumer purchasers of a brand-name drug as representatives of multistate exemplar classes of consumers and entities for state statutory and unjust enrichment claims. *See Relafen*, 221 F.R.D. at 268 ("[I]n *Mowbray v. Waste Management Holdings, Inc.,* 189 F.R.D. 194[, 195] (D. Mass. 1999), [*aff'd on other grounds*, 208 F.3d 288, 299 (1st Cir. 2000)] this Court concluded that a single named plaintiff with a contract claim arising under the law of Illinois could adequately represent

---

[6] These matters are addressed even more easily to the extent that multiple damages are available at the discretion of the Court. *See* Def. Mem. at 11-12 (citing Vt. Stat. Ann. tit. 9, § 2465(a)).

class members with similar claims arising under the laws of California, Georgia, Pennsylvania, Maryland, Michigan, New York, Texas, Virginia, and Wisconsin.").

Here, Plaintiffs have each alleged a distinct and palpable injury to themselves as a result of Wyeth's challenged conduct and by proving their own case, they will prove the claims of all subclass members regardless of their state of residence. *Cf. Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998) (certifying class for ERISA claims that included plans administered by defendant in which plaintiff was not a participant); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) ("There is no question that ... each of the named plaintiffs has standing to bring at least some claims. Moreover, when a class action raises common issues of conduct that would establish liability under a number of different States' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute.") (citations omitted). If, however, the Court determines that a representative for each subclass is required, Plaintiffs should be given an opportunity to join additional representatives. "Affording plaintiffs the opportunity to provide such substitutes is the common practice in cases where, although the current named representatives are inadequate, adequate representatives are known and available as substitutes." *Little Caesar Enterprises Inc. v. Smith*, 172 F.R.D. 236, 244 n.3 (E.D. Mich. 1997) (citations omitted); *see also In re Northwest Airlines Corp. Antitrust Litig.*, 221 F.R.D. 594 (E.D. Mich. 2004) ("[T]he Court instructs Plaintiffs' counsel to promptly identify representatives for each of these subclasses, because the present collection of named plaintiffs does not encompass each of the hub airports at issue in this litigation.").

## CONCLUSION

For the reasons stated, the Subclasses set forth in the Class Order should remain certified pursuant to Rule 23(b)(3).

Dated: December 20, 2004                          Respectfully submitted,


                                                  By:    \s\ Patrick E. Cafferty
                                                         One of Plaintiffs' Counsel

Janet G. Abaray                                   Joseph E. Conley, Jr.
LOPEZ, HODES, RESTAINO,                           BUECHEL & CONLEY
MILMAN, SKIKOS & POLOS                            25 Crestview Hills Mall Road
312 Walnut Street, Suite 2090                     Suite 104
Cincinnati, Ohio 45202                            Crestview Hills, Kty. 41017
Tel: (513) 852-5600                               Tel: (859) 578-6600

*Co-Liaison Counsel for End-Payor Plaintiffs*

Kenneth A. Wexler                                 Marc H. Edelson
Jennifer Fountain Connolly                        HOFFMAN & EDELSON
THE WEXLER FIRM LPP                               45 West Court Street
One North LaSalle, Suite 2000                     Doylestown, Pennsylvania 18901
Chicago, Illinois 60602                           (215) 230-8043
(312) 346-2222

Alan I. Gilbert                                   Patrick E. Cafferty
Barbara J. Felt                                   MILLER FAUCHER and CAFFERTY LLP
Susan E. MacMenamin                               101 N. Main Street, Suite 450
HEINS MILLS & OLSON, P.C.                         Ann Arbor, MI 48104
3550 IDS Center, 80 South Eighth Street           (734) 769-2144
Minneapolis, MN 55402
(612) 338-4605

*Co-Lead Counsel for End-Payor Plaintiffs*

Daniel Gustafson
GUSTAFSON GLUEK PLLC
600 Northstar East
608 Second Ave S.
Minneapolis, MN 55402
(612) 333-8844

Ralph L. Friedland
LAWSERV, CHARTERED
2033 Main Street, Ste. 100
Sarasota, FL 34237

Anthony Bolognese
BOLOGNESE & ASSOCIATES
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103

Michael A. Havard
PROVOST  UMPHREY LAW
FIRM, L.L.P.
390 Park Street
Beaumont, TX 77701

Susan LaCava
SUSAN LaCAVA S.C.
23 N. Pinckney, Suite 300
Madison, Wisconsin 53703

Nicholas E. Chimicles
James R. Malone, Jr.
CHIMICLES & TIKELLIS, LLP
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

Lee Squitieri
SQUITIERI & FEARON
421 Fifth Avenue
26th Floor
New York, NY 10175

Robert C. Gilbert
LAW OFFICES OF ROBERT C. GILBERT
Commercebank Center
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134

Jonathan Shub
SHELLER, LUDWIG & BADEY
1528 Walnut St., 3rd Floor
Philadelphia, PA 19102

Joe R. Whatley, Jr.
WHATLEY DRAKE, LLC
1100 Financial Center
505 20th Street North
Birmingham, AL 35203

Bernard Persky
Barbara Hart
GOODKIND LABATON RUDOFF
& SUCHAROW LLP
100 Park Avenue
New York, New York 10017

Douglas G. Thompson
William Butterfield
L. Kendall Satterfield
FINKELSTEIN, THOMPSON &
LOUGHRAN
1055 Jefferson Street, NW, Suite 601
Washington D.C. 20007

Steven Scholl
DIXON, SCHOLL & BAILEY, P.A.
707 Broadway, N.E., Suite 505
Albuquerque, NM 87125-6746

Jeffrey R. Fuller
REINHART, BOERNER, VAN DEUREN,
NORRIS & RIESELBACH, S.C.
1000 N. Water Street
Milwaukee, WI 53202-3400

Dianne M. Nast
RODA & NAST, P.C.
801 Estelle Dr.
Lancaster, PA 17601

Jon Karmel
KARMEL & GILDEN
221 N. LaSalle Street
Suite 1414
Chicago, Illinois 60601

Ira Neil Richards
TRUJILLO RODRIGUEZ &
RICHARDS, LLC
The Penthouse
226 West Ritten House Square
Philadelphia, PA 19103

*Counsel for End-Payor Plaintiffs*