**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARJORIE FERRELL, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | No. C-1-01-447 |
| | ) | Hon. Sandra S. Beckwith |
| v. | ) | |
| | ) | |
| WYETH-AYERST LABORATORIES, INC. | ) | |
| and AMERICAN HOME PRODUCTS CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE**

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................1

III.  THE MOTION TO INTERVENE SHOULD BE DENIED ...................................3

     A.     Ms. Deyo Is Not Entitled To Intervene As Of Right ...............................3

           1.     Plaintiffs and Their Counsel Are Adequate Representatives.......................3

                 a.     Ms. Deyo's argument rests on an untenable reading of the VCFA............................................................................4

                       (1)     This case does not concern a claim "based on reliance"..............................................................4

                       (2)     "Mere distortion of choice" does not permit Vermont end-payors to recover the consideration they paid for Premarin..............................5

                       (3)     Ms. Deyo's theory does not provide a basis for consumers with fixed co-payments to seek reimbursement of the co-payments....................................11

                       (4)     The exclusion of Premphase and Prempro from this action does not constitute inadequate representation.........12

                       (5)     Ms. Deyo's reliance on Section 2461 of the VCFA places the interests of Vermont end-payors at substantial risk..................................................14

           2.     Ms. Deyo's ability to protect her interests would not be impaired in the absence of intervention ..................................16

           3.     The motion to intervene is untimely .........................................16

                   a.     The point to which the suit has progressed ...................16

                   b.     Purposes for which Ms. Deyo seeks to intervene ..........17

                   c.     Length of time Ms. Deyo was aware of her interest in this litigation ...............................................................17

                   d.     Prejudice to Vermont end-payors .................................18

                   e.     Unusual circumstances..................................................18

     B.     The Request For Permissive Intervention Should Be Denied ...............19

C.      If Ms. Deyo Is Permitted To Intervene, Her Counsel Should Not Be
        Named Class Counsel For The Vermont End-Payors ............................................20

IV.     CONCLUSION ................................................................................................................20

- ii -

# TABLE OF AUTHORITIES

## CASES

*Berry Petroleum Co. v. Adams & Peck*,
    518 F.2d 402 (2d Cir. 1975), *abrogated on other grounds*,
    991 F.2d 36 (2d Cir. 1993) .......................................................................................12, 13

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E. D. Mich. 2003) ...................................................................................9

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812, 2004 U.S. App. Lexis 25772 (6th Cir. Dec. 14, 2004) ...............................9

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 273 (D.N.J. 2000), *aff'd*, 264 F.3d 286 (3d Cir 2001) ...........................11

*Coleman v. General Motors Acceptance Corp.*,
    220 F.R.D. 64 (M.D. Tenn. 2004) .....................................................................................4

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N. D. Ga. 1993)......................................................................................11

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ............................................................................................13

*Greene v. Stevens Gas Serv.*,
    858 A.2d 238 (Vt. 2004) .....................................................................................................6

*Grubbs v. Norris*,
    870 F.2d 343 (6th Cir.1989) .............................................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................................12

*J.B.D.L. Corp. v. Wyeth Ayerst Labs., Inc.*,
    Case No. C-1-01-704, 2003 U.S. Dist. Lexis 26082 (S.D. Ohio. May 12, 2003) ............13

*Jordan v. Michigan Conf. of Teamsters Welfare Fund*,
    207 F.3d 854 (6th Cir. 2000) ............................................................................................15

*In re Lease Oil Antitrust Litig.*,
    186 F.R.D. 403 (S.D. Tex. 1999) .....................................................................................13

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369 (D.D.C. 2002)..........................................................................................14

*Mashburn v. National Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ..................................................................................11

*In re Microsoft Corp. Antitrust Litig.*,
    216 F. Supp. 2d 366 (D. Md. 2003) ............................................................................*passim*

*NAACP v. New York*,
    413 U.S. 345 (1973) ......................................................................................................19

*Peabody v. P.J.'s Automobile Village, Inc.*,
    153 Vt. 55, 569 A.2d 460 (1989) ...................................................................................6

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004) ...................................................................................4

*State v. International Collection Serv., Inc.*,
    594 A.2d 426 (Vt. 1991) ..............................................................................................15

*Stupak-Thrall v. Glickman*,
    226 F.3d 467 (6th Cir. 2000) ...............................................................................*passim*

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    219 F.R.D. 661 (D. Kan. 2004)...............................................................................4, 18

*Winton v. Johnson & Dix Fuel Corp.*,
    515 A.2d 371 (Vt. 1986) ...........................................................................................9, 10

## STATUTES

1 V.S.A. § 128 ..................................................................................................................14

9 V.S.A. § 2451 ..................................................................................................................4

