# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| MARJORIE FERRELL, et al., | ) | Civil Action No. C-1-01-447 |
|  | ) |  |
| Plaintiffs, | ) | Judge Sandra S. Beckwith |
|  | ) | Magistrate Judge Timothy S. Hogan |
| v. | ) |  |
|  | ) |  |
| WYETH-AYERST LABORATORIES, INC., et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## INTERVENOR PLAINTIFF MARILYN DEYO'S COMBINED REPLY TO THE OHIO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO, AND WYETH'S RESPONSE TO, MOTION TO INTERVENE UNDER RULE 24

Richard S. Wayne, Esq.
William K. Flynn, Esq.
STRAUSS & TROY
150 East Fourth Street
Cincinnati, OH 45202-4018
Tel: (513) 621-2120
Fax: (513) 629-9426
*Trial Attorneys for Plaintiff*
 *Marilyn Deyo*

Local Counsel

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
James F. Conway, III, Esq.
JOHNSON & PERKINSON
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060
*Counsel To Plaintiff and the Putative*
*Class in Deyo v. Wyeth, Docket No.*
*735-12-04 Wncv in Washington Superior*
*Court, Washington County, Vermont*

## TABLE OF CONTENTS

INTRODUCTION ------------------------------------------------------------------------------------ 1

ARGUMENT--------------------------------------------------------------------------------------------- 3

I.   The Vermont Plaintiff Is Entitled To Intervene As Of Right---------------------------------- 3

   A.   The Representation Of Vermont Consumers By Ohio Plaintiffs' Counsel Is
        Inadequate------------------------------------------------------------------------------------- 3

      1.   The Ohio Plaintiffs Misread The VCFA And Vermont Supreme Court  Precedent
           Interpreting The VCFA ----------------------------------------------------------------- 4

      2.   Ohio Plaintiffs' Attacks On The Vermont Complaint And Vermont Counsel Are
           Baseless ------------------------------------------------------------------------------13

   B.   The Vermont Plaintiff's Ability To Protect Her Interests Will Be Impaired In The
        Absence Of Intervention ---------------------------------------------------------------------17

   C.   The Vermont Plaintiff's Motion Is Timely --------------------------------------------------18

CONCLUSION ------------------------------------------------------------------------------------------20

## INTRODUCTION

The Ohio Plaintiffs' Opposition to the Deyo Motion to Intervene ("Opp. at ___") demonstrates conclusively that intervention is appropriate; the Ohio Plaintiffs are inadequately representing Vermonters in this litigation; and the only way that Vermonters will collect their proper due under the Vermont Consumer Fraud Act, 9 V.S.A. § 2453, *et. seq.,* ("VCFA")  is if separate representation is afforded them.  Thus, the Ohio Plaintiffs urge this Court to a) ignore the express terms of the VCFA*,* which permits the recovery of consideration paid; b) extend the holdings of several Vermont Supreme Court cases interpreting actions brought solely for "damages" *to any case* brought under the VCFA, even those which allege "injury", a concept which is distinct from "damages" under the VCFA, or seek the return of consideration; and c) accept as gospel a non-controlling interpretation of Vermont law, though that interpretation is directly contradicted by the statute, several Vermont Supreme Court cases and a more recent opinion by Judge Hornby from the U.S. District Court in Maine.

The Ohio *Plaintiffs* and *Defendant* unite to urge this Court to accept the non-controlling interpretation of Vermont law issued by Judge Motz in *In re Microsoft Corp. Antitrust Litig*., 261 F. Supp. 2d 366 (D. Md. 2003).  In that opinion, Judge Motz found that, absent misrepresentations, Vermonters do not have the right to seek a return of consideration under the VCFA.   This position is directly contrary to the terms of the statute, which provides a selection of remedies anytime a violation of the act is demonstrated; is unsupported by *any* Vermont Supreme Court opinion; and is contrary to both the Vermont Supreme Court's acknowledgment of the express legislative goals underlying the VCFA and its interpretation of the applicable provisions of the VCFA.  Thus, the Vermont Supreme Court held in *Peabody v. P.J.'s Auto Village, Inc.,*569 A.2d 460 (Vt. 1989) ("*Peabody*") that a mere distortion of choice is "injury" invoking the protections of the statute; held in *Elkins v. Microsoft Corp.*, 817 A.2d 9 (Vt. 2002)

("*Elkins*") that even unfair conduct *without* misrepresentations may be brought under § 2461(b) of the statute; and held in *Winey v. William E. Darley, Inc.,* 636 A.2d 744 (Vt. 1993) that the statute makes clear that the legislature was concerned with situations where no actual damage was inflicted on consumers and that the mere loss of a purchase opportunity of unknown value is proscribed by the VCFA.

Accepting the Ohio Plaintiffs' and Defendants' view would substantially undermine the remedies of Vermonters in this case by excluding those with a fixed co-pay from the class and limiting the collection of those who remain in the class to pennies on the dollar, rather than being in a position to collect all monies paid to Defendant not just for the product Premarin, but also for two other products built on Premarin. While Vermont counsel believed the Ohio Plaintiffs, upon reading Ms. Deyo's Motion papers would recognize their mistaken reading of Vermont law and seek leave to bring the claims they have failed to assert, sadly, Ohio counsel, instead, urge this Court to resolve claims available to Vermonters against their clients. One can only conclude that Ohio Plaintiffs' counsel seek merely to facilitate their overall control of this litigation (and Plaintiffs' attorney's fees) rather than to vigorously protect the interest of Vermonters. On its face, this conflict precludes Ohio counsel from representing Vermonters in this litigation.

Granting this Motion will avoid multiple litigations as those with fixed co-pays, eliminated from the class because the Ohio Plaintiffs sought "damages," or overpayment, rather than the return of consideration paid, are forced to proceed in the Vermont Action and all Vermonters are forced to pursue their claims for the return of consideration based on a distortion of choice or "injury" theory in the Vermont Action, since the Ohio Plaintiffs refuse to bring such claims in this action. Granting intervention and affording Vermonters separate representation will facilitate the creation of a separate Vermont subclass, which will be able to efficiently assert claims for all relief to which they are entitled under Vermont law. Alternatively, this Court may

stay this litigation as it pertains to Vermonters and allow the presentation of all claims belonging to them to be pursued in Vermont state court.[1]  Either way, the relief requested benefits the courts and affords Vermonters full vindication of their rightful claims.

