1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


- - -


MARJORIE FERRELL, et al.,      .   CIVIL ACTION NO. C-1-01-447
                               .
          Plaintiffs,          .   Cincinnati, Ohio
                               .
        - v -                  .   Friday, August 4, 2006
                               .   1:30 p.m.   Conference
WYETH-AYERST LABORATORIES, .
INC., et al.,                  .
                               .   **Telephone Conference**
          Defendants.          .
. . . . . . . . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SANDRA S. BECKWITH, CHIEF JUDGE
TRANSCRIPT ORDERED BY:  Counsel for the Parties

APPEARANCES:

For the Plaintiffs:    WEXLER TORISEVA WALLACE LLP
                       BY:  Kenneth A. Wexler, Esq.
                       and  Jennifer F. Connolly, Esq.
                       One North LaSalle, Suite 2000
                       Chicago, Illinois   60602

                       LOPEZ, HODES, RESTAINO, MILMAN,
                       SKIKOS & POLOS
                       BY:  Janet G. Abaray, Esq.
                       312 Walnut Street, Suite 2090
                       Cincinnati, Ohio   45202

For the Defendants:    ARNOLD & PORTER
                       BY:  Douglas L. Wald, Esq.
                       and  Son B. Nguyen, Esq.
                       and  David Eggert, Esq.
                       555 Twelfth Street, NW
                       Washington, DC   20004-1202

                       WINSTON & STRAWN
                       BY:  W. Gordon Dobie, Esq.
                       35 W. Wacker Drive
                       Chicago, Illinois   60601

2

```
                         FROST BROWN TODD LLC
                         BY:  Grant S. Cowan, Esq.
                         2200 PNC Center
                         201 E. Fifth Street
                         Cincinnati, Ohio    45202


Law Clerk:               Patrick F. Smith, Esq.

Summer Extern:           Jessica Curry

Court Reporter:          Mary Ann Ranz


                    - - -
```

1                    FRIDAY, AUGUST 4, 2006

2              IN CHAMBERS TELEPHONE CONFERENCE

3        THE COURT:  Hello?

4        MS. ABARAY:  Is that Grant?

5        THE COURT:  This is Judge Beckwith.

6        MS. ABARAY:  Oh, Judge Beckwith.  We were waiting for

7   Grant Cowan to call in.  I'm sorry.  It's Janet Abaray.  How

8   are you doing?

9        THE COURT:  I'm well.  How are you?

10       MS. ABARAY:  Good.  Thank you.

11       THE COURT:  Well, I guess we'll just sit here quietly

12   and wait for Mr. Cowan to come on.

13       MS. ABARAY:  That must be him.

14       MR. COWAN:  Grant Cowan.

15       THE COURT:  Hi.  Judge Beckwith here.

16       MR. COWAN:  Hey, Judge.  How are you?

17       THE COURT:  Fine.  How are you?

18       MR. COWAN:  Fine, thank you.

19       THE COURT:  Let's just have a little, short roll call

20   to see who is on the line and if there's anybody missing.

21       MS. ABARAY:  Okay.  Your Honor, this is Janet Abaray

22   again for the plaintiffs.

23       MS. CONNOLLY:  And this is Ken Wexler and Jennifer

24   Connolly for the plaintiffs.

25       MR. WALD:  For defendant, this is Doug Wald, and I

4

1    have with me David Eggert and Son Nguyen, all from Arnold &

2    Porter in Washington.

3         MR. COWAN:  Grant Cowan from Frost Brown Todd,

4    although I'm on a cell phone because I'm traveling on the road

5    right now.

6         THE COURT:  Okay.  Let me tell you who is here:

7    Patrick Smith, my career law clerk who's assigned to this

8    case; and Jessica Curry, who is a summer extern in my chambers

9    who is going into her second year at U.C. Law School; and Mary

10   Ann Ranz, R-A-N-Z, is the court reporter.  If you need a copy

11   of today's proceedings, you can reach her at 513-564-7626.

12        We have so many people on the phone and some background

13   noise as well, let me just ask that when you speak, you

14   identify yourselves so we have a clear record.

