**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARJORIE FERRELL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. C-1-01-447 |
| | ) | |
| v. | ) | Judge Sandra S. Beckwith |
| | ) | |
| WYETH-AYERST LABORATORIES, | ) | Magistrate Judge Timothy S. Hogan |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF KENNETH A. WEXLER IN SUPPORT OF PLAINTIFFS' REPLY
IN SUPPORT OF THEIR MOTION TO EXTEND
THE TIME FOR SETTING A BRIEFING SCHEDULE
<u>ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

I, Kenneth A. Wexler, declare as follows:

1.  I am the managing partner of Wexler Toriseva Wallace LLP. Throughout the pendency of this litigation, I have been Defendants' primary point of contact for settlement negotiations. Specifically, I have had the majority of the communications described herein with W. Gordon Dobie, counsel for Defendants.

2.  On August 1, 2005, several months after winning summary judgment in the direct purchaser action ("*JBDL*"), Mr. Dobie contacted me about potentially settling this case as well as the parallel case pending in California state court, *Blevins v. Wyeth-Ayerst Labs., Inc. & American Home Prods. Corp.*, San Francisco, California Superior Court (Case No. 324380) (hereinafter "*Blevins*"). Although I advised Mr. Dobie that Plaintiffs valued *Blevins* and *Ferrell* differently because of differences in the laws of the two jurisdictions and therefore wanted the cases to be addressed separately, Defendants conveyed that, from their standpoint, they were

concerned with an aggregate number to be paid for the two cases. Therefore, in response to Defendants' request for a single number, Plaintiffs analyzed Defendants' claims data and, on September 22, 2005, made an offer to settle the *Ferrell* and *Blevins* cases for cash, with the allocation between the cases to be worked out later. Defendants rejected that demand and made a significantly lower counteroffer.

3. On October 18, 2005, after further settlement discussions had occurred, we countered with a cash settlement demand for *Ferrell* and a cash settlement demand for *Blevins*. At the time of Plaintiffs' demand, Plaintiffs' Motion to Stay Pending Appeal in Parallel Proceeding [Doc. No. 137] was pending. When the Court subsequently denied that motion on October 21, 2005, Defendants rejected Plaintiffs' demand and made another counteroffer.

4. Faced with potentially spending hundreds of thousands of dollars on an expert and notice which would bind the Class to certain defeat under the Court's *JBDL* ruling, Plaintiffs' counsel concluded that it was in the best interests of the Class to continue to negotiate a possible settlement or, as a last resort, dismiss the case altogether. One week later I contacted Mr. Dobie again to convey another cash settlement demand for *Ferrell* as well as one for *Blevins*. On December 1, 2005, Defendants made another counteroffer. Even though Defendants' numbers were far apart from Plaintiffs' numbers, Mr. Dobie insisted that the parties should still continue to talk. He even suggested that the parties consider settling the *Ferrell* case while continuing to litigate the *Blevins* case.

5. On November 23, 2005 this Court set a telephonic pretrial scheduling conference before Magistrate Judge Hogan for January 5, 2006. I contacted Mr. Dobie and suggested that we speak before the hearing. On January 4, 2006 I talked to Mr. Dobie while on vacation in Mexico and made an offer to settle *Ferrell* for cash and proposed a *cy pres* distribution, with

2

Defendants paying Plaintiffs' costs as well as the costs of notice. I also asked Mr. Dobie to agree to postpone the conference before Magistrate Judge Hogan pending the parties' continuing settlement discussions. Defendants rejected that request.

6. On January 5 Magistrate Judge Hogan held the previously-scheduled pretrial conference and during that conference established a Calendar Order under which Plaintiffs were required to submit a notice plan by June 30 and trial was set for January 2007. After that order was entered, Plaintiffs accepted Defendants' challenge to develop a "creative" settlement offer and therefore proposed on January 12, 2006 that the parties enter into a "gamble" settlement pursuant to which the parties would settle for a set amount if the Sixth Circuit affirmed this Court's summary judgment opinion in *JBDL* and another, higher, amount if the Sixth Circuit reversed the *JBDL* decision. *See, e.g., California v. Levi Strauss & Co.*, 715 P.2d 564 (Cal. 1986). I told Mr. Dobie that our gamble offer would expire on January 26, 2006. Although Defendants responded that the approach was "creative," they ultimately rejected it.

7. On March 7, 2006, the parties continued their discussions. At this time, we proposed settling the *Ferrell* case for product that could be distributed to Class members, including prescription drugs in order to afford benefit to the third party payor class members. On April 7, 2006, Defendants responded that they opposed a product settlement. Defendants countered that, to settle both *Ferrell* and *Blevins*, they were willing to give coupons for a sum certain, with the unclaimed amount to be distributed *cy pres*. Defendants likewise said that they would pay fees, costs, notice and administrative costs in addition to the settlement amount.[1] We refused to settle for coupons. On March 14, 2006, Defendants requested some additional authority for a product settlement and we provided it. However, Defendants still would not

---

[1] Plaintiffs had, from the beginning, refused to negotiate fees and costs until the material terms of a settlement had been reached. Defendants had always stated they would pay negotiated fees and costs on top of any settlement amount to which the parties agreed.

3

agree to a product proposal and withdrew their previous offer to consider that type of settlement. Defendants told me, however, that they continued to want to talk settlement. I believed that we were closing in on a settlement of *Ferrell*.