## I.    INTRODUCTION

The motion to intervene ("Motion") filed by Marilyn Deyo is based on the incorrect premise that Vermont end-payors are entitled to a full refund of the consideration they paid for Premarin if Wyeth's actions caused a "mere distortion of choice."  *See Memorandum in Support of the Motion of Vermont Plaintiff Marilyn Deyo to Intervene Under Rule 24* ("Deyo Mem.") [Doc. No. 110] at 9 ("the injury can be the mere distortion of choice by virtue of the alleged conduct").  No court has ever adopted the extremist position urged by Ms. Deyo and her counsel. Further, as set forth in detail below, Ms. Deyo's Vermont attorneys made the very same argument to Judge Motz in *In re Microsoft Corp. Antitrust Litig.*, 216 F. Supp. 2d 366 (D. Md. 2003), only to have it rejected.[1]  Instead of bringing *Microsoft* to this Court's attention, Ms. Deyo's attorneys rely on those same faulty arguments in a failed attempt to impugn the ethics and competence of Class Counsel in this action.  For the reasons set forth below, the attempt by Ms. Deyo's attorneys to insinuate themselves in this action should be rejected, and the Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Ms. Deyo filed her motion for intervention on December 30, 2004, nearly three-and-one-half years after Plaintiffs filed this action on July 6, 2001.  On March 1, 2002, Plaintiffs filed the motion for class certification [Doc. No. 40.].  This Court granted that motion in part and denied it in part on July 1, 2004 [Doc. No. 100, "the Class Order"].  Defendants filed a Rule 23(f) petition, which the Sixth Circuit denied [Doc. No. 105].  Plaintiffs filed a supplemental memorandum in support of class certification on November 15, 2004 [Doc. No. 107].  Defendants filed a response to that supplemental memorandum on December 9, 2004 [Doc. No. 108].  Plaintiffs then filed a reply supplemental memorandum on December 20, 2004 [Doc. No. 109].

Ms. Deyo and her attorneys do not provide any evidence as to when they became aware of this litigation or why they did not file their intervention motion earlier.  Moreover, Ms. Deyo

---

[1] Those attorneys are Dennis J. Johnson and Jacob B. Perkinson.  *Id.* at 366.

- 1 -

did not provide this Court with a copy of the complaint she filed in Vermont, a copy of which is

attached to this memorandum as Exhibit 1. The factual allegations in Ms. Deyo's complaint are

virtually identical to the facts alleged in this action and in the *J.B.D.L.* action. Indeed, numerous

paragraphs are copied verbatim. Moreover, Ms. Deyo's complaint is plainly based on an alleged

antitrust violation. For example, the complaint alleges the following:

> The acts and practices of Wyeth, as herein alleged, have had the
> purpose and effect of restraining, lessening, and deterring
> competition by preventing the entry of a competing brand name
> conjugated estrogen product into the relevant market…. Had
> Duramed's Cenestin product captured a larger share of the relevant
> market, and had doctors been free to substitute a lower-priced
> branded alternative – Cenestin – for the higher-priced Premarin,
> Plaintiff and the Class would have saved a substantial amount of
> money by purchasing a less expensive alternative, and by
> purchasing Premarin at a reduced price.

Deyo Compl., ¶ 40. Further, in alleging that a class should be certified, Deyo lists the following

common questions of fact:

a.   Whether Defendant engaged in a contract, combination, and/or conspiracy to
     fix, raise, maintain, or stabilize the price of the Premarin Family Products
     sold indirectly in Vermont;

b.   Whether Defendant's conduct caused the price of the Premarin Family
     Products sold indirectly in Vermont to be set at artificially high and
     noncompetitive levels; and

c.   Whether Defendant's unlawful conduct caused Plaintiffs and the Class
     members to pay more for conjugated estrogens than they otherwise would
     have paid.

Deyo Compl. ¶ 46. Ms. Deyo does not identify any alleged unfair act other than the very acts

that Plaintiffs challenge in this action, yet she bases her complaint on an allegation that Wyeth

utilized its monopoly power to charge supracompetitive prices for Premarin.

- 2 -

### III.     THE MOTION TO INTERVENE SHOULD BE DENIED

**A.     Ms. Deyo Is Not Entitled To Intervene As Of Right**

Ms. Deyo does not enjoy the right to intervene under Fed. R. Civ. P. 24(a).  In *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000), the Sixth Circuit stated:

> Regarding intervention of right, we have interpreted Rule 24(a) as establishing four elements, each of which must be satisfied before intervention as of right will be granted: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court."  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *see Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999) (same).  "Failure to meet [any] one of the [four] criteria will require that the motion to intervene be denied."  *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989).

The only element that Ms. Deyo can establish is that she has a substantial legal interest in this case as purchaser of Premarin.  The motion to intervene must be denied, however, because Ms. Deyo does not establish any of the other three elements.

Ms. Deyo's attacks on the competence and integrity of Class Counsel lack merit and only serve to demonstrate that neither she nor her counsel should be permitted to participate in this litigation, let alone be named class representative and class counsel for the Vermont end-payors.  In *Stupak-Thrall*, the Sixth Circuit stated that "we have recently gone so far as to say that 'proposed intervenors need only show that there is a *potential* for inadequate representation.' *Grutter*, 188 F.3d at 400 (emphasis in original).  But this does not mean that Rule 24 poses no barrier to intervention at all.  We have affirmed the denial of motions to intervene permissively and as of right, for various reasons."  226 F.3d at 472.  Here, Ms. Deyo does not show even a potential for inadequate representation.

#### 1.     Plaintiffs and Their Counsel Are Adequate Representatives

This Court has held that Plaintiffs and their counsel are adequate representatives.  *See* Class Order at 8-13.  In considering adequacy of representation, other courts have recognized

- 3 -

that Class Counsel have considerable experience representing end-payors classes in similar pharmaceutical antitrust litigation. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004). Nonetheless, Ms. Deyo and her counsel maintain that Class Counsel are "demonstrably inadequate" because they purportedly have failed to allege the best possible claim for Vermont end-payors under the Vermont Consumer Fraud Act, 9 V.S.A. § 2451 *et seq*. (the "VCFA"). *See* Deyo Mem. at 7-11.

While Class Counsel need not bring every conceivable claim, courts are "justifiably cautious" in addressing adequacy of representation where the class representatives have "left aside far stronger claims for monetary damages and sought to have weaker claims certified for dubious strategic purposes." *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 82 (M.D. Tenn. 2004); *see also In re Universal Service Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661, 668-70 (D. Kan. 2004). Accordingly, in addressing the present challenge to Class Counsel's adequacy, the Court should consider whether Class Counsel left aside "stronger claims" for "dubious strategic purposes." As addressed below, Ms. Deyo's contention that a higher measure of damages would be available under Vermont law – by simply dressing up this antitrust action as a consumer fraud action – is speculative and unpersuasive. Indeed, reliance upon such a theory would undermine the best interests of those Vermont end-payors who incurred economic loss by paying too much for Premarin.