Clearly, unless this relief is granted, the intervenor's interests under Vermont law may be negatively impacted, which is all that is necessary to support intervention.  Defendants, should they prevail in this case, will undoubtedly argue *res judicata or collateral estoppel* as to the Vermont Action.  Should this case settle, those with stronger claims will be denied a separate seat at the settlement table, even though the Defendants almost assuredly will demand a release which covers all claims which could have been brought in this case, including those being litigated in Vermont.  Unfortunately, at that point, the Vermont plaintiffs would be relegated to the status of objectors and, as the cases cited by the Ohio Plaintiffs regarding the standards for successful objections to class settlements demonstrate, Vermonters would be forced to meet the heavy burden of causing this Court to reject such a settlement, since opting out on behalf of a class is not an option.

## ARGUMENT

I.    **The Vermont Plaintiff Is Entitled To Intervene As Of Right**

    A.    **The Representation Of Vermont Consumers By Ohio Plaintiffs' Counsel Is Inadequate**

While a proposed intervenor need only show that representation of his interests 'may be' inadequate, s*ee Stupak-Thrall v. Glickman*, 226 F.3d 467, 482 (6th Cir. 2000), the Ohio Plaintiffs' Opposition confirms that the representation of Vermont consumers is *in fact* inadequate.  In satisfying the proposed intervenor's burden, "it is enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments."

---

[1]    Should this Court grant either form of relief requested in Plaintiff Deyo's Motion, discovery will be coordinated.

*Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).  The Ohio Plaintiffs' Opposition makes

clear that the Ohio Plaintiffs not only have not, and will not, make all of the Vermont Plaintiffs'

arguments, but that they actively work to denigrate those claims.

> 1.    **The Ohio Plaintiffs Misread The VCFA And Vermont Supreme Court Precedent Interpreting The VCFA**

The Ohio Plaintiffs take the remarkable position that Vermont plaintiffs, whether

proceeding pursuant to either §§ 2461 or 2465, cannot recover precisely what the statute

provides they are entitled to – consideration paid.  Thus, the Ohio Plaintiffs argue:

> the VCFA does not permit a plaintiff to recover full consideration upon showing that
> there was a mere distortion of consumer choice.  *Both Section 2461 and 2465 provide
> that a plaintiff may recover the consideration it paid, but that does not mean that such
> relief is available in any action in which a violation is established.*  If a plaintiff
> established a tying claim and proved that it would not have purchased the tied product at
> all but for the defendant's unlawful conduct, then reimbursement of full consideration
> could be warranted.  *If, however, a plaintiff establishes that a product was priced at a
> supracompetitive level or that there was merely a distortion of consumer choice, there is
> no authority for the novel proposition that the plaintiff is entitled to recover the full price
> of the product.*

Opp. at 6 (emphasis added).   The Ohio Plaintiffs are wrong.

First, the bold assertion that a plaintiff may not recover consideration paid for any

violation of the VCFA disregards the plain text of the statute.  § 2461 states:

> (b) **<u>Any</u>** consumer who contracts for goods or services in reliance upon false or
> fraudulent representations or practices prohibited by section 2453 of this title, *or* <u>who
> sustains *damages* **or** *injury* as a result of any false or fraudulent representations or
> practices prohibited by section 2453 of this title, or prohibited by any rule or regulation
> made pursuant to section 2453 of this title</u>, may sue for appropriate equitable relief *and*
> may sue and recover from the seller, solicitor or other violator <u>the amount of his
> damages</u>, *or* <u>the consideration *or* the value of the consideration given by the consumer</u>,
> reasonable attorney's fees, and exemplary damages not exceeding three times the value of
> the consideration given by the consumer.

9 V.S.A. § 2461(b).  Thus, the statute provides that (1) <u>consumers who contract for goods or

services in reliance on false or fraudulent representations **or** any other unfair or deceptive acts;</u>[2]

---

2    Section 2453 (a) states: "[u]nfair methods of competition in commerce, and unfair or deceptive acts or
practices in commerce, are hereby declared unlawful."

(2) <u>those who are damaged</u>; **or** (3) <u>those who are injured</u>, may sue to recover: (1) the amount of damages; **or** (2) the consideration; **or** (3) the value of the consideration, given by the consumer. Nothing in the statute precludes a consumer bringing a claim under the first clause of 2461(b) or alleging "injury" as opposed to "damage" from suing for their consideration paid.

While the Ohio Plaintiffs argue that an "injury" or unfair practice which results in a distortion of choice cannot be enough to invoke the protections of the VCFA and that actual damage must be shown, the Vermont Supreme Court has repeatedly made clear that actual damage need not be shown to demonstrate violations of the VCFA. Thus, the Court, in *Peabody*, overruled the lower court because it ". . .considered actual damage as an element of fraud." *Peabody*, 569 A.2d at 463. Instead, *Peabody* held that that "[a]ll a plaintiff must show, [however], is that the deceptive omission is likely to influence a consumer's conduct by distorting the buyer's ultimate exercise of choice." *Id*; *see also Bridge v. Corning Life Sciences, Inc.*, 997 F. Supp. 551, 552 (D.Vt. 1998) (§ 2461(b) provides a "private right of action to consumers who contract for goods or services in reliance upon false or fraudulent representations *or practices* prohibited by Section 2453, *or who sustain damages or injury* as a result of same.") (emphasis added); *Kessler v. Loftus*, 994 F. Supp. 240, 242 (D.Vt. 1997) (same)[3].