15        Right now we have a motion to voluntarily dismiss filed by

16   the plaintiffs.  And plaintiffs are willing to concede that

17   the dismissal should be with prejudice with regard to the

18   named plaintiffs and also in connection with that is to

19   decertify the class.  The defendants are opposing the motion.

20   They want to file a motion for summary judgment.

21        There is an alternative proposed by the defendant that

22   absent class members would be required to proceed individually

23   with suits against Wyeth-Ayerst if they felt they had a claim,

24   rather than as class actions.

25        So, I was hoping that we might talk about some sort of

5

1  equitable basis on which this case could be dismissed;

2  otherwise, I think we need to wait until pleadings on the

3  motion for summary judgment are completed and we'll go ahead

4  and rule.

5        MS. ABARAY:  Can I say first, Your Honor, I am having

6  trouble hearing.

7     I think, Mr. Cowan, it might be your cell phone.  Are you

8  in a place where you could get a better connection?

9        MR. COWAN:  Probably not.  Why don't I try this:  Why

10 don't I try to mute it.  And if it doesn't work, what I would

11 suggest, if Your Honor -- if Your Honor is okay with it, is

12 that I just drop off the call.  Frankly, my colleagues at

13 Arnold & Porter will be doing all the speaking anyway.  And as

14 much as I would like to participate, if I'm going to be -- you

15 know, if the cell phone is going to make it hard for everybody

16 to hear, it may make most sense for me to drop off.

17       THE COURT:  Okay.

18       MR. COWAN:  All right.  Let me see if I can mute it,

19 and somebody say something as to whether or not it's helped.

20 Hold on a second.

21    (Pause.)

22       THE COURT:  Wow.

23       MS. ABARAY:  Yeah, that made a big difference.

24       THE COURT:  Major improvement.

25       MS. ABARAY:  Very helpful.

6

1          MR. DOBIE:  Hello.  This is Gordon Dobie joining for

2    Wyeth.

3          THE COURT:  Okay.  Very good.  Well, we've had a

4    little preliminary sketch of, by myself, of why we're

5    conducting this conference today, and I'm hopeful we could

6    somehow reach some equitable terms upon which this case should

7    be dismissed.  If not, we're gonna have to move on to the

8    motion for summary judgment.  But, let me just say that I'm

9    not particularly moved by the argument that we need to protect

10   the rights of absent class members.

11       And I would draw your attention to *Brooks versus State*

12   *Board of Elections*, 173 F.R.D. 547, a Southern District of

13   Georgia case, 1997, where the court said:

14       "The class representatives' fiduciary duty does not extend

15   to immunizing absent members from the burdens of unsuccessful

16   litigation."

17       And then also *Grover versus Eli Lilly & Company*, 33

18   Fed. 3d, 716 at 719, a Sixth Circuit case, 1994, the court

19   said:

20       "At the point when the law clearly dictates a result for

21   the defendant, it is unfair to subject him to continued

22   exposure to potential liability by dismissing the case without

23   prejudice."

24       I'm assuming, and I haven't seen a number, that the

25   defendant has a substantial investment in the defense of this

1  case to this point.

2      Is anyone from the defense side capable of giving me a

3  ball-park number?

4          MR. WALD:  This is Doug Wald from Arnold & Porter,

5  Your Honor.  No, unfortunately, I am not in a position to do

6  that.

7      We have, as Your Honor knows, we have been litigating this

8  case for over five years now and there's been a lot of work

9  put into it, but I don't have a dollar figure, I'm sorry.

10          MS. ABARAY:  Your Honor, this is Janet Abaray for the

11  plaintiffs, and a couple things that I would like to point

12  out.

13      First is that the plaintiffs have offered to dismiss with

14  prejudice, rather than without prejudice, so these class

15  representatives are not going to be trying to come back with a

16  claim against the defendant.

17      And then the second point is, we really have an unusual

18  situation here with the two companion cases.  And in terms of

19  the chronology of events, what happened was after our class

20  was certified but before the notice went out, an opinion was

21  issued in a companion case that seemed to indicate that

22  summary judgment, because it was granted in that case, would

23  probably follow in this case.