8.      In the meantime, the deadline for Plaintiffs to file expert reports was April 3, 2006. At that time, Plaintiffs had no intention of exposing the Class to an inevitable summary judgment ruling, especially given this Court's clear discomfort with the experts submitted by plaintiffs in *JBDL*. At the same time, I interpreted Defendants' statements and body language as demonstrating that a settlement was close at hand. Therefore, Plaintiffs chose not to spend the $250,000 quoted for an expert opinion that would be have useless to the Class. Instead, we moved the Court to extend the time for filing expert reports. For the first time, Defendants permitted Plaintiffs to disclose the existence of settlement negotiations to the Court. (Every other time, Defendants had threatened to terminate settlement discussions if they were disclosed to the Court.)

9.      While Plaintiffs' motion was pending, we (1) proposed mediating the *Blevins* action and (2) offered again to settle *Ferrell* for cash to be distributed on a *cy pres* basis. Again, no fees or expenses were discussed and Defendants stated that they would pay them over and above any settlement amount. On April 19, 2006, however, this Court denied Plaintiffs' motion.

10.     Before learning of that order, Mr. Dobie called me from France and offered cash, this time to settle both *Ferrell* and *Blevins*. After the Court's order, however, on April 20, 2006, Mr. Dobie's co-counsel called to withdraw that offer, stating that everything was off the table pending an analysis of the Court's ruling. Although Defendants ultimately stated that they were "still interested in settlement," Defendants now insisted, based on the Court's order refusing to extend the expert deadline, that the costs of notice, fees and expenses would have to come out of

4

any settlement fund created. In this regard, on April 28, 2006 I had an in-person meeting with Mr. Dobie to discuss the prospects of settlement. In advance of that meeting, Plaintiffs conducted an analysis of the numbers and concluded that a settlement at the terms being proposed by Defendants would not be approved by the Court even if Plaintiffs agreed to them. Thus, at the in-person meeting I proposed that Defendants stipulate to a voluntary dismissal with prejudice of the named plaintiffs' claims. Plaintiffs' counsel had concluded that, because of the *JBDL* ruling, it was in the best interests of the Class to have it decertified, preserving the rights of individual class members to bring individual claims if they believed it was in their interests to do so. On May 2, Mr. Dobie advised me that Wyeth would not sign the proposed stipulation.

11. On May 2, we therefore made another cash settlement offer for *Ferrell* (but excluding Vermont, where a parallel action is pending in state court but is currently stayed pending the outcome of this case), but still offered to mediate the *Blevins* case. We likewise asked Wyeth if, although it would not stipulate to it, Wyeth would oppose Plaintiffs' motion for voluntary dismissal with prejudice. Wyeth would not agree to this proposal. Mr. Dobie also suggested that Plaintiffs continue with filing their motion for voluntary dismissal. We responded by making one last attempt to resolve both *Ferrell* and *Blevins* for cash.

12. Settlement negotiations did not progress. Defendants agreed in open court in California to mediate the *Blevins* action, so we had to make a decision on what to do with regard to *Ferrell*. Although notice had not yet issued, the deadline for submitting a notice plan was June 30.

13. In order to protect the Class from the expense and adverse effect of having notice issue, Plaintiffs then filed our Motion for Voluntary Dismissal with Prejudice as well as a Motion to Suspend Class Notice Deadline on May 4, 2006. When Defendants opposed both motions,

5

Plaintiffs filed an expedited motion for an in-person conference with the Court to "allow the parties to discuss the content of plaintiffs' proposed notice in the context of Plaintiffs' pending motions, as well as the implications of the parties' ongoing settlement efforts on the potential alternative means of resolving of this action." After those motions were filed, Defendants responded that they would settle both cases for a cash amount, not including costs, fees and notice costs. Although on May 18, 2006 the Court set a May 24 status conference before him, Defendants refused Plaintiffs' proposal to allow Magistrate Judge Hogan to mediate a resolution of the case.

14. On May 24 Magistrate Judge Hogan entered an order staying the deadline to issue notice pending the Court's decision on Plaintiffs' motion to voluntarily dismiss. The day after that hearing, I again called Mr. Dobie, stating that if Plaintiffs were forced to issue notice, we surmised that the sophisticated counsel representing the largest third party payors in the country would likely opt out *en masse*, destroying the Defendants' desire to obtain global peace. Mr. Dobie called me back the next day saying that Defendants did not think Plaintiffs' scenario was likely to occur and therefore had nothing further to say about settlement negotiations.

15. On May 30, 2006, the Court set a telephonic hearing on Plaintiffs' motion for voluntary dismissal for August 4, 2006. On August 1, 2006, a mere three days before the scheduled hearing, Defendants filed a motion for summary judgment accompanied by a box-and-a-half of exhibits. By the Court's scheduling order, such a motion was not due until August 31, 2006. On August 4, 2006, this Court held a hearing on Plaintiffs' motion and ordered the parties to attempt to resolve this situation by agreement before August 18, after which the Court indicated it would set a briefing schedule requiring Plaintiffs to respond to Defendants' motion for summary judgment. In this regard, I spoke with Doug Wald, Mr. Dobie's co-counsel, who

6

told me that Defendants were not interested in resolving *Ferrell* without also resolving *Blevins*. He said that the Defendants wanted mediate both cases before Judge Infante, before whom an August 30, 2006 mediation session had already been scheduled in *Blevins*. Thereafter, on August 14, 2006, the parties had a pre-mediation conference call with Judge Infante. At that time, Defendants told Judge Infante that they wanted to mediate *Blevins, Ferrell* and the parallel *Deyo* action pending in Vermont Superior Court.

August 23, 2006                                    /s/
                                           Kenneth A. Wexler
                                           Wexler Toriseva Wallace LLP
                                           One North LaSalle Street, Suite 2000
                                           Chicago, IL  60602
                                           Telephone: (312) 346-2222
                                           Facsimile: (312) 346-0022