### a.    Ms. Deyo's argument rests on an untenable reading of the VCFA

### (1)    This case does not concern a claim "based on reliance"

Ms. Deyo first raises a red herring when she argues that a plaintiff need not establish reliance to recover under the VCFA for deceptive acts or practices. Ms. Deyo states:

> Where a claim is based on reliance on defendant's act, no proof of damage is required under the VCFA. To argue that damages (or proof of damages) is a required element under the claim based on "reliance" under the VCFA misreads the plain meaning of the statute and ignores the Vermont Supreme Court's interpretations of the VCFA.

Deyo Mem. at 4.  Whether damages is an element of a claim "based on reliance" is irrelevant, because neither this action nor Ms. Deyo's Vermont action alleges such a claim.  Ms. Deyo's complaint does not allege that she or anyone else relied in any fashion on any deceptive act or practice by Wyeth.  Instead, in the only Count in the complaint, Ms. Deyo alleges:

> As a direct, foreseeable and proximate cause of Defendant's conduct in violation of 9 V.S.A. § 2451, *et seq.*, Plaintiff and members of the Class have been damaged in their property in that the price which they have paid for Premarin and the other Premarin Family Products has been unlawfully inflated to a supracompeti-tive level.

Deyo Compl., ¶ 55.  That claim plainly is not "based on reliance."  As a result, Ms. Deyo's argument about claims "based on reliance" is much ado about nothing.  Similarly, in *Microsoft Corp. Antitrust Litig.*, in which Ms. Deyo's attorneys represented the plaintiffs, Judge Motz stated:  "Plaintiffs also suggest that they may sue under § 2461 as 'consumer[s] who contracted for goods or services in reliance upon' a practice prohibited by the VCFA.  They have not, however, demonstrated that they 'relied' on Microsoft's monopoly maintenance in any way."  216 F. Supp. 2d at 368 n.1.

### (2)    "Mere distortion of choice" does not permit Vermont end-payors to recover the consideration they paid for Premarin

Ms. Deyo asserts the novel proposition, which no court has ever adopted and which one court has explicitly rejected, that the Vermont end-payors are entitled to recover the full consideration they paid for Premarin merely by proving that Wyeth "distorted" the choices available to them.  Specifically, Ms. Deyo makes the following misguided argument:

> [T]he VCFA provides that an aggrieved consumer can obtain damages in the amount of consideration paid, not just the amount of overpayment, as the Ohio class representatives and counsel seek.  9 V.S.A. §2461(b).  Once the Vermont Class establishes a distortion of consumer choice by Defendant in the Vermont Action, the Vermont Class will be entitled to recover the full amount of consideration paid plus attorneys' fees.  9 V.S.A. §2461(b).  The fact that the Ohio class representative and counsel seek less than the full amount of damages available to members of the Vermont Class demonstrates either a stark misunderstanding of the VCFA, or alternatively, that their conflicts of interest prevent

- 5 -

>       them from adequately representing the interests of the Vermont
>       Class.

Deyo Mem. at 9.

That argument is flawed because the VCFA does not permit a plaintiff to recover full consideration upon showing that there was a mere distortion of consumer choice.  Both Section 2461 and 2465 provide that a plaintiff may recover the consideration it paid, but that does not mean that such relief is available in any action in which a violation is established.  If a plaintiff established a tying claim and proved that it would not have purchased the tied product at all but for the defendant's unlawful conduct, then reimbursement of full consideration could be warranted.  If, however, a plaintiff establishes that a product was priced at a supracompetitive level or that there was merely a distortion of consumer choice, there is no authority for the novel proposition that the plaintiff is entitled to recover the full price of the product.

In fact, the Vermont Supreme Court has made clear that a plaintiff must establish cognizable injury in *any* case under the VCFA.  In *Greene v. Stevens Gas Serv.*, 858 A.2d 238 (Vt. 2004), the Court affirmed summary judgment for the defendant in a case brought under the VCFA, because the plaintiff failed to establish a compensable loss.  The Court stated:

>       In a damage action under the Consumer Fraud Act, the consumer
>       must demonstrate that he sustained "damages or injury as a result
>       of any false or fraudulent representations or practices" of the
>       "seller, solicitor or other violator."  9 V.S.A. § 2461(b); *see Carter
>       v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998).  Although we
>       read broadly the requirement that there be injury, see *Peabody v.
>       P.J.'s Auto Village, Inc.*, 153 Vt. 55, 58, 569 A.2d 460, 462-63
>       (1989), ***there must be some cognizable injury caused by the
>       alleged consumer fraud***.

*Id.* at 244 (emphasis added).

In a failed attempt to support her invalid claim that mere distortion of choice entitles the Vermont end-payors to reimbursement of the full price they paid for Premarin, Ms. Deyo erroneously relies on *Peabody v. P.J.'s Auto Village, Inc.*, 569 A.2d 460 (Vt. 1989), to make the following argument:

- 6 -

> [T]he VCFA requires plaintiffs to demonstrate only that a defendant engaged in "unfair or deceptive practices in commerce" which resulted in a distortion of the ultimate exercise of choice by the Vermont consumer. *Peabody*, 569 A.2d at 463. Under this standard, consumers are entitled to recover if the defendant engaged in conduct that violates the liberal standards of the VCFA. This is true even if the consumer purchased with a flat co-pay for the product, as the injury can be the mere distortion of choice by virtue of the alleged conduct. *Id.* … Thus, the Ohio Plaintiffs' allegations that Defendant acted intentionally and engaged in monopolistic practices in the relevant market are beyond what the Vermont Class needs to show to establish Defendants' liability under the VCFA and unduly complicates the Vermont Class's claims for relief.