Section 2457 of the VCFA expressly states that "[n]o actual damage to any person need be alleged or proven for an action to lie **under this chapter**." 9 V.S.A. § 2457. The Vermont Supreme Court has noted the importance of this section of the VCFA:

> Further, *the last sentence of §2457 indicates the Legislature was concerned with circumstances in which there are no actual damages to a consumer.* That language is important because, when the statute was enacted, the Consumer Fraud Act allowed only public enforcement by the Attorney General and not a private cause of action by the consumer. *See* 1967, No. 132, § 1 (adding 9 V.S.A. §§ 2457, 2461). The language of the

---

[3]      The Ohio Plaintiffs' assertion that "Ms. Deyo does not even attempt to establish how 'mere distortion of choice' in the abstract caused her to suffer a cognizable injury," Opp. at 7, is irrelevant and inaccurate. The denial of choice through unfair *or* deceptive conduct is itself an "injury" outlawed by the VCFA.

statute addresses the classic bait-and-switch technique by which a seller induces consumer interest with an attractive offer and switches to other merchandise or terms, considerably less advantageous to the consumer. . . . *In such instances, the damage to the consumer, if any, consists of the loss of a purchase opportunity of uncertain value. In enacting the presumption, the Legislature intended the statute to cover such conduct despite the absence of direct consumer injury.*

*Winey v. William E. Darley, Inc.*, 636 A.2d 744, 749 (Vt. 1993) (emphasis added).

Other courts have also read the VCFA to permit actions without a showing of actual damage. Thus, the Maryland State Court of Appeals stated:

We have reviewed these cases and observe that the consumer protection statutes constructed therein fall into three general categories: (1) statutes that require proof of actual damages and in the absence of such proof award nominal statutory damages; (2) statutes that explicitly require than an aggrieved consumer be granted a complete refund: and (3) statutes that explicitly require actual damages be proven.[4]

---

[4]      An exception is Vermont's consumer protection act, Vt. Stat. Ann. tit. 9, §§ 2453, 2461 (1984), which permits an aggrieved consumer to recover damages, *or the consideration or the value of the consideration given by the consumer*, reasonable attorney's fees, and exemplary damages, *but does not require proof of actual injury or damage. See Peabody v. P.J.'s Auto Village, Inc.,* 153 Vt. 55, 58-59, 569 A.2d 460, 463 (1989).

*Citaramanis v. Hallowell*, 613 A.2d 964, 970 (Md. 1992) (emphasis added).

Once *any* violation of the statute is demonstrated, the VCFA makes clear that plaintiffs have their choice of remedies specified therein. The Ohio Plaintiffs' suggestion that this Court ignore these statutory directives and, as Judge Motz did in *Microsoft,* artificially limit the types of plaintiffs who may seek a return of consideration runs afoul of the Vermont Supreme Court's repeated admonitions that "[a]s with any attempt at statutory construction, we begin with the plain meaning of the statutory language, because we presume it reflects the Legislature's intent." *Elkins*, 817 A.2d at 12; *see also Bisson v. Ward*, 628 A.2d 1256, 1260 (Vt. 1993) ("Our primary objective in construing a statute is to effectuate the intent of the Legislature. . . . Generally, we presume the Legislature intended the plain meaning of the statutory language.") As § 2461(b) expressly permits *any* type of plaintiff demonstrating a violation of the statute to seek, *inter alia*,

a return of consideration, the Ohio Plaintiffs' effort to deny their clients full relief must be rejected.

The Ohio Plaintiffs argue that *Greene v. Stevens Gas Serv.*, 858 A.2d 238 (Vt. 2004) and *Winton v. Johnson & Dix Fuel Corp.*, 515 A.2d 371 (Vt. 1986) demonstrate "that a plaintiff is *not* entitled to a full refund of consideration merely because consumer choice was distorted." Opp. at 9. Neither of these opinions, however, supports these assertions, since neither *Winton* nor *Green* involved claims of distortion of choice or a return of consideration. Instead, each addressed only the requirements for claims for *damages,* such as those brought by the Ohio Plaintiffs. The facts of *Greene* make clear the distinction between the two types of claims. In *Greene*, the plaintiff obtained a homeowner's policy from defendant insurer. During construction, a worker left propane heaters on, resulting, according to Plaintiff, in significant damage to the interior of the house. Understandably, Plaintiff chose not to seek a return of consideration paid for the insurance policy but, rather, sued for the damage done to his home. The Court explained the required showing for claims requesting damages:

> **In a damage action** under the Consumer Fraud Act, the consumer must demonstrate that he sustained "damages or injury as a result of any false or fraudulent representations or practices" of the "seller, solicitor or other violator." 9 V.S.A. § 2561(b); *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998). Although we read broadly the requirement that there be injury, *see Peabody v. P.J.'s Auto Village, Inc.*, 153 Vt. 55, 58, 569 A.2d 460, 462-63 (1989), there must be some cognizable injury caused by the alleged consumer fraud.

*Id.* (emphasis added).[4] *In the context of summary judgment*, the Court explained that the plaintiff had failed to prove the insurance contract was misleading in any way and that plaintiff had failed to provide proof of any damage to his home to the insurance company, thereby precluding any claim that the insurer had acted unfairly in denying payment. Here, Wyeth actively engaged in conduct designed to deny consumers their choice of estrogen products.

---

[4]     Thus, as recently as 2004, the Court continues to acknowledge affirmatively the holding in *Peabody*.

*Winton* is equally inapplicable.  In *Winton*, plaintiff sued for damages measured by the amount of an advertised tax credit, when it turned out not to be available.  As the Ohio Plaintiffs concede, "*the plaintiff [in Winton] sued for damages*."  Opp. at 10.  (emphasis added).  The Court awarded the plaintiff the exact relief he sued for – actual damages – and did not discuss in any fashion relief not sought – the consideration paid.