24      The concern that that raised was, we had not yet done

25  notice to the class.  So, there were no class members who were

8

1    put on notice that were relying on this case and who knew that

2    they were bound by the case or had made an election to be

3    bound by the case since it is an opt-out class.  So, that

4    raised the issue that we would then be spending half-a-million

5    dollars to send notice to a class, when we as Class Counsel

6    felt we would have to tell the people in the notice that we

7    urged them to opt out, because at this point it did look as

8    though the litigation would be unsuccessful.  So, it's kind of

9    a strange, almost an *Alice in Wonderland* scenario just by the

10   strange fact we have this companion case filed.  So, we were

11   trying to act in the interest of judicial economy and to --

12   you know, if it's over, it's over.

13       We did try to file a motion to stay because there was an

14   appeal to the Sixth Circuit of the companion case, which was

15   denied, and then we just had to look at does it make sense to

16   spend a half-a-million dollars giving notice to a class so

17   that they can come in and be bound by what would probably be a

18   denial of the case on the merits.

19       So, I do think some of the cases that were discussed in

20   general, although I haven't had a chance to look at them, may

21   be different if they're not dealing with a case where the

22   class was already certified and already noticed.

23       So, what we're trying to do is save judicial economy, you

24   know, not overburden the Court.  There was no summary judgment

25   pending in this litigation until what, Monday of this week,

1  Tuesday of this week?  So it's not as though we ran out and

2  filed this because summary judgment had been filed here.  We

3  were just looking at, you know, as you said, the equities,

4  what's the best use of judicial resources, and what

5  realistically is the defendant concerned with here.

6      There were other subclasses denied.  Nobody came flying up

7  from those states and started filing individual actions.  You

8  know, if the litigation's over, it's over.  We accept that.

9      We've asked to dismiss with prejudice in order to get it

10  off the Court's docket.  But we just don't think it -- it

11  wouldn't be appropriate for us as Class Counsel to urge people

12  to come in and to spend the resources of the court on notice

13  and to spend our resources on paying for the notice.  It just

14  doesn't make sense under this very unusual fact pattern.

15      THE COURT:  Well, if I said without prejudice, I

16  misspoke.  I understand that you're willing to dismiss as to

17  the named plaintiffs with prejudice.

18      And I suppose one of the questions I would ask of the

19  defendant is, how can this Court enter an order directed to

20  persons who are absent that they cannot file future lawsuits

21  if they feel they have a basis against the defendant in a

22  class-action format?

23      MR. WALD:  Sure, Your Honor, I'd be happy to address

24  that.  But let me start by making clear what -- again, this is

25  Doug Wald -- what Wyeth's position is.  You know, we have been

1   litigating this case for five years and we finally reached the

2   end of the road.  Discovery is over.  Both fact and expert

3   deadlines have passed.  We have filed our summary judgment

4   motion, and we filed it this week, but we, indeed, filed it

5   early.  We were not even required to file it until the end of

6   this month, but plaintiffs have known all along we would be

7   filing this motion promptly after the close of discovery, so

8   it's no surprise to the plaintiffs.

9       We feel that having litigated this case for five years, we

10  are entitled to a ruling on the merits.  And the only reason

11  the plaintiffs are seeking a Rule 41(a) dismissal is that as

12  they've admitted, that they reached the conclusion that they

13  are going to lose this case, that all of the reasons which led

14  Your Honor to grant summary judgment in the direct purchaser

15  cases, the *JBDL* and *CVS* cases, they all apply with equal or

16  greater force here.  It's the same claims, it's the same

17  factual record, all the same legal defects, and more are

18  present in this case, and, so, all they're looking for is an

19  escape valve.  They're looking for a way to avoid the judgment

20  day, a way to avoid a decision on the merits.  But that is not

21  a grounds for voluntary dismissal.