Deyo Mem. at 8-9.

Ms. Deyo misses the mark by relying on *Peabody*, in which the plaintiff proved that the defendant misrepresented a 1972 car to be a 1974 car. *Id.* at 462 ("It is a material misrepresentation to call the vehicle a 1974 Saab because the rear wheels, trunk, and parts of its undercarriage and passenger compartment came from a 1972 Saab."). The Court stated: "It is apparent that the trial court considered actual damage as an element of consumer fraud. All plaintiff must show, however, is that the deceptive omission is 'likely to influence a consumer's conduct' by 'distort[ing]' the buyer's 'ultimate exercise of choice.' *International Harvester Co.*, 104 F.T.C. at 1057." *Id.* at 463. In contrast to *Peabody*, neither Ms. Deyo nor any Vermont end-payor alleges that Wyeth misrepresented or omitted any fact. Ms. Deyo does not even attempt to establish how "mere distortion of choice" in the abstract caused her to suffer a cognizable injury. Instead, she alleges that she and other Vermont end-payors paid supracompetitive prices for Premarin, which constitutes a cognizable injury. *See* Deyo Compl. ¶ 55 ("Plaintiffs and members of the Class have been damaged in their property in that the price which they have paid for Premarin and the other Premarin Family Products has been unlawfully inflated to a supracompetitive level"). That is precisely the cognizable injury alleged by Plaintiffs in this action.

In *In re Microsoft Corp. Antitrust Litig.*, 216 F. Supp. 2d 366 (D. Md. 2003), Judge Motz rejected an argument by the Vermont lawyers who represent Ms. Deyo here that "mere distortion

of choice" permits a recovery of damages under the VCFA. The court also rejected the argument that a plaintiff who proves that a product has been priced at supracompetitive levels is entitled to full reimbursement of the consideration paid. In that case, Ms. Deyo's attorneys made the same argument they make here:

> Citing *Peabody v. P.J.'s Auto Village, Inc.*, 153 Vt. 55, 569 A.2d 460, 463 (1989), plaintiffs contend that "the standard of a deceptive or unfair act or practice under the Act is an objective one and all plaintiffs need to show is that the deceptive or unfair conduct was likely to influence their conduct by distorting the 'ultimate exercise of choice.' . . . The analysis focuses on the 'risk of consumer harm' rather than actual harm."

*Id.* at 367. The court rejected the argument for the following reasons:

> *Peabody* is significantly different from the present case. In *Peabody* the defendant sold the plaintiff what it represented to be a used 1974 Saab while knowing that the car had been "clipped," i.e., the front of a 1974 Saab had been welded to the back of a 1972 Saab…. [¶] *Peabody* makes perfect sense in the context in which it arose. Self-evidently, a consumer is entitled not to be misled about the true nature of the product she is purchasing. It is for that reason that "'representations made [with the] capacity or tendency to deceive'" are actionable under the Federal Trade Commission Act and the VCFA. [Citations omitted.]

> The present case, however, does not involve the making of misleading representations or the conducting of a practice constituting the functional equivalent of such representations. Rather, it involves Microsoft's maintenance of a monopoly that is alleged to have indirectly affected consumer choice. I recognize that this conduct constitutes a violation of the VCFA and that § 2461(b) permits a "consumer . . . who sustains damages or injury as a result of any" practice prohibited by the VCFA to bring suit. However, to interpret "injury" as used in this phrase to mean any "distortion of consumer choice" simply by extracting language from *Peabody* -- which, in turn, borrowed the language from an FTC case involving deceptive omissions -- would be the antithesis of sound statutory construction. Different provisions of the same statute may raise different issues and different policy concerns. The implication (indeed, the apparent goal) of plaintiffs' argument is that all consumers in Vermont who purchased licenses to Windows operating systems during the relevant time period may recover back from Microsoft, under the aegis of a "consumer fraud" statute, all consideration they paid (plus attorney's fees and exemplary damages) even if they had received the exact product for which they bargained and even if a jury were to find they had received full value for what they paid.

- 8 -

*Id.* at 367-68 (footnotes omitted).  For those reasons, Ms. Deyo's attacks on Class Counsel in this action are wholly unwarranted.

Finally, Ms. Deyo's arguments are undermined by *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 529 (E. D. Mich. 2003), in which an objector to a nationwide settlement argued that Tennessee consumers were entitled to "full consideration" under the Tennessee statute, entitling them to a greater share of settlement proceeds.  Judge Edmunds rejected that objection and others as "without merit and bordering on frivolousness."  *Id.* at 528.  Tellingly, the Vermont attorney general – who represented Vermont consumers in the litigation (*id.* at 521) – did not state a claim for "full consideration" or seek a greater share of settlement proceeds for Vermont consumers.  Moreover, the Sixth Circuit affirmed the district court's imposition of an appeal bond on the Tennessee objector, concluding that the objections raised by the objector "lack merit."  *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 2004 U.S. App. Lexis 25772, *16 (6th Cir. Dec. 14, 2004).  Similarly, Ms. Deyo's attempt to seek reimbursement of consideration for Vermont end-payors in this litigation lacks merit.