*Winton* and *Greene* establish only that, if a plaintiff sues for damages (as the Ohio Plaintiffs do), he must demonstrate actual loss arising from the transaction.  However, as the VCFA makes clear, plaintiffs may bring actions under the VCFA as damage actions, as in *Winton* and *Greene*, or for "injury" or distortion of choice, as in *Peabody*.  That the Vermont Supreme Court required the plaintiffs in *Winton* and *Greene* to prove the damages they claimed they had incurred in order to state a claim for damages cannot be read to overrule the express terms of § 2457 or the host of Vermont Supreme Court cases holding that Plaintiffs may sue under the VCFA, even in the absence of actual damage or loss.  *See supra*.  In fact, vividly confirming this is the fact that *Winton* was decided three years prior to *Peabody*.  The Ohio Plaintiffs' effort to extend the readings of *Winton* and *Greene* to injury claims brought for return of consideration so as to justify their failure to seek consideration paid under the VCFA, further demonstrates the antagonism Ohio Plaintiffs' counsel have for their Vermont clients.[5]

While Vermont counsel acknowledge that *Peabody*, *in dicta,* explained that the consumers' choice, in that case, was distorted because "[i]t is a material misrepresentation to call the vehicle a 1974 Saab because the rear wheels, trunk and parts of its undercarriage and passenger component came from a 1972 Saab," the Ohio Plaintiffs incorrectly conclude that *Peabody* held that plaintiffs must prove a misrepresentation in order to recover consideration.  In

---

[5]     The Ohio Plaintiffs implicitly acknowledge that intervention is appropriate, since the adequacy of representation is at question when the class representatives have left aside far stronger claims for monetary damages and sought to have weaker claims certified for dubious strategic purposes, such as pursuing more difficult claims, rather than viable, stronger claims on behalf of a subclass so as to facilitate counsel's control over the entire litigation.  Opp. at 4.

fact, in 2002, fourteen years after *Peabody*, the Vermont Supreme Court, in *Lalande Air & Water Corp. v. Pratt*, 795 A.2d 1233 (Vt. 2003), specifically noted that it had not then decided whether the VCFA provides a cause of action for "unfair" acts without an element of deception, as opposed to "deceptive" acts.  795 A.2d at 1235.  That question was answered, however, later the same year, by the Vermont Supreme Court in *Elkins*, which recognized a cause of action under § 2461 despite the absence of allegations of fraud or deception.  *Elkins*, 817 A.2d at 12, 20.

Subsequently, the U.S. District Court in Maine succinctly explained the import of *Lalande* and *Elkins*, in rejecting the argument now advanced by the Ohio Plaintiffs and Defendant:

> ### Vermont Consumer Protection Claim
> The Vermont Consumer Fraud Act ("VCFA") prohibits "unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, § 2453(a). It authorizes a private cause of action by "any consumer who contracts for goods or services in reliance upon ... or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title."  Vt. Stat. Ann. tit. 9, § 2461(b). The defendants argue that to state a consumer protection claim under the VCFA, the plaintiffs must allege fraudulent or deceptive commercial practices. Defs.' Mot. at 7; *id.* App. I.A, at 8. I have found that the Second Amended Complaint fails to make such allegations. It is true that Vermont cases dealing with allegations of consumer fraud have required the plaintiff to allege a misleading representation. *See, e.g., Greene v. Stevens Gas Serv.,* 858 A.2d 238, 243-44 (Vt.2004); *Winey v. William E. Dailey, Inc.,* 161 Vt. 129, 636 A.2d 744, 748 (1993). In *Lalande Air & Water Corp. v. Pratt,* however, the Supreme Court of Vermont announced that it had not yet decided the question "whether the [VCFA] provides a private cause of action for 'unfair' as opposed to deceptive acts, or requires 'reliance' for such a claim." 173 Vt. 602, 795 A.2d 1233, 1235 (2002). The question raised but left unanswered in *Lalande* arises from the ambiguous language of section 2461 of the VCFA, which provides a private remedy for "false or fraudulent representations or practices prohibited by section 2453." Vt. Stat. Ann. tit. 9, § 2461(b). If "false or fraudulent" modifies both "representations" and "practices," then a private plaintiff may only bring an action for false or fraudulent conduct. If, however, a plaintiff may bring an action for either "false or fraudulent representations" on the one hand, or "practices prohibited by section 2453" on the other hand, then a plaintiff can state a cause of action by alleging only "unfair ... acts or practices in commerce" without an accompanying allegation of deception.

> In *Elkins v. Microsoft Corp.,* a case decided later the same year as *Lalande,* the Supreme Court of Vermont recognized a private remedy under section 2461, despite the absence of any allegation of fraud or deception. *See* 174 Vt. 328, 817 A.2d 9, 12, 20 (2002). Although *Elkins* did not refer to *Lalande,* I see no way to read the decision other than as answering the question left open in *Lalande.* According to *Elkins,* "[t]he Legislature clearly intended the VCFA to have as broad a reach as possible in order to best protect

consumers against unfair trade practices." 817 A.2d at 13. *See also Carter v. Gugliuzzi,* 168 Vt. 48, 716 A.2d 17, 21 (1998) (stating that "we apply the [VCFA] liberally to accomplish its purposes" of protecting the public against unfair or deceptive acts or practices). Thus, *Vermont now permits private plaintiffs to seek relief under section 2461* for "*practices prohibited by section 2453" without requiring allegations of "false or fraudulent representations." I therefore conclude that the plaintiffs' claims against the automobile companies under the VCFA should survive the defendants' motion to dismiss.* . . .

Consequently, the motion to dismiss the plaintiffs' claims under the Vermont Consumer Fraud Act is DENIED.

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2004 WL 2809891,

*29 -30 (D. Me., Dec. 8, 2004) (emphasis added) (ftnt. omitted).  *Elkins* confirms that actions

which are merely unfair, even in the absence of misrepresentations, may violate § 2461(b)

which, in turn, affords plaintiffs their choice of remedies, including a return of consideration.

Nonetheless, even if this or the Vermont court were to find that allegations of

misrepresentation were required, Plaintiff Deyo is in a position to amend her Complaint to allege

misrepresentations which distorted the class' choice.  In fact, one need look no further than the

Ohio Plaintiffs' own Complaint, which contains an entire section entitled "*Defendants Engage In

An Anti-Competitive Campaign to Deceive Consumers*." Ohio Plaintiffs' Complaint.  ¶¶ 46-50,

52. (emphasis added) (hereinafter "O.C. ¶ __").  As the Ohio Plaintiffs summarized, Defendants

"*issu[ed] information about Cenestin designed to discourage consumers from purchasing it…*"

O.C. ¶4 (emphasis in original).  Given that the Ohio Plaintiffs had the ability to plead a § 2461(b)

cause of action under even their view of the law,[6] their failure to pursue that claim on behalf of

those they now represent and to bring it on behalf of those who would otherwise be entitled to

participate in this case (those with fixed co-pays), vividly confirms their inadequate

---

[6]       The Ohio Plaintiffs' assertion that Ms. Deyo fails to identify any case which holds that class counsel must bring claims on behalf of purchasers of every state wholly misses the point.  Opp. at 14.  While Ohio Plaintiffs' counsel were not required to bring claims on behalf of Vermont consumers, they did so.  Having done so, they are now under an obligation to adequately represent such people.

representation of the Vermont members of the class and the need for independent representation of Vermonters by Vermont counsel.