22      And it is not fair, I submit, Your Honor, to Wyeth, to

23  allow all of the absent class members who, as Your Honor

24  correctly noted, are not dismissing with prejudice -- they're

25  seeking dismissal without prejudice as to the absent class

 1   members -- for them to be able to run to, you know, some
 2   friendlier forum, to some judge that does not have the
 3   expertise and knowledge of the facts and the law that Your
 4   Honor has developed in these cases, and to start all over
 5   again and file a new class action.  And that's why, as we said
 6   in our papers, we think the appropriate course of action is to
 7   go forward with the schedule that was set by Magistrate Judge
 8   Hogan last January and approved by Your Honor.  We have filed
 9   our summary judgment motion, and that summary judgment motion
10   ought to be responded to and decided in due course.
11       Now, if Your Honor doesn't agree and Your Honor thinks
12   that a Rule 41(a) dismissal is appropriate, there is both a
13   fairness basis and a legal basis for simply saying to the
14   class members that, "The Court will not grant your request for
15   a voluntary dismissal unless you agree to the following
16   conditions."
17       Your Honor has wide discretion to impose terms and
18   conditions on a Rule 41(a) dismissal.  And it wouldn't be
19   ordering class members to do anything.  It would be saying,
20   "If you would like a voluntary dismissal, here is the
21   condition you must agree to.  If you don't want to agree to
22   the condition, fine, then the voluntary dismissal won't be
23   granted and we'll continue with the case."
24       But there is a decision in the Seventh Circuit, a 2003
25   decision, it's called *In Re Bridgestone/Firestone Tires*

1  *Product Liability* suit, decided 333 F.3d, 763, and again it's

2  a Seventh Circuit decision, 2003.  And what happened there

3  was, as Your Honor may know, a nationwide class action in the

4  tire product liability cases was filed in a district court in

5  the Seventh Circuit and the court refused to certify a class,

6  ruled that a class is not appropriate.  And what happened then

7  were the plaintiffs ran off to other courts in other parts of

8  the country and filed identical nationwide class actions.

9      And what the Seventh Circuit ruled was that the district

10  court had the authority to actually issue an injunction

11  directed at the absent class members and their attorneys to

12  prohibit them from pursuing, you know, duplicate --

13  duplicative or the same nationwide class action in other

14  courts that that court had refused to certify.  So that case

15  stands for the proposition that this Court actually has the

16  power to issue an injunction to this effect.  But Your Honor

17  wouldn't need to do it.  Again, I think this could be handled

18  by saying simply to the plaintiffs, "I will grant your

19  voluntary dismissal if you are willing to agree to the

20  following condition," and the condition is simply any absent

21  class member who wishes -- who in the future files any claim

22  by Wyeth encompassed by the current suit, can only do so on an

23  individual basis.  And they had their shot at the class action

24  because they asked to have it voluntary dismissed, they asked

25  to have the class decertified, so it's perfectly appropriate

13

```
 1  to say, "If you file it again, you can pursue it only on your

 2  own behalf."

 3       MS. ABARAY:  Your Honor, this is Janet Abaray again.

 4  I think one of the difficulties with the defendants' position

 5  is they're overlooking the fact that there was never notice

 6  sent out in this class.  And so essentially what they're

 7  trying to do is to get class-wide relief for a class that was

 8  never noticed.  And, you know, it just doesn't make sense in

 9  terms of judicial economy to spend that kind of money to

10  notice a class just so everyone can opt out.

11       And I think, you know, if they're raising the specter that

12  something could happen in the future, you know, first of all,

13  we don't even represent all of these people because, you know,

14  we don't know if they're in or out of the class.  So, you

15  know, we don't even have the authority to make some of these

16  concessions that he would request.

17       But there certainly's an avenue if, and that *Firestone*

18  case shows it, that if something comes up in the future, they

19  can file the motion at that point and say, you know, that they

20  should be bound by the law of the case, or whatever their

21  argument's going to be if it arises, and then that plaintiff

22  would have an opportunity to object and present their

23  arguments.  But to try to get us to stipulate to all of this

24  when there isn't a notice, you know, and then we would -- we

25  would be binding a class that we haven't noticed, it just
```

14

1   doesn't really -- it doesn't seem appropriate.