In fact, one of the cases relied upon by Ms. Deyo demonstrates that actual damages are required and that a plaintiff is ***not*** entitled to a full refund of consideration merely because consumer choice was "distorted."  In *Winton v. Johnson & Dix Fuel Corp.*, 515 A.2d 371 (Vt. 1986), the plaintiff purchased a water heater based on the defendant's advertisements "that emphasized the availability of the Vermont state energy tax credit."  *Id.* at 372.  The advertisements did not reveal that the credit was available only to resident individual taxpayers. As a nonresident, the plaintiff sued for damages.  After a bench trial, the trial court found that the defendant had violated the VCFA by deceiving the plaintiff.  The court, however, did not award the plaintiff "the full amount of consideration paid," as Ms. Deyo argues is the law.  *See* Deyo Mem. at 9.  Instead, the trial court "awarded the plaintiff $1,000 in ***actual damages*** caused by the denial of the tax credit, and attorney's fees as allowed by the Act."  *Id.* at 372-73 (emphasis added).

- 9 -

The Supreme Court affirmed the judgment, including the award of $1,000 in actual damages based on the lost tax credit. In fact, the Supreme Court held that the defendant might be entitled to a reduction of that award on remand, due to the "possibility that the plaintiff may now obtain a tax credit" based on an intervening decision by the Vermont Supreme Court. *Id.* at 377. Therefore, *Winton* undermines Ms. Deyo's argument that a plaintiff who "establishes a distortion of consumer choice [is] entitled to recover the full amount of consideration plus attorneys' fees." Deyo Mem. at 9. In *Winton*, the plaintiff established that he was deceived by the defendant's advertisements and yet was awarded "actual damages" -- not a refund of the full consideration he paid. 515 A.2d at 372-33. Thus, even in a VCFA case based on deceptive statements, a plaintiff must establish actual damages.

Finally, Ms. Deyo incorrectly argues that Plaintiffs need not prove that "defendants engaged in monopolistic practices, or what the 'relevant market' is." Deyo Mem. at 8. She does not suggest, however, how Plaintiffs could prove that Wyeth unlawfully drove up the price of Premarin other than by demonstrating a violation of the antitrust laws pursuant to Section 2465. Moreover, Ms. Deyo cannot cite a single non-antitrust case in which a plaintiff has established that a defendant drove up the price of a product to supracompetitive levels. In fact, Ms. Deyo's own complaint defines the relevant market and rests on allegations that Wyeth violated the antitrust laws, driving up the price of Premarin. For example, Ms. Deyo alleges that Wyeth's actions were designed "to allow Wyeth to maintain a monopoly in the conjugated estrogen market." Deyo Compl., ¶ 5. Further, Ms. Deyo alleges that "Wyeth engaged in this conduct (as described below) with the express purpose of maintaining Premarin's monopoly position in the market." *Id.*, ¶ 23. Ms. Deyo also alleges that "Wyeth has continued to benefit from its unfair practices and the unlawful maintenance and extension of its monopoly in the conjugated estrogen market and has increased the price for Premarin during the relevant period far above the rate of inflation." *Id.*, ¶ 37. Thus, Ms. Deyo's complaint constitutes a tacit admission that in order to

show that Vermont end-payors suffered cognizable injuries, they must establish a violation of the antitrust laws.

### (3)    Ms. Deyo's theory does not provide a basis for consumers with fixed co-payments to seek reimbursement of the co-payments

Ms. Deyo and her counsel maintain that Class Counsel have "permitted" this Court to "inaccurately conclude that those end-payors with fixed co-payments are not entitled to any collection." Deyo Motion at 3. In fact, Class Counsel argued that persons with fixed co-payments *should* be included in the class. *See Reply Memorandum in Support of End-Payor Plaintiffs' Motion for Class Certification* [Doc. No. 63] at 19-21 (citing *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)). The Court, however, ruled that persons with fixed co-payments would not be included in the class. Class Order at 20-21. This Court's ruling was consistent with the rulings in other end-payor antitrust class actions, *see id.* at 21,[1] and Class Counsel did not pursue a Rule 23(f) application. Accordingly, the claims, if any, of consumers who purchased Premarin and paid a fixed co-payment will not be addressed in this litigation. Moreover, it is not clear whether Ms. Deyo made a flat co-pay, because her complaint alleges only that she purchased Premarin; she does not indicate whether she paid any or all of the purchase price. Deyo Compl. ¶ 9. If she paid only a "fixed co-payment," she is excluded from the class and cannot be bound by any judgment or settlement. *Cf. In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 273, 277-79 (D.N.J. 2000) (rejecting Rule 24(a) motion to intervene by shareholder who was not a member of the class), *aff'd*, 264 F.3d 286 (3d Cir 2001); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 342-343 (N. D. Ga. 1993) ("Because the government entities are not within the definition of the class and are not appearing on behalf of class members with regard to this objection, they have no standing to bring the objection.") (and cases cited therein); *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660, 673 (M.D. Ala. 1988) (holding that non-members of class who argued

---

[1] *Citing In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 347 (E.D. Mich. 2001); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 270-71 (D. Mass. 2004) (certifying an exemplar class that included Vermont end-payors).

that class should be broadened to include them are "without standing to object to the settlement (and are not barred or affected by it)").

In any event, Deyo errs in asserting that consumers with fixed co-payments are entitled to recover damages under her invalid theory that "the injury can be the mere distortion of choice by virtue of the alleged conduct." Deyo Mem. at 8-9 (citing *Peabody*). As shown above, *Greene* requires "cognizable injury," and *Peabody* does not support the conclusion that "mere distortion of choice" constitutes cognizable injury that permits a consumer to damages. Under Ms. Deyo's theory, all Vermont end-payors would be entitled to reimbursement of the full consideration they paid for Premarin even if the only cognizable injury they suffered was paying a supracompetitive price. Not a single court has ever accepted such a theory, and there is no reason for any court ever to accept that theory.