In the end, the only opinion which even comes close to supporting the Ohio Plaintiffs' argument that distortion of choice will not afford a Vermont Plaintiff an action for return of consideration is Judge Motz's *Microsoft* opinion.[7]  This opinion, however, steadfastly refused to apply the express terms of the VCFA, and the Vermont Supreme Court's interpretations of the Act.  Thus, even though Judge Motz found that Defendants' conduct constituted a violation of the VCFA, he ignored the statutory remedy language which provides that upon proving a violation of the VCFA, Plaintiff may recover either consideration paid *or* damages and the Vermont Supreme Court's repeated pronouncements to the same effect.  Instead, he held, in direct contravention to *Peabody*, that to construe "injury" to mean "distortion of choice" would constitute "the antithesis of sound statutory construction." *Microsoft Antitrust Litig.*, 261 F. Supp. 2d. at 367.  Actually, the true antithesis of sound statutory construction was Judge Motz's refusal to apply the VCFA as it was written by the Vermont legislature and interpreted by the Vermont Supreme Court.[8]

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), cited by the Ohio Plaintiffs in support of their assertion that a return of consideration is not permitted under the VCFA, offers no precedential value at all.  Whether or not the Vermont Attorney General brought a claim for return of consideration (which is unclear from the opinion) offers no support

---

[7]    Predictably, Defendant Wyeth argues the same legally and factually inaccurate position as the Ohio Plaintiffs, that the VCFA does not permit claims for return of consideration in an antitrust action, and relying solely on Judge Motz's opinion, argues misrepresentations must be alleged to recover consideration.

[8]    Judge Motz also inappropriately rewrote the VCFA by finding that a return of consideration may only be given in the presence of "misleading representations or the conducting of a practice constituting the functional equivalent of such representations." *Id.* at 367.  As set forth above, this finding is contradicted by the Vermont Supreme Court's opinion in *Elkins*, which found that indirect purchasers were permitted to sue for violations of Section 2461(b), even in the absence of any misrepresentation or deception.  *See also New Motor Vehicles,* 2004 WL 2809891 at *29-30.  (No misrepresentations are necessary.  It is enough if Defendants' conduct is unfair.)

one way or the other as to what is permitted under Vermont law. Given that numerous Attorneys General filed suit in that case, the Vermont Attorney General may well have been content to simply let others litigate the case, without incurring the burden of bringing the additional claim for restitution of the Vermont consumers. Supporting this conclusion is the fact that Vermont was *not* among those Attorneys General chosen to be class representatives. *Cardizem CD*, 218 F.R.D. at 516-17. Ohio counsel's sheer speculation as the reasons for the Vermont Attorney General's actions in a prior case offers nothing to the debate at hand.[9]

The Vermont Supreme Court has been clear that a distortion of choice constitutes the type of injury for which a plaintiff may recover under § 2461(b). *Peabody*, 569 A.2d at 463. § 2461(b) provides that an aggrieved consumer "may sue and recover … damages, or the consideration or the value of the consideration given by the consumer. . . . " As the combined reading of *Peabody* and *Elkins* makes clear, this is true whether the Plaintiff has been aggrieved by either a) an unfair act or practice or b) a deceptive act or practice, in violation of § 2453. Here, the Vermont Complaint alleges that Wyeth engaged in conduct designed to deny Vermont consumers the choice of ingesting estrogen drugs made of horse urine and coated with shellac so as to shield the flavor of the horse urine or, instead, to choose other equally effective synthetic estrogen products. We believe a jury will have no trouble concluding that this is a classic case of

_____

[9]        The Court's discussion of the Tennessee objector in *Cardizem CD*, if anything, supports Plaintiff Deyo's right to intervene in this case. Beyond the fact that the Ohio Plaintiffs make no effort to equate the Tennessee statute and state supreme court opinions with the Vermont counterparts, the Court denied the objection because the Tennessee class member was unable to overcome the showing an objector must make to unravel a preliminarily approved settlement and because, the Court concluded that at that stage of the proceeding, applying a "cost/benefit analysis," the increased administration costs involved in the appeal would decrease the collection of others. *Cardizem CD*, 218 F.R.D. at 529. This speaks to the appropriateness of permitting intervention and separate representation now so that Vermont consumers will have their own seat at the settlement table, when settlement talks occur.

distortion of choice which allows the Vermont Plaintiff and the putative Vermont sub-class their chosen measure of return provided for by the statute.[10]

### 2. Ohio Plaintiffs' Attacks On The Vermont Complaint And Vermont Counsel Are Baseless

Faced with an inability to justify not only their failure to originally bring the claims now being pursued by the Vermont Plaintiffs, but also their failure to amend their Complaint to bring them once the Vermont Plaintiffs' Motion was filed, the Ohio Plaintiffs launch a series of misguided attacks on the Vermont Complaint and Vermont counsel. None of these have any substance. For instance, the Ohio Plaintiffs' argument that the Vermont claims are "speculative" because there is no private right of action under § 2461(b) for business victims of deceptive or unfair acts or practices, ignores the fact that the Vermont legislature amended § 2461(b) in 1997 to include such a private right of action for business entities. *See, e.g., Ascension Technology Corp. v. McDonald Investments, Inc.*, 327 F. Supp. 2d 271, 275-76 (D.Vt. 2003). Thus, business entities, such as insurance companies, which paid for the drugs at issue in connection with operation of their businesses, can recover for violations of § 2461(b), since they were not purchased for resale in the ordinary course.[11]