2       And the other thing I would add is, there are several

3   United States Supreme Court cases that deal with the fact that

4   the plaintiff is the master of their complaint, and there's

5   *Webster versus Reproductive Health Services*, 492 U.S. 490,

6   1989, and also the *Deakins versus Monaghan* case, 484 U.S. 193,

7   and both of these cases discuss the fact that there's no case

8   or controversy if the plaintiffs come in and say, "We

9   dismiss."

10      So what they're asking Your Honor to do is to continue to

11  assert jurisdiction when the plaintiffs have indicated a

12  willingness to dismiss with prejudice.  And once we indicate

13  with prejudice, what other conditions can there be?  I mean,

14  we are done, and that's the reason we said with prejudice

15  instead of without prejudice.  But we just don't represent all

16  of these other people.  And to go through this notice process

17  just to give, you know, Wyeth this perfect victory, it just

18  isn't appropriate because we don't have the authority to bind

19  those people.

20          THE COURT:  Well, let me ask this question.  Under

21  the new class action rules, isn't notice necessary to the

22  potential class members in any event to advise them that the

23  case has been dismissed?

24          MS. ABARAY:  Well --

25          THE COURT:  It's conceivable that a potential class

15

1  member could be aware of the litigation and sitting back

2  waiting to get their notice in the mail, relying on the

3  pendency of this lawsuit.

4         MR. WALD:  Your Honor, Doug Wald again.  That really

5  is an excellent question, one that we have thought about.  The

6  plaintiffs are simply assuming that if the voluntary dismissal

7  were granted, that no notice would be required, and I think

8  it's a much more complicated question than that, and

9  especially the issue as to how the new Rule 23(e) should be

10  read is not entirely clear to us based on the -- based on the

11  precedence.

12      But, I think Your Honor put -- I think the Court -- the

13  Court put the finger, finger on the correct issue, which is,

14  you know, are there plaintiffs -- unnamed class members out

15  there who are relying on the pendency of this case?  And the

16  plaintiffs have simply said there is no prejudice because

17  there's been no formal notice.

18      But the plaintiffs in fact issued a press release about

19  this case a year or so after the class was certified, so there

20  has been some publicity.  And, you know, to be honest, I don't

21  think any notice would be required if this case were dismissed

22  with the condition I requested, anymore so than notice would

23  be required if that condition were not included, because the

24  real effect on class members would be the loss of the current

25  certified class.  And if notice is required, I think that that

1   impact on class members, much more so than the condition about

2   not filing a subsequent class action, would be the issue that

3   this Court would have to grapple with in determining whether

4   notice was required now or not.

5        MS. ABARAY:  Well, Your Honor, if you look at Rule

6   23(e)(1)(B), it says that:

7     "The court must direct notice in a reasonable manner to

8   all class members who would be bound by a proposed settlement,

9   dismissal or compromise."  And it's our position because the

10  class was certified but never noticed and the named plaintiffs

11  dismissed with prejudice, the other people won't be bound.

12  That's the whole issue.  And then I think it could be saved

13  for a later date, as in the *Firestone* case, if some class

14  member comes forward under this hypothetical, couldn't the

15  defendants come and make these arguments at that time, you

16  know.  And as I pointed out, nobody filed a claim in the other

17  states where the classes weren't certified, you know, rather

18  than imposing upon the Court and continuing on a case where

19  there's no live case or controversy before Your Honor.

20        MR. WALD:  Well, Your Honor --

21        MR. DOBIE:  Could I just jump in here for a second,

22  Doug?  Gordon Dobie --

23        MR. WALD:  Sure.

24        MR. DOBIE:  -- for Wyeth, Judge.  I want to just make

25  two points.  One is, this entire conundrum here is a product

1    of the plaintiffs having really delayed in sending notice in

2    the first instance.  I mean, it wasn't until we finally got an

3    order requiring that notice be sent that this even got on the

4    agenda, and even then it was over their objection.  So then

5    I'll -- and then the day came and, you know, they weren't

6    ready to do it.  So, I think the fact that we have this issue

7    with notice and they decided that they're going to lose the

8    case and, therefore, they don't want to send the notice, this

9    is a problem that they've created themselves.