**(4)    The exclusion of Premphase and Prempro from this action does not constitute inadequate representation**

Ms. Deyo raises yet another red herring when she argues that Class Counsel do not adequately represent the Vermont end-payors because they "seek to represent only those Vermont consumers who purchased Premarin as opposed to those who purchased Premarin, Premphase or Prempro." Deyo Mem. at 9. Significantly, Ms. Deyo alleges that she purchased Premarin only. *See* Deyo Compl. ¶ 9. Accordingly, the failure to include Premphase and Prempro in the action does not affect Ms. Deyo or support her attempt to intervene. A class has been certified here, and Ms. Deyo can speak only for herself and not the uncertified putative class in her state court action. Following notice, the decision to remain in a class or opt-out will be an individual decision that cannot be made by counsel for an overlapping uncertified (or even a certified) class. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1025 (9th Cir. 1998) ("a class representative in a state class action, acting at the same time as a federal class action, lacks the power to opt-out an entire class without the permission of individual class members"); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2d Cir. 1975) ("opting out of a class action, like the decision to participate in it, must be an individual decision"), *abrogated on other*

- 12 -

*grounds by Menowitz v. Brown*, 991 F.2d 36, 41 (2d Cir. 1993); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 439 (S.D. Tex. 1999). Similarly, Ms. Deyo has no standing to intervene to assert the rights of other people who, unlike her, purchased Premphase or Prempro. *Cf. Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) ("A potential class representative must demonstrate individual standing vis-as-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action.").

Moreover, Ms. Deyo's Vermont complaint does not even describe Prempro or Premphase and, with the exception of changing references in Plaintiffs' Complaint from Premarin to "Premarin Family Products," does not even allege what the offending contracts provide with regard to Prempro or Premphase. Plaintiffs allege in this action that Wyeth's anti-competitive conduct included entering into contracts with health plans and PBMs that provide that ***Premarin*** be the sole conjugated estrogen product on formulary. *See* Corrected Consol. Am. Class Action Compl. (Jan. 2, 2002) ("Compl.") ¶ 60 [Doc. No. 31]; *see also J.B.D.L. Corp. v. Wyeth Ayerst Labs., Inc.*, Case No. C-1-01-704, 2003 U.S. Dist. Lexis 26082 *4 (S.D. Ohio. May 12, 2003) ("The complaint contends that Wyeth has entered into exclusive dealing contracts with PBM's which offer rebates, discounts, and other incentives if Premarin is the only conjugated estrogen listed on the formulary."). Plaintiffs allege that the inclusion of these sole conjugated estrogens clauses in Wyeth's contracts with health plans and PBMs caused members of the Class to pay supra-competitive prices ***for Premarin***. Compl., ¶ 65. Ms. Deyo does not even attempt to explain how purchasers of Premphase and Prempro would not have been injured by the inclusion of sole conjugated estrogens clauses in favor of Premarin. In particular, Ms. Deyo fails to acknowledge that Premarin and Cenestin, which contain conjugated estrogens only and are used primarily by a woman who has had a hysterectomy, serve a different market than Premphase and Prempro, which provide combinations of conjugated estrogens and progestin that are primarily used by a woman who still has a uterus. As a result, Ms. Deyo fails to explain why the interests

- 13 -

of those who purchased Premarin are coterminous with the interests of those who purchased Premphase and Prempro.

Nor does Ms. Deyo cite any authority for the novel proposition that class counsel must broaden the class definition to encompass all possible victims of a defendant's allegedly unlawful conduct.  As one court has explained, "A plaintiff is master of its claim, which is equally true of a class plaintiff."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 396 (D.D.C. 2002) (rejecting objection that class should have included Nebraska claims).  If there is a factual and legal basis for claiming that Wyeth's actions increased the price of products other than Premarin, Ms. Deyo (or someone who actually purchased Premphase or Prempro) is free to bring that claim in Vermont.  There is no reason, however, to permit Ms. Deyo to disrupt this action by seeking to bring claims on behalf of individuals and entities who purchased Premphase and Prempro, particularly when this action and the companion *J.B.D.L.* action have been pending on behalf of purchasers of Premarin for years.

### (5)    Ms. Deyo's reliance on Section 2461 of the VCFA places the interests of Vermont end-payors at substantial risk

Defendants may well agree with Ms. Deyo's effort to supplant Class Counsel, since her claim under Section 2461 feeds right into Defendants' opposition to certification of a subclass that includes Vermont Third-Party Payors.  Wyeth has argued incorrectly that the VCFA "extends its protection *only* to consumers and does not permit *any* damage claims – whether direct or indirect – by corporations."  *See* Doc. No. 108, at p. 10 (supplemental response re class certification).  As Plaintiffs explained in their reply supplemental memorandum on class certification [Doc. No. 109], Wyeth is wrong.  Plaintiffs are suing under Section 2465(a) of the VCFA, which  permits any "***person*** who sustains damages or injury as a result of any violation of state antitrust laws."  (Emphasis added.)  Under Vermont law, the word "person" is construed to include all types of entities.  *See* 1 V.S.A. § 128 ("'Person' shall include any natural person, corporation, municipality, the state of Vermont or any department, agency or subdivision of the state, and any partnership, unincorporated association or other legal entity.").