Nor does the Vermont Complaint raise individual issues of reliance which will preclude class certification, as asserted by the Ohio Plaintiffs and Defendants. Initially, as the Vermont

---

[10]    The Ohio Plaintiffs misrepresent that "Ms. Deyo's complaint does not allege that she or anyone else relied in any fashion on any deceptive act or practice by Wyeth," citing paragraph 55 of the Vermont Complaint, which alleges that the members of the class have been damaged. *See* Opp. at 2. Beyond the fact that "deception" is not required under the VCFA, *see supra,* Paragraph 56 of the Vermont Complaint states, "Plaintiff and members of the Class have been injured in that Defendant's conduct as alleged herein distorted consumer choice by hindering the ability of Plaintiff and the members of the Class to purchase conjugated estrogen drug products other than Premarin and the other Premarin Family Products." Paragraph 57 states, "Plaintiff and members of the Class acted reasonably in response to the acts and practices of Defendant."

[11]    The Vermont Plaintiff acknowledges that pharmacies, which merely resold the drugs, are not entitled to protection under the VCFA. This, however, is of no moment since any recovery by such entities would be duplicative of the recovery flowing to the Vermonters identified in the Vermont Plaintiff's class. *See, e.g.,* 9 V.S.A. § 2465(b) (In antitrust actions, "[t]he court shall take all necessary steps to avoid duplicate liability . . . ").

Supreme Court recently emphasized, it is unresolved at this point whether reliance is even an element of an action brought for unfair (as opposed to deceptive) acts or practices. *Lalande,* 795 A.2d at 1235. The only noteworthy thing to be drawn from the Ohio Plaintiffs' string citation to irrelevant cases interpreting the reliance element under other laws is that, once again, the Ohio Plaintiffs urge this Court to interpret Vermont law to the direct prejudice of their Vermont clients. [12]

Certainly, as the instant situation demonstrates, a strong case can be made that reliance is not an element of a case premised on unfair acts or, alternatively, if it is, the mere act of purchasing satisfies this element. As alleged, Wyeth precluded competing (and more appealing) products from being available to Vermont consumers. When consumers were forced to purchase the Premarin Family Products, those purchases confirm their distortion of choice and constitute the last step in the successful implementation of Wyeth's scheme. Even if Vermont consumers had knowledge of competing products, those products were effectively unavailable to them, since Wyeth's conduct precluded them from being covered by insurance. Thus, the scheme itself demonstrates that reliance is not an element and, even if it were, the mere act of purchasing demonstrates that such consumers "contracted for goods or services in reliance upon" a practice prohibited by the VCFA. 9 V.S.A. § 2461(b).[13]

---

[12]    Ohio Plaintiffs' counsel tout their involvement in *In re Relafin Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004). Opp. at 4. That Ohio Plaintiffs' counsel may have compounded their failure to bring appropriate claims on behalf of Vermont consumers by failing to do so in prior litigations can hardly justify a continued failure to do so here.

[13]    This conclusion is buttressed by the VCFA and Vermont Supreme Court precedent, explaining the broad reach of the VCFA:

Those statutes have broad remedial purposes that extend beyond common law fraud or misrepresentation. *See* 9 V.S.A. § 2451 (Consumer Fraud Act was enacted "to protect the public, and to encourage fair and honest competition"). . . . Accordingly, misrepresentation *or nondisclosure of facts not directly pertaining to the essential terms of a contract but which reasonably could have affected a consumer's decision whether to purchase a product or service may be actionable under those statutes. See, e.g., Peabody v. P.J.'s Auto Village, Inc.,* 153 Vt. 55, 57-58, 569 A.2d 460, 462 (1989) (trial court erred in dismissing plaintiff's consumer fraud claim based on its conclusion that defendant's failure to inform plaintiff that

Moreover, even if the Vermont Plaintiffs were forced to allege deception, reliance would still not impede class certification. Reliance in a deception case under the VCFA is construed *objectively*. *See Jordan v. Nissan North America, Inc.,* 853 A.2d 40, 43 (Vt. 2004) (noting use of objective standard used in claims under the VCFA); *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998) (deception and materiality are measured objectively); *Goldman v. Town of Plainfield*, 762 A.2d 854, 857 (Vt. 2000) (accepting that a "false representation … was sufficiently deceptive to support Consumer Fraud Act violation because consumers could *have been expected to rely* on representation in determining whether to solicit business's services") (emphasis added).

The Ohio Plaintiffs also make much of the fact that the Vermont complaint contains allegations that Wyeth used its monopoly power to charge supracompetitive prices. *See* Opp. at 2, 10. The Ohio Plaintiffs appear to argue that because the Vermont Complaint contains allegations that would support a claim under § 2465, the Vermont Plaintiffs cannot pursue claims for relief under § 2461(b). *Id.* This is, of course, incorrect.[14] Undeniably, if the Vermont Plaintiff (or the Ohio Plaintiffs) prove the conduct at issue in the Ohio Complaint, liability would attach under either § 2461(b) or § 2465. *See In re New Motor Vehicles*, 2004 WL 2809891 at *29, 30, n. 71, n. 72, & n. 73 (citing *Elkins*, and recognizing that a plaintiff alleging violations of § 2465 may also state a claim under § 2461(b)). The Vermont Complaint also alleges that Defendants also violated § 2461(b) through conduct involving distortion of choice, a claim which does not necessitate proof of "relevant market," monopoly power, the exercise of such

---

used car he was buying had been "clipped" was not material because it **857 did not affect reliability, safety, or value of vehicle).

*Goldman v. Town of Plainfield,* 762 A.2d 854, 857 (Vt. 2002) (emphasis added). *See also State v. Oncor Comm. Inc.,* 166 F.R.D. 313, 317 (D. Vt. 1996) (defendants' failure to comply with FCC guidelines was unfair and therefore violated the VCFA).