10        The second point is the point that you raised in the

11    beginning, Your Honor, is that we have incurred -- I don't

12    have a position to quote you an exact amount, but we've

13    retained experts, we've prepared expert reports, the lawyers

14    have been working on this case for years, so the expenses here

15    are substantial.  And simply to have the plaintiffs dismiss

16    the case and then file a class action in another location on

17    another day is really prejudicial to Wyeth.  And the idea that

18    the *Firestone* case -- they had a judgment in *Firestone*, to my

19    recollection, and I think that's the reason why the Court

20    could go forward with the actual injunction.

21        We're happy to go forward with summary judgment and get a

22    judgment, but I don't think we can count on that in the future

23    the way the plaintiffs are contending.

24            MS. ABARAY:  Your Honor, in terms of the delay -- and

25    again this is Janet Abaray -- after Your Honor certified the

1  class, the defendant filed an appeal in the Sixth Circuit, and

2  so that took some time.  And then we were also in the process

3  and ordered to get new class representatives for some certain

4  subclasses, so there was not any inordinate delay by the

5  plaintiffs.

6      Also, I don't want to get into details regarding

7  settlement discussions, but certainly there were discussions

8  ongoing, too, at various times that also had an impact on some

9  scheduling and deadlines as we moved forward.

10          MR. WALD:  Again Doug Wald, Your Honor, if I might.

11  As Your Honor I'm sure is aware, because it was -- it was your

12  decision, but post a new Rule 23, courts continue to look to

13  potential prejudice to absent class members in deciding

14  whether notice should be issued.  And Your Honor's decision in

15  the case of *Coston versus Petro*, 398 Fed. Supp. 2d, 878, is

16  one of the cases recognizing that.

17          MR. WEXLER:  Ken Wexler.  If I can respond to that.

18  We're familiar with that --

19      (Outside noise interference.)

20          MR. WEXLER:  Ken Wexler, W-E-X-L-E-R, for the

21  plaintiff.

22          THE COURT:  Go ahead, Mr. Wexler.

23          MR. WEXLER:  The notice in the *Coston* case -- Your

24  Honor would be as familiar as I would be -- was a notice sent

25  out both by the plaintiffs and the defendant, advising the

1  class that no class had been certified and, therefore, members

2  of the class should feel free to hire other lawyers for

3  themselves if they felt they had a claim.  And that's not

4  really the notice that Mr. Dobie was just complaining about.

5       The notice that he was complaining about would be one that

6  would bind the class to a motion for summary judgment, and

7  that's the notice that we have an issue in the exercise of our

8  fiduciary duties on behalf of the class so that they would not

9  be bound by a motion for summary judgment.

10       Even the motion that has been filed under -- Do you have

11  the case cite for the *Tse* decision? -- the fact that they

12  filed a motion for summary judgment now, first of all, would

13  only bind named class representatives who have asked to be

14  dismissed with prejudice.  But second of all, the filing of

15  that motion under the *Schwartzchild versus Tse* case, 69 F.3d

16  293, waives the right of the defendant to have notice issued

17  to the class.  So, we are talking about apples and oranges.

18       The *Coston* notice that Your Honor ordered, which was after

19  a tremendous amount of publicity of the case, nothing near a

20  single press release, involved telling the class to go get

21  lawyers and class members to go get lawyers.  That's exactly

22  the result that the defendant here is arguing it doesn't want.

23          MR. WALD:  Again Doug Wald, Your Honor.  What we want

24  is quite clear.  What we want is -- the Court had ordered

25  plaintiffs to issue notice back on June 1st.  It gave them an

20

1  extension of time through this hearing to determine, you know,

2  whether any change should be made.