- 14 -

While Wyeth's argument is undoubtedly incorrect as to a Section 2465 claim asserted by Plaintiffs, it may have some traction as against Ms. Deyo's 2461(b) claims on behalf of "all persons or entities in Vermont." Deyo Compl. ¶ 42. Unlike Section 2465, which protects any "person," Section 2461(b) applies to any "***consumer*** who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title…." (Emphasis added.) Further, in its supplemental class certification memorandum, Wyeth cited to *State v. Int'l Collection Serv., Inc.*, 594 A.2d 426, 428 (Vt. 1991), in which the Supreme Court stated that "it is clear there is no private right of litigation under § 2461(b) for business victims of deceptive or unfair acts or practices." Thus, Ms. Deyo is placing the interests of entities at risk by relying on Section 2461(b). Her desire to assert a speculative Section 2461 theory – for dubious strategic purposes – cannot be permitted to trump Class Counsel's antitrust approach to this litigation that has resulted in certification of a class that protects the interests of all Vermont end-payors under Section 2465. [2]

For the foregoing reasons, Ms. Deyo has failed to establish that her interests are not adequately represented by Class Counsel in this litigation. *See Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000) ("a movant fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty"). Instead, it is her attorneys who would gravely endanger the interests of Vermont end-payors if she intervened.

---

[2] Indeed, if Ms. Deyo were correct, the Vermont legislature wasted its time in enacting Section 2465. There would never be an occasion to assert a Section 2465 antitrust claim if a greater recovery and lower burden of proof was available under Section 2461.

### 2. Ms. Deyo's ability to protect her interests would not be impaired in the absence of intervention

Ms. Deyo has no right to intervene for the independent reason that her interests will not be impaired if she does not intervene.[3] Ms. Deyo has filed her own lawsuit in Vermont and can protect her interests by pursuing that lawsuit. Further, Ms. Deyo may opt out of this action, in which case any findings or verdicts in this lawsuit cannot impair her interests. To the extent Ms. Deyo allegedly desires to protect the interests of Vermont end-payors, her moving papers demonstrate that neither she nor her attorneys will protect those interests. If Ms. Deyo wishes to pursue her radical and unsupported interpretation of the VCFA, she may do so in her Vermont lawsuit. She should not, however, be permitted to intervene in this action in order to represent the interests of Vermont end-payors.

### 3. The motion to intervene is untimely

The motion to intervene should be denied for the additional and independent reason that it is untimely. In *Stupak-Thrall*, the Sixth Circuit listed five factors that a district court should consider in determining whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

226 F.3d at 473.

### a. The point to which the suit has progressed

This suit has been pending for more than three-and-one-half years. The Court has ruled on motions to dismiss and for class certification. Nonetheless, Ms. Deyo now seeks to intervene to assert claims that could have been asserted from the outset of this litigation and that would

---

[3] The Court need not address this issue, because Ms. Deyo has failed to demonstrate that her interests in this litigation are not adequately represented. *See Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989) ("Failure to meet [any] one of the [four] criteria will require that the motion to intervene be denied.").

- 16 -

have resolved when the Court issued rulings on the motion to dismiss and the motion for class certification. As the Sixth Circuit has explained, the "critical factor is what steps occurred along the litigation continuum" before the motion for intervention was filed. *Stupak-Thrall*, 226 F.3d at 475.

### b.    Purposes for which Ms. Deyo seeks to intervene

Ms. Deyo admits that she seeks to intervene for the purpose of either staying this action as to Vermont end-payors or being named a class representative so that her attorneys could assert the radical and unsupported interpretation of the VCFA that Judge Motz rejected in *Microsoft*. *See* Deyo Mem. at 16. When a class member seeks to participate for purposes that can only harm the class, intervention must be denied.

### c.    Length of time Ms. Deyo was aware of her interest in this litigation

As the Sixth Circuit has explained, the "third factor is the length of time preceding the appellants' motion to intervene, during which they knew, ***or should have known***, of their interest in the case." *Stupak-Thrall*, 226 F.3d at 477 (emphasis added). Nonetheless, Ms. Deyo has not submitted any evidence establishing when she and her counsel first knew or should have known of her alleged interest in this case. Instead, Ms. Deyo makes the following assertion without citing any evidence:

> The Vermont Plaintiff only recently became aware that parties to the Ohio Action are failing to adequately represent the interests of the Vermont Class. Only a diligent investigation by the Vermont Plaintiff's counsel revealed that counsel to the class representatives in the Ohio Action failed to recognize that the Vermont Class has stronger claims under the VCFA….

Deyo Mem. at 15. The Vermont attorneys do not describe the alleged diligent investigation, which failed to discover the existence of this lawsuit for three-and-one-half years. In fact, the Vermont attorneys do not explain when they allegedly became aware of this lawsuit or the circumstances under which they became aware of it. Nor do they attempt to explain why they did not discover the existence of the lawsuit earlier. Plaintiffs' motion for class certification was

- 17 -

filed more than two years ago.  It has been clear since that time that Plaintiffs were not relying on the flawed interpretation of the VCFA urged by Ms. Deyo's counsel.  Nonetheless, Ms. Deyo and her attorneys only now seek to intervene in this action.  In *Stupak*, the Court stated: "Ultimately, the appellants present no persuasive excuse for having waited seven months before moving to intervene."  226 F.3d at 478.  Similarly, Ms. Deyo and her attorneys provide no excuse at all, let alone a persuasive excuse, as to why they did not file the motion to intervene years ago.

### d.    Prejudice to Vermont end-payors

Vermont end-payors would suffer extreme prejudice if Ms. Deyo were permitted to intervene for the purpose of asserting a theory of liability that cannot survive scrutiny.

### e.    Unusual circumstances

The only unusual circumstance is that Ms. Deyo relies on arguments that a federal court has roundly rejected, but her Vermont attorneys did not reveal that decision to this Court.  Such a lack of candor undermines the motion for intervention.