[14]    In *Elkins,* the Vermont Supreme Court found that indirect purchasers may allege antitrust violations under either § 2465 or § 2461. Thus, the Ohio Plaintiffs' statement that to read § 2461(b) as grounds for seeking recovery for conduct that could also be found to have violated § 2465 would mean that "the Vermont legislature wasted its time in enacting Section 2465," Opp. at 15, n. 2, is without merit.

monopoly power or supra-competitive pricing. The fact that the Vermont Complaint contains allegations which, if proven, would also establish a violation of § 2465 of the VCFA does not constitute "a tacit admission" of any kind.

The Ohio Plaintiffs' assertion that Ms. Deyo has no right to speak on behalf of Prempro or Premphase purchasers, Opp. at 13, ignores the fact that purchasers of all three products did so pursuant to the same course of conduct, and denial of choice, perpetrated by Defendant. Plaintiff Deyo is similarly situated to such purchasers, just as the Ohio Plaintiffs are similarly situated to the Vermont purchasers, even though no current Plaintiff is a Vermonter. Clearly, Plaintiff Deyo has standing, since she purchased Premarin, to intervene for purposes of requesting the Court to revisit issues of class certification, which Fed. R. Civ.P. 23 states may be done at any time.[15] Indeed Fed. R. Civ. P. 23(d) contemplates intervention for the "fair conduct of the action," and expressly provides for intervention when even non-class members consider representation to be inadequate or to assert claims or defenses.

Next, the Ohio Plaintiffs urge this Court to deny intervention because "Ms. Deyo and her counsel have done nothing more than file a copycat complaint. . . " Opp. at 18. *See also* Opp. at 2 ("The factual allegations in Ms. Deyo's complaint are virtually identical to the facts alleged in this action. . . Indeed, numerous paragraphs are copied verbatim."). The Deyo Complaint, however, contains many of the same factual allegations as the Ohio Complaint for good reason. The factual background of the approval and marketing of Premarin and Wyeth's efforts to preclude competition with that product will be the same, no matter which attorney assembles the

---

[15]     The Ohio Plaintiff's assertion that Prempro and Premphase "serve a different market" than Premarin, Opp. at 13, is only relevant to the Ohio Plaintiffs' monopoly claims, not to the Vermont distortion of choice or deception claims.

Complaint. The Deyo and the Ohio Complaints differ not on the facts, but, instead, on the *legal* claims asserted and the relief requested.[16]

Similarly, Vermont Counsel's failure to bring Judge Motz's opinion to this Court's attention does not demonstrate a lack of candor. Counsel are only required to bring *controlling* negative precedent to the Court's attention. *See* Ohio Code of P. Resp., Ethical Cons. 7-23 ("Where a lawyer knows of legal authority *in the controlling jurisdiction directly adverse to the position of his client*, he should inform the tribunal of its existence unless his adversary has done so") (emphasis added); *Ohio Council of the Blind v. Voinovich*, No. C2-93-528, 1994 WL 504405, *10 (S.D. Oh. Mar. 28, 1994) (same). An interpretation of Vermont law by a U.S. District Court judge sitting in Maryland is not a controlling precedent.[17] Ironically, it is Ohio Plaintiffs' counsel who fail to discuss various controlling Vermont Supreme Court cases, including *Elkins*, which directly undermine their positions by holding that unfair conduct, even absent misrepresentations, may violate § 2461(b) and entitle Plaintiffs to the relief identified therein. Moreover, Ohio Plaintiffs' counsel openly turn their backs on their Vermont clients' interests by urging this Court to accept a negative, *non-controlling,* interpretation of Vermont law solely to advance Ohio counsel's interest in controlling this case.

**B.    The Vermont Plaintiff's Ability To Protect Her Interests Will Be Impaired In The Absence Of Intervention**

To satisfy Rule 24(a), an intervenor need only show that an impairment of a substantial legal interest is possible if intervention is denied. *See* Deyo Memo., at 12. Clearly, Ms. Deyo has

---

[16]    If borrowing allegations from another complaint is ground to fault counsel, Ohio Plaintiffs' Counsel are equally culpable since huge portions of their complaint were copied virtually verbatim from the complaint filed by Duramed against Wyeth, attached hereto as Exhibit 1 and filed over one and one-half years prior to the Ohio counsel's complaint. *Compare* O.C. ¶¶ 38-42 with Duramed Complaint ¶¶ 11-14 ("D.C. _"); O.C. ¶¶44-45 with D.C. ¶¶17-18; O.C. ¶ 48 with D.C. ¶¶ 33-34; O.C. ¶ 49 with D.C. 38; O.C. ¶¶56-56 with D.C. ¶¶ 50-64.

[17]    *See, e.g., Elkins*, 817 A.2d at 18 (Vermont Supreme Court declining to follow the decision of the District Court for the District of Delaware interpreting the VCFA, and declining to find as persuasive an opinion of the District Court for the District of Vermont interpreting the VCFA).

met this standard.[18]  The ability of a class member to opt out of a class action does not ameliorate

her ability to intervene as of right under Rule 24.[19]  Such a rule would preclude any absent class

member from intervening in a class action to protect interests which are inadequately represented

and would be contrary to the Advisory Committee Notes on Rule 24(a)(2), which state:

> A class member who claims that his "representative" does not adequately represent him,
> and is able to establish that proposition with sufficient probability, should not be put to
> the task of having a judgment entered in the action which by its terms extends to him, and
> be obliged to test the validity of the judgment as applied to his interest by a later
> collateral attack.  Rather he should, as a general rule, be entitled to intervene in the
> action.

39 F.R.D. 69, 110.[20]

## C.    The Vermont Plaintiff's Motion Is Timely

The Vermont Plaintiff satisfies each factor the Sixth Circuit considers when determining

the timeliness of a motion to intervene.  First, although the Action has been pending for three and

a half years, apparently little, if any, discovery has been taken.  While the Court has decided a

partial motion to dismiss by Wyeth, class certification issues were pending before the Court

when the Motion to Intervene was filed.  Second, the relief sought by the Vermont Plaintiff,

which will allow Vermonters the full opportunity to litigate all claims belonging to them and

which will reduce the burden on the Court system is an appropriate purpose of intervention and

---

[18]    Defendant Wyeth's position that intervention should be denied because the new theories of liability will be
"collateral or extrinsic" ignores the fact that the additional claims all grow out of the same factual conduct by
Defendants.  Wyeth's position is, of course, at odds with the caselaw cited by the Ohio Plaintiffs finding that
intervention may be granted when class counsel failed to bring stronger claims, inexplicably opting for weaker ones.