3      What we would like is simply for Your Honor to deny the

4  request for a voluntary dismissal, and direct the plaintiffs

5  to promptly prepare and submit to the Court for approval

6  notice, and then issue the notice as Magistrate Judge Hogan

7  and Your Honor ordered back in January of this year.

8          MS. ABARAY:  Your Honor, again I would just call the

9  attention to the United States Supreme Court case authority.

10  When a case is dismissed, if they, you know -- there is a

11  case, the *Deakins* case, counsel stood up at oral argument in

12  front of the United States Supreme Court and said, "We've

13  decided not to pursue our claim for equitable relief.  And the

14  Supreme Court at that point held that part of the case is

15  over.  You can't continue to litigate a case that the

16  plaintiff is no longer pursuing, particularly when the

17  plaintiff is willing to dismiss with prejudice.  The case is

18  over.  And what they're really asking for is an advisory

19  opinion or, you know, for you to continue to assert

20  jurisdiction on something that's moot.

21          MR. WALD:  No, no, that's not -- I mean, the case is

22  not over until -- under Rule 41(a) -- until -- unless the

23  Court approves the dismissal.  And all we are here is to

24  determine whether the Court should approve the dismissal.  The

25  case is --

1          MS. ABARAY:  Well, if I could read from this case.

2    It says:

3       "Because the case was rendered moot in part by

4    respondents' willingness permanently to withdraw their

5    equitable claims from their federal action, a dismissal with

6    prejudice is indicated.  This will prevent the regeneration of

7    the controversy by a reassertion of a right to litigate the

8    equitable claims in federal court.  Relying upon the

9    responsibility of respondents' counsel at oral argument that

10   all six respondents have no continuing interest in the federal

11   adjudication of their claims for equitable relief, the

12   equitable claims of all respondents should be dismissed with

13   prejudice."

14      That's the *Deakins* case, 484 U.S. Fed. 200-201.

15         MR. WALD:  Yes, which is very different when you have

16   a certified class action, of course.  Then you're not

17   agreeing.  If you were agreeing to dismiss all of the unnamed

18   class members with prejudice, then we wouldn't have a

19   disagreement.

20         MS. ABARAY:  Well, but it gets back to the same point

21   that we've agreed to dismiss the named class members with

22   prejudice and the rest of the class who's not been noticed and

23   they aren't part of these proceedings.  We don't know who's

24   opted in, we don't know who's opted out.  And now you want to

25   do a notice to a bunch of people telling them of their right

1  to be in a class action that the representatives no longer

2  want to pursue.  So this case is over.  There are no

3  representatives pursuing this on behalf of this class.

4          THE COURT:  Well, if I accept your thesis,

5  Ms. Abaray --

6          MS. ABARAY:  Yes.

7          THE COURT:  -- then the rule has no teeth.  The rule

8  says that the Court can dismiss on such terms as the Court

9  deems fair and equitable.  And it seems to me that allowing

10 the plaintiffs to just dismiss only with prejudice as to the

11 named plaintiffs after five years of litigation, and I'm sure

12 considerable investment from the defense, is not fair to the

13 defense.  And sometimes I think some people lose sight of the

14 fact that both sides of the litigation equation have rights

15 and deserve the fair treatment of the Court.

16    I can't see dismissing this with or without prejudice

17 without the defense either having their costs reimbursed at

18 the very least, or denying the motion and allowing the

19 defendant to go forward on the motion for summary judgment.

20 And if there's a middle ground somewhere, I'd be happy for

21 someone to point it out for me.  I was hoping that with so

22 many brilliant legal minds working on this that there would be

23 a solution.

24          MS. ABARAY:  Well, Your Honor, I think the other

25 solution would be that the effect of the class certification

23

1   could be determined on a case-by-case basis as I suggested

2   with the *Firestone* case, if and when it ever arises, rather

3   than having everyone continue through the exercise of

4   litigating a case that the clients no longer care to pursue,

5   because otherwise we're looking at spending a half-a-million

6   dollars to send out this notice, or we're looking -- you know,

7   we're going to notice a class so that anyone could be bound by

8   summary judgment.