Balancing the foregoing factors leads to one conclusion – the motion for intervention as of right should be denied.  Should Ms. Deyo's novel action in Vermont state court survive a motion to dismiss, be certified for class treatment or otherwise advance in such a way that gives rise to a true conflict with this litigation, the Court may wish to revisit the issue.  As it stands, Ms. Deyo and her counsel have done nothing more than file a copycat complaint that conjures up a dubious interpretation of the VCFA that one federal court has already rejected.  This is a woefully insufficient basis to supplant Class Counsel and turn over the reigns of this litigation to Ms. Deyo and her counsel.[4]

---

[4] *Cf. In re Universal Service Fund Telephone Billing Practices Litig.,* 219 F.R.D. 661, 670 (D. Kan. 2004) ("While the court can certainly appreciate the fact that a named plaintiff's failure to assert certain claims of the absent class members might give rise to a conflict of interest when the named plaintiff is advancing his or her own interests at the expense of the class, the mere fact that a named plaintiff elects not to pursue one particular claim does not necessarily create such a conflict.  Here, the named plaintiffs' decision to abandon the fraud claim appears to have been a choice that advances the named plaintiffs' interests as well as the interests of the absent class members, and therefore the court is unpersuaded that any impermissible conflict of interest exists.").

**B.      The Request For Permissive Intervention Should Be Denied**

Ms. Deyo should not be permitted to intervene under Rule 24(b).  The Sixth Circuit has explained that "'so long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion.'"  *Stupak-Thrall*, 226 F.3d at 472 (citation omitted).  First, the request for permissive intervention should be denied because it is untimely.  The Supreme Court has explained that "[w]hether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'"  *NAACP v. New York*, 413 U.S. 345, 365 (1973).  As shown above, Ms. Deyo's motion is untimely and, therefore, must be denied.

Second, balancing undue delay, prejudice to the original parties and other relevant factors leads to only one conclusion – the motion for permissive intervention should be denied.  As demonstrated above, Ms. Deyo seeks to intervene for a purpose that can only harm Vermont end-payors, *i.e.*, to assert a claim that is based on a flawed understanding of the VCFA.  Further, there is no merit to Ms. Deyo's argument that "if the Court grants the Vermont Plaintiffs' requested relief of inserting the Vermont Plaintiff as class representative of the Vermont Class, there will be no material delay in the Ohio Action."  Deyo Mem. at 20.  The mere act of naming Ms. Deyo the class representative, even though she has not submitted any evidence that she is an adequate representative, would not delay this action *if Class Counsel are not replaced as counsel for the Vermont end-payors*.  If, however, her attorneys are permitted to represent Vermont end-payors, there will be substantial delays that cannot conceivably benefit the Vermont end-payors.  Ms. Deyo's attorneys would seek leave to amend the complaint to state their novel and insupportable theories under the VCFA and would file a motion to redefine the class.  In the end, those motions would be denied for the reasons sets forth above, and the only result would be to harm the interests of Vermont end-payors and other class members whose cases would be delayed while Ms. Deyo's counsel pursued their incorrect interpretation of the

- 19 -

VCFA.  Similarly, staying this action while Ms. Deyo pursues her faulty theories in Vermont would not serve anyone's best interests.

**C.    If Ms. Deyo Is Permitted To Intervene, Her Counsel Should Not Be Named Class Counsel For The Vermont End-Payors**

If Ms. Deyo is permitted to intervene as a plaintiff, she should not be named the class representative for Vermont end-payors without a showing that she is qualified.  To date, she has not provided the Court with any evidence that she is qualified to serve as a class representative.  Moreover, Ms. Deyo's attorneys should not be named class counsel for the Vermont end-payors under any circumstances.  As demonstrated above, Ms. Deyo's attorneys rely on faulty legal arguments that Judge Motz rejected in *Microsoft*.  The reliance on those faulty arguments and the failure to bring the *Microsoft* decision to this Court's attention demonstrate that her attorneys are unfit to serve as class counsel.

## IV.    CONCLUSION

The motion to intervene should be denied.

Dated:  January 20, 2005                                Respectfully submitted,


                                                        \Craig R. Spiegel_____
                                                        One of Plaintiffs' attorneys

Janet G. Abaray                                   Joseph E. Conley, Jr.
LOPEZ, HODES, RESTAINO,                            BUECHEL & CONLEY
MILMAN,  SKIKOS & POLOS                            25 Crestview Hills Mall Road
312 Walnut Street, Suite 2090                     Suite 104
Cincinnati, Ohio 45202                            Crestview Hills, Kty.  41017
Tel: (513) 852-5600                               Tel: (859) 578-6600

*Co-Liaison Counsel for End-Payor Plaintiffs*

Kenneth A. Wexler                                 Marc H. Edelson
Jennifer Fountain Connolly                        HOFFMAN & EDELSON
THE WEXLER FIRM LLP                               45 West Court Street
One North LaSalle, Suite 2000                     Doylestown, Pennsylvania 18901
Chicago, Illinois 60602                           (215) 230-8043
(312) 346-2222

- 20 -

Alan I. Gilbert
Barbara J. Felt
Susan E. MacMenamin
HEINS MILLS & OLSON, P.C.
3550 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
(612) 338-4605

Steve W. Berman
Craig R. Spiegel
HAGENS BERMAN LLP
1301 5th Avenue, Suite 2900
Seattle, WA  98101

Patrick E. Cafferty
MILLER FAUCHER and CAFFERTY LLP
101 N. Main Street, Suite 450
Ann Arbor, MI 48104
(734) 769-2144

**_Co-Lead Counsel for End-Payor Plaintiffs_**

- 21 -