[19]    Urging the Court to relegate the Vermont intervenor to this status again confirms Ohio Plaintiffs' counsel's
willingness to advocate positions directly at odds with these they now represent.

[20]    The Ohio Plaintiffs' citation to *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998), actually
<u>supports</u> the notion that Ms. Deyo, who purchased Premarin, also may represent purchasers of Prempro and
Premphase, in addition to purchasers of Premarin.  *See Fallick*, 162 F.3d at 424 ("once a potential ERISA class
representative has standing to sue his own ERISA-governed plan, *there is no additional constitutional standing
requirement related to his suitability to represent the putative class of members of other plans to which he does not
belong*").

supports the timeliness of the instant motion.[21]  Third, the Vermont Plaintiff brought the issue to

this Court's attention promptly upon becoming aware of Ohio Counsel's inadequate

representation of her interests.  The Seventh Circuit has observed that "unnamed members of the

class rarely will suspect a shortfall in the adequacy of representation before learning of …

problems with the class definition." *Crawford v. Equifax Payment Services, Inc*., 201 F.3d 877,

880-81 (7th Cir. 2000).  The Motion to Intervene was filed promptly after Vermont counsel (not

Vermont consumers, whose knowledge measures timeliness) became aware of problems with the

class definition and the representation of the interests of Vermont consumers.  *See* Deyo Memo.

at 16.[22]  The Ohio Plaintiffs fail to identify any fact demonstrating that Vermont consumers

"should have known" sooner of the potential for inadequate representation of their interests in

this litigation.[23] Fourth, there will be no cognizable prejudice to any party to the Ohio Action if

intervention is granted.  The sole claim of detriment is the Ohio Plaintiffs' assertion of delay

while the Complaint is amended to properly allege claims under VCFA and while issues of class

certification are revisited.  Amending the Complaint, however, need not impede the progress of

discovery, as both events can proceed simultaneously.  Additionally, legally cognizable

detriment cannot logically be asserted regarding the revisitation of the class issue (now before

---

[21]    The majority of Defendants' opposition is premised on the misguided assumption that, once the Vermont Plaintiffs litigate their claims in Vermont Court, they will return to this Court to litigate the claims pending here ignores the very relief requested by the Vermont Plaintiffs.  This action is asked to be stayed so that the Vermont Class may seek full relief under the VCFA in Vermont Court.  Alternatively, the entirety of the claims may be pursued in this Court, albeit with separate representatives of the Vermont Class.

[22]    Although the claims of Vermont purchasers of Premarin who paid by co-payment were denied in this action, no notice was given in Vermont notifying potential plaintiffs of such fact.  *See* Vt. R. Civ. P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.")  In the absence of such notice, the Ohio Plaintiffs are hard pressed to explain why consumers in Vermont should have been aware of this litigation, let alone Ohio counsel's inadequate or low representation of their interests.

[23]    Potential plaintiffs cannot be charged with constructive knowledge of every class in which they may have an interest upon the filing of each such class action complaint. S*ee United Airlines, Inc. v. McDonald,* 432 U.S. 385, 394 (1977) ("intervention by a member of the class is timely when the intervenor acts as soon as it [becomes] clear ... that the interests of the unnamed class members would no longer be represented by the named class representatives") (emphasis added).

the Court) since Rule 23 expressly provides that the Court may do so at any time. Respectfully, the proper representation of the class should trump whatever minor delay may inure from permitting the requested relief. Finally, the only unusual circumstances present involve the Ohio Plaintiffs' espousal of a *defendant's* reading of the VCFA and Vermont Supreme Court precedent. This circumstance militates in favor of allowing the Vermont Plaintiff's motion to intervene. [24]

### **CONCLUSION**

The Vermont Plaintiff has demonstrated, and the Ohio Plaintiffs have confirmed in their Opposition, that the Ohio Plaintiffs have failed to fulfill their duty as representatives of the Vermont Class. Principles of fair play, justice, and efficiency support the Vermont Plaintiff's Motion to Intervene. The Vermont Plaintiff respectfully requests that the Court enter one of the two orders granting her Motion to Intervene, whether by right, pursuant to Rule 24(a)(2), or permissively, pursuant to Rule 24(b)(2).

**Dated:** February 4, 2005.

s/Richard S. Wayne
Richard S. Wayne Attorney Bar Number 0022390
s/William K. Flynn
William K. Flynn Attorney Bar Number 0029536
STRAUSS & TROY
150 East Fourth Street
Cincinnati, OH 45202-4018
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
email: *rswayne@strausstroy.com*
email: *wkflynn@strausstroy.com*
*Trial Attorneys for Plaintiff Marilyn Deyo*

---

[24]    Defendant announces that it does not oppose Ms. Deyo's intervention and appointment as the Vermont class representative, but does so on the premise that Ms. Deyo dismiss the Vermont Action. This would clearly be appropriate only if all claims pending in the Vermont Action are permitted to be brought in this case. If so, Plaintiff Deyo will dismiss her claims pending in Vermont. If the Court denies intervention or refuses separate representation to the Vermont class, and thereby precludes them from bringing the claims being litigated in Vermont, there would be no basis for requiring a dismissal of the Vermont class. Thus, the cases cited by Wyeth involve *parallel* actions pending in either federal courts or in state and federal courts. As the Ohio Plaintiffs' Opposition makes clear, the Vermont Action is *not* the same claim as that now pending in this action. The Ohio Plaintiffs refuse to bring the claim being pursued in Vermont.

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
James F. Conway, III
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile:  (802) 862-0060
*Counsel To Plaintiff and the Putative Class in Deyo v. Wyeth, Docket No. 735-12-04 Wncv in Washington Superior Court, Washington County, Vermont*

479191..

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court; has been sent electronically this 3rd day of February, 2005. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parities may access this filing through the Court's system. If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, this 3rd day of February, 2005.

s/Richard S. Wayne
Richard S. Wayne Attorney Bar Number 0022390