9       It's a lot of money and a lot of the Court's time and

10  effort to be spending just to give this, you know, basically a

11  perfect-world-solution right now to the defendants rather than

12  just dealing with it, if and when it comes up, because they

13  could always file a motion that should be four oh -- if

14  someone files a case, it should be 1404-transferred to Your

15  Honor because you had previously ruled on class issues,

16  instead of trying to put all of this into a class action

17  resolution.  You know, it would be so different if the class

18  had been noticed, but that just didn't happen here.

19          THE COURT:  Any other comments or thoughts, folks?

20          MR. WEXLER:  Your Honor, Ken Wexler again for the

21  plaintiffs.  I would only add to what Ms. Abaray said, that we

22  have also asked for decertification of the class.  We have

23  class representatives who no longer want to proceed and wish

24  to dismiss their claims with prejudice, and, therefore, there

25  is no class representative and the class should simply be

24

1    decertified.  I mean, that's something that courts obviously,

2    you know -- you know this better than I do, I'm sure -- always

3    has jurisdiction in the course of a case to change its

4    certification decision, and under the present circumstance

5    decertification is appropriate.

6            MR. WALD:  Well, Your Honor, if I might address that.

7    If that really were the rule, then defendants could never win

8    a class action, because whenever the plaintiffs reach the

9    point at the end of a case where they decided they were going

10   to lose, they'd just say, "We want to give up, decertify the

11   class," and they'd get to start all over again.

12           THE COURT:  Is that Mr. Wald?

13           MR. WALD:  Yes.  I'm sorry, Your Honor.

14           THE COURT:  Thank you.

15           MS. ABARAY:  But, Your Honor, if we already had the

16   notice and we already know who was opting in and who was

17   opting out, you know, then we wouldn't -- then we would know

18   who was in the class.  And if you filed for summary judgment,

19   those people would be bound and that would be the end of it.

20       It's this unusual circumstance of the parallel complaint

21   and the fact that the summary judgment had already been

22   granted before notice went out that I think takes this out of

23   some of the comparisons that defense are using.

24           THE COURT:  Any last thoughts from anybody?

25       (No response.)

25

1        THE COURT:  Hold on for a second.

2    (The Court and law clerk conferred privately.)

3        THE COURT:  All right, folks.  Here's my plan.  I'm

4   going to hold this motion in abeyance for two weeks, till

5   August the 18th.  If you all haven't worked something out by

6   then, the motion for summary judgment schedule is going to

7   kick in and the plaintiffs will have to respond to the motion,

8   if they have a response, in due course pursuant to the local

9   rules, then the defense will file a reply, and we'll consider

10  the merits of the motion; and depending on what the result of

11  that is, we'll decide what to do with class certification and

12  notice.

13       MS. ABARAY:  Thank you, Your Honor.

14       MR. WALD:  Thank you, Your Honor.

15       THE COURT:  Okay.  Thank you.  So, I'm extending the

16  briefing schedule for the motion for summary judgment by two

17  weeks.  But if you all can sort something out that meets your

18  respective needs within the next two weeks, I'm certainly open

19  to your innovation.

20       MR. WEXLER:  Your Honor, this is Ken Wexler again for

21  the plaintiffs.  For clarification, if the summary judgment

22  schedule kicks in, will you be entering an order denying our

23  motion for voluntary dismissal with prejudice?

24       THE COURT:  Yes.

25       MR. WEXLER:  Okay.  Thank you.

26

1          THE COURT:  All right.  Thanks, everybody.

2          MR. WALD:  Thank you, Your Honor.

3          MS. ABARAY:  Thank you, Your Honor.

4          THE COURT:  Bye-bye.

5          MR. WEXLER:  Bye.

6          MR. WALD:  Bye.                (2:07 p.m.)

7                         -   -   -

8                    PROCEEDINGS CONCLUDED

9                         -   -   -

27

1                       C E R T I F I C A T E

2            I, Mary Ann Ranz, the undersigned, certify that the

3     foregoing is a correct transcript from the record of

4     proceedings in the above-entitled matter.

5

6     s/Mary Ann Ranz
      